## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| *In re:* | Chapter 15 |
| CLINE MINING CORPORATION, | Case No. 14-_____ (____) |
| Debtor in a Foreign Proceeding. | (Joint Administration Requested) |
| *In re:* | Chapter 15 |
| NEW ELK COAL COMPANY LLC, | Case No. 14-_____ (____) |
| Debtor in a Foreign Proceeding. | (Joint Administration Requested) |
| *In re:* | Chapter 15 |
| NORTH CENTRAL ENERGY COMPANY, | Case No. 14-_____ (____) |
| Debtor in a Foreign Proceeding. | (Joint Administration Requested) |

### *EX PARTE* APPLICATION FOR ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINING ORDER AND, AFTER NOTICE AND A HEARING, A PRELIMINARY INJUNCTION, PURSUANT TO SECTIONS 1519 AND 105(A) OF THE BANKRUPTCY CODE

FTI Consulting Canada Inc., the court-appointed monitor (the "**Monitor**") and

authorized foreign representative of Cline Mining Corporation ("**Cline**"), New Elk Coal

Company LLC ("**New Elk**"), and North Central Energy Company ("**North Central**" and

together with the foregoing, the "**Cline Debtors**")[1] in a proceeding (the "**Canadian**

---

[1]   The last four digits of the United States Tax Identification Numbers, or similar foreign identification numbers, as applicable, for the Cline Debtors follow in parentheses:  Cline (6094); New Elk (0615); and North Central (N/A).

**Proceeding**") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, (as amended, the "**CCAA**"), pending before the Ontario Superior Court of Justice, Commercial List (the "**Ontario Court**"), has commenced these chapter 15 cases with the filing of *Verified Petitions for Recognition of Foreign Proceeding and Related Relief* (collectively, the "**Chapter 15 Petitions**") with accompanying documentation, pursuant to sections 1504 and 1515 of title 11 of the United States Code (as amended, the "**Bankruptcy Code**"), seeking the entry of an order (i) recognizing the Canadian Proceeding as a "foreign main proceeding" under section 1517 of the Bankruptcy Code and (ii) giving full force and effect in the United States to the Initial Order of the Ontario Court dated December 3, 2014 (together with any extensions or amendments thereof authorized by the Ontario Court, the "**Initial Order**"), the Claims Procedure Order of the Ontario Court dated December 3, 2014, and the Meetings Order of the Ontario Court dated December 3, 2014.

By this Motion (this "**Motion**"), and pursuant to sections 1519 and 105(a) of the Bankruptcy Code, the Monitor respectfully requests: (i) the immediate entry, on an *ex parte* basis, of an order to show cause with a temporary restraining order substantially in the form annexed hereto as Exhibit A, staying execution against the assets of the Cline Debtors and applying sections 362 and 365(e) of the Bankruptcy Code in these cases on a provisional basis (the "**TRO**") and scheduling a hearing on the Monitor's request for a preliminary injunction, and (ii) after such hearing, the entry of a preliminary injunction order, substantially in the form attached hereto as Exhibit B, extending the relief in the TRO until the disposition of the Chapter 15 Petitions  (the "**Preliminary Injunction Order**," and with the TRO, the "**Provisional Orders**").

In support of the Motion, the Monitor respectfully states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, section 1501 of the Bankruptcy Code.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1410(1) and (3).  The statutory predicates for the relief requested herein are sections 105(a), 1519, and 1521 of the Bankruptcy Code.

## BACKGROUND

2.      The Court is respectfully referred to the Chapter 15 Petitions for a description of the Canadian Proceeding and the Cline Debtors' activities, business, corporate organization, capital structure, and circumstances leading to the filing of the Canadian Proceeding.

3.      The Cline Debtors and their inactive affiliate, Raton Basin Analytical LLC (together, the "**Cline Group**") are in the business of locating, exploring and developing mineral resource properties, with a focus on gold, metallurgical coal, and iron ore.[2]  The Cline Group holds interests in mineral rights and resource developments in Canada, the United States and Madagascar, comprising a number of developmental stage properties and a metallurgical coal mine in Colorado (the "**New Elk Mine**").[3]

4.      The New Elk Mine made its first commercial delivery of coal in 2011.[4] However, this coincided with the beginning of a protracted and ongoing downturn in the global metallurgical coal markets, which rendered the New Elk Mine incapable of operating profitably

---

[2]      Chapter 15 Petitions ¶ 2.

[3]      *Id.*

[4]      *Id.* at ¶ 4.

and necessitated the suspension of full-scale mining operations therein on July 11, 2012.[5]  The suspension of operations was meant to be temporary; however, to date, the metallurgical coal market has not recovered and operations at the New Elk Mine largely remain suspended, though the Cline Group is attempting to undertake limited mining activities at the New Elk Mine to service regional industrial demand from cement kilns in Colorado and New Mexico.[6]  Otherwise, further development of the Cline Group's properties is not possible without a restructuring of the Cline Debtors.[7]

5.      The Cline Group is currently unable to meet its financial commitments as they come due, and has not been capable of making interest payments on its secured debt since 2011.[8]  Moreover, based on extensive but unsuccessful prepetition marketing efforts, it appears that the fair value of the Cline Group is likely to be materially less than amounts owed in respect of its first-priority secured debt, which comprises approximately $100 million in secured notes, including accrued interest and premiums, issued by Cline, guaranteed by New Elk and North Central, and secured by substantially all of the Cline Debtors' real and personal property (the "**Secured Notes**").[9]

6.      The Secured Notes matured on June 15, 2014, and Marret Asset Management Inc., on behalf of beneficial holders of the Secured Notes ("**Marret**"), has confirmed that the holders of the Secured Notes gave instructions to the trustee to accelerate the

---

[5]     *Id*.

[6]     *Id*. at ¶ 18.

[7]     *See e.g. Id*. at ¶ 3.

[8]     *Id*. at ¶ 18.

[9]     *Id*. at ¶¶ 8, 23.  Figures originally denoted in CAD have been converted to USD, for informational purposes only, using the Reuters exchange rate for November 19, 2014, at 2:33 PM (ET): CAD 1 = USD 0.8825.

Secured Notes on December 2, 2014, and all amounts owing thereunder are due and payable.[10] The Secured Notes remain unpaid, and the Cline Debtors do not have the ability to repay them.[11]

       7.     In addition, Cline and New Elk are currently defendants in a class action lawsuit captioned *Gerard, Jr. et al v. New Elk Coal Company, LLC et al*, 1:13-cv-00277-RM-KMT (D. Colo.) pending in the United States District Court for the District of Colorado, and the Cline Group is aware of a number of other contingent litigation claims that have been asserted against it.[12]  The total presently-quantifiable amount claimed by the plaintiffs in the claims other than the WARN Act Class Action is less than $1 million, while the WARN Act Plaintiffs have not particularized the amounts alleged to be owing in the WARN Act Class Action.[13]  Further, at least one creditor of the Cline Group has already obtained a Writ of Garnishment against New Elk.  *See SNF Holding Company, d/b/a FloMin Coal Inc. v. New Elk Coal Company LLC*, Case Number 2013CV30112, pending in the District Court for Las Animas County, Colorado.

       8.     Further, the Cline Debtors are party to a number of leases and executory contracts with events of default triggered by bankruptcy filings or other acts of insolvency. There is a substantial risk that the counterparties to such agreements will exercise contractual termination or other rights upon either the commencement of the Canadian Proceeding or the filing of these cases.

       9.     On December 3, 2014, the Cline Debtors commenced the Canadian Proceeding by filing an application under the CCAA with the Ontario Court.  The principal purpose of the Canadian Proceeding is to facilitate a consensual recapitalization of the Cline

---

[10]   *Id*. at ¶ 8.
[11]   *Id*.
[12]   *Id*. at ¶¶ 16-17.
[13]   *Id*. at ¶ 18.

Group (the "**Plan**") negotiated with Marret.[14]  On December 3, 2014, the Ontario Court entered the Initial Order, which among other things, (i) authorized the Cline Debtors to continue managing and operating their property, including the pre-existing cash management system; (ii) appointed the Monitor; (ii) stayed all proceedings against the Cline Debtors and the Monitor as well as certain proceedings against former, current, or future directors and officers of the Cline Debtors, without the written consent of the Cline Debtors and the Monitor or the leave of the Ontario Court, through December 31, 2014; (iii) authorized the Cline Debtors to file the Plan; (iv) prevented parties from altering or terminating agreements with the Cline Debtors; (v) authorized the Cline Debtors to restructure their business by downsizing or shutting down operations, selling assets, terminating employees or repudiating leases, with the consequences thereof dealt with in a plan of arrangement or compromise or on further order of the Ontario Court; and (vi) authorized Marret to take actions in the proceedings in relation to the Secured Notes.

## **REQUEST FOR RELIEF**

10.     By this Motion, the Monitor seeks the entry of:

(a) on an *ex parte* basis, an order to show cause with a temporary restraining order:

(i) pursuant to sections 1519(a)(1) and 105(a) of the Bankruptcy Code, enjoining all persons and entities from seizing, attaching, possessing, executing and/or enforcing liens against the assets of any member of the Cline Debtors within the territorial jurisdiction of the United States; and

---

[14]     *Id.* at ¶ 24.

(ii) pursuant to sections 1519 and 105(a) of the Bankruptcy Code, applying sections 362 and 365(e) of the Bankruptcy Code in these cases, thereby (a) staying any and all actions or proceedings against the Cline Debtors and their assets within the territorial jurisdiction of the United States and (b) enjoining all persons and entities from terminating or modifying any executory contracts or unexpired leases with any of the Cline Debtors, or terminating or modifying any rights or obligations under such contracts or leases, solely because of a condition of the kind described in section 365(e)(1); and

(iii) scheduling a hearing for a preliminary injunction; and

(b) after notice and hearing, a preliminary injunction extending the relief set forth above until such time as this Court enters an order disposing of the Chapter 15 Petitions.

## BASIS FOR RELIEF

I.    *Section 1519 of the Bankruptcy Code Authorizes the Requested Provisional Relief.*

11.    These cases have been commenced for the purpose of obtaining the assistance of this Court in aid of the Canadian Proceeding to facilitate the conduct of a single, centralized, and efficient restructuring process for the Cline Group.  The Monitor believes that a stay of proceedings against the Cline Debtors' assets, as well as the provisional application of sections 362 and 365(e) of the Bankruptcy Code, is crucial to prevent efforts by any creditors of the Cline Group to collect upon their debts and seize its assets, which may have a cascading effect and result in significant erosion in enterprise value to the detriment of all stakeholders.

12.    Although such relief is not automatic upon the filing of a chapter 15 petition, the Court has the discretion to grant such relief on a provisional basis pursuant to sections 1519(a), 1521(a)(7) and 105(a) of the Bankruptcy Code in order to preserve the estate

during the pendency of the Chapter 15 Petitions. Specifically, section 1519(a) of the Bankruptcy Code authorizes the Court to grant "relief of a provisional nature" from the time of filing a petition for recognition until the court rules on the petition where such relief is "urgently needed to protect the assets of the debtor or the interests of the creditors," including "staying execution against the debtor's assets." 11 U.S.C. § 1519(a)(1). In addition, pursuant to section 1519(a)(3) of the Bankruptcy Code, the Court is authorized to grant, on a provisional basis, the relief available under section 1521(a)(7) of the Bankruptcy Code, which in turn provides for any relief available to a trustee, subject to certain statutory exceptions not relevant here. Section 105(a) of the Bankruptcy Code further allows the Court to "issue any order. . . necessary or appropriate to carry out the provisions of [title 11]." Section 362 of the Bankruptcy Code would apply automatically in a plenary bankruptcy proceeding to stay creditor action during the trustee's administration of the estate. Likewise, section 365(e) of the Bankruptcy Code provides relief to a trustee by rendering unenforceable *ipso facto* clauses that would otherwise allow a counterparty to an executory contract or unexpired lease of the debtor to terminate such contract or lease based solely on the basis of a condition of the kind described in section 365(e)(1).[15] The protections of these provisions therefore constitute "relief that may be available to a trustee" which this Court may grant, in its discretion, in order to preserve the estate during the pendency of the Chapter 15 Petitions. 11 U.S.C. §§ 1519(a)(3); 1521(a)(7); 105(a).

---

[15]    Section 365(e)(1) of the Bankruptcy Code provides:

"Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on —

    (A) the insolvency or financial condition of the debtor at any time before the closing of the case;

    (B) the commencement of a case under this title; or

    (C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

11 U.S.C. § 365(e)(1).

13.     Courts, including those in this district, have granted provisional relief – including, but not limited to, the application of sections 362 and 365(e) of the Bankruptcy Code – pursuant to sections 1519(a) of the Bankruptcy Code in a number of chapter 15 cases.  *See*, *e.g*., *Poseidon Concepts, Corp.*, Case No. 13-15893 (Bankr. D. Colo. April 26, 2013) (temporary restraining order followed by preliminary injunction order enjoining parties from commencing proceedings against debtors or their assets in the United States); *In re Arctic Glacier*, Case No. 12-10605 (Bankr. D. Del. Feb. 23, 2012) (order granting provisional relief, including protections of automatic stay and 365(e) and DIP financing); *In re Catalyst Paper Corp.*, No. 12-10221 (Bankr. D. Del. Feb.1, 2012) (applying in a chapter 15 case sections 365(e) and 362 on a provisional basis pursuant to section 1519); *In re Angiotech Pharmaceuticals, Inc.*, No. 11-10269 (Bankr. D. Del. Jan. 31, 2011) (same); *In re Destinator Tech. Inc.*, No. 08-11003 (Bankr. D. Del. May 23, 2008) (enforcing in the United States a Canadian stay on all proceedings against chapter 15 petitioners and their business and property on a provisional basis pursuant to section 1519); *In re Pro-Fit Holdings Ltd.*, No. 08-17043 (Bankr. C.D. Ca. July 11, 2008) (applying in a chapter 15 case section 362 on a provisional basis pursuant to section 1519); *In re MAAX Corp.*, No. 08-11443 (Bankr. D. Del. July 15, 2008) (applying in a chapter 15 case section 365(e)(1) on a provisional basis pursuant to section 1519 to protect against the termination of real property leases).[16]

## II.     *The Requested Provisional Relief is Justified*

14.     The relief available under section 1519 of the Bankruptcy Code is available pursuant to "the standards, procedures, and limitations applicable to an injunction."  11 U.S.C. § 1519(e).  In the Tenth Circuit, when seeking a preliminary injunction, "the moving

---

[16]   Copies of unpublished decisions and orders referred to herein are attached for the Court's convenience to the Declaration of Ken Coleman dated December 3, 2014 and filed contemporaneously herewith.

party must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *Little v. Jones,* 607 F.3d 1245, 1251 (10th Cir. 2010) (citing *AG of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769 (10th Cir. 2009)).  The Monitor submits that this standard is satisfied in these cases.

A.      There Is a Substantial Likelihood of Recognition

15.     As detailed more fully in the Chapter 15 Petitions and accompanying Memorandum of Law filed contemporaneously herewith, recognition of the Canadian Proceeding is warranted under section 1517 of the Bankruptcy Code and there is therefore a substantial likelihood that such relief will be granted.  The Canadian Proceeding is a "foreign proceeding" and the Monitor is a "foreign representative," as those terms are defined in the Bankruptcy Code.  In addition, these cases were duly and properly commenced by filing the Chapter 15 Petitions accompanied by all fees, documents, and information required by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, including:  (a) a corporate ownership statement containing the information described in Bankruptcy Rule 7007.1; (b) a list containing the information described in Bankruptcy Rule 1007(a)(4); (c) a statement identifying all foreign proceedings with respect to the Cline Debtors that are known to the Monitor as required under section 1515(c) of the Bankruptcy Code; and (d) a copy of the Initial Order, as required under section 1515(b) of the Bankruptcy Code.

B.      The Relief Requested is Necessary to Prevent Irreparable Injury

16.     The automatic stay in section 362 of the Bankruptcy Code is one of the fundamental protections provided by bankruptcy law.  It halts all collection efforts, harassment, and foreclosure actions, and provides debtors with necessary breathing room from the financial

pressures that caused the bankruptcy filing.  Section 365(e) of the Bankruptcy Code provides a debtor with similar relief by prohibiting counterparties from terminating contracts with the debtor solely because of the debtor's bankruptcy filing.  Without the protections of sections 362 and 365(e) of the Bankruptcy Code on a provisional basis, the Cline Debtors could face immediate and irreparable harm resulting from the piecemeal loss of assets from individual creditor collection and enforcement efforts and the potential termination of significant and valuable agreements prior to the Court's consideration of the Chapter 15 Petitions.  Indeed, at least one creditor has commenced proceedings to garnish certain of the Cline Debtors' assets, adding greater uncertainty to their already precarious liquidity situation.

17.    It has been consistently held that "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury."  *In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988).  It has also been held that harm to an estate exists where the orderly determination of claims and the fair distribution of assets are disrupted.  *See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 714 (2d Cir. 1987).  *In re Banco Nacional de Obras y Servicios Publicos, S.N.C.*, 91 B.R. 661, 664 (Bankr. S.D.N.Y. 1988).  In this case, allowing creditors to initiate piecemeal litigation and collection efforts against the Cline Debtors in the United States would have a detrimental impact on the Cline Debtors' ability to continue conducting business in the ordinary course.  Moreover, the Monitor believes that such actions may have a cascading effect, resulting in significant erosion in enterprise value to the detriment of stakeholders and defeating the purpose of the stay provisions of the Initial Order.

18.    The Cline Debtors are also parties to agreements that may contain standard provisions allowing counterparties to terminate such agreements upon the commencement of a bankruptcy or similar insolvency proceeding.  The termination of such

agreements, in the absence of the protections of section 365(e) of the Bankruptcy Code, would cause the Cline Debtors to lose important contractual rights and benefits to the detriment of their businesses and, in turn, their creditors and other stakeholders.  In such circumstances, irreparable harm would be done to the Cline Debtors and to the chances of a successful outcome for the Canadian Proceeding.

C.      Granting the Provisional Relief Will Not Result in Even Greater Harm To Creditors

19.     The entry of the Provisional Orders is justified under the balance of hardships test.  The Cline Debtors' creditors will not be harmed by the requested provisional relief as it will merely preserve the status quo and enable the Cline Debtors to continue their operations for the short time necessary for the Court to rule on the Chapter 15 Petitions.  As stated in the legislative history to section 362 of the Bankruptcy Code:

> The automatic stay also provides creditor protection.  Without it, certain creditors would be able to pursue their own remedies against the debtor's property.  Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally.  A race of diligence by creditors for the debtor's assets prevents that.

House Report No. 95-595, 95th Cong., 1st Sess. 340-2 (1977).  Similarly, the legislative history to section 365(e) provides:

> Subsection (e) invalidates ipso factor [sic] or bankruptcy clauses. These clauses, protected under present law, automatically terminate the contract or lease, or permit the other contracting party to terminate the contract or lease, in the event of bankruptcy.  This frequently hampers rehabilitation efforts.  If the trustee may assume or assign the contract under the limitations imposed by the remainder of the section, then the contract or lease may be utilized to assist in the debtor's rehabilitation or liquidation.

House Report No. 95-595, 95th Cong., 1st Sess. (1977).

20.    The Monitor submits that there will be no harm to creditors if the Monitor's request for provisional relief is granted.  Any creditor or potential creditor that objects to the relief requested will have an opportunity to be heard, and may apply to this Court for relief if they believe they are harmed by the terms of the Provisional Orders.  By contrast, the Cline Debtors will suffer significant injury from creditor collection efforts and contract terminations if the Court does not grant the relief sought by the Motion.

D.    The Public Interest Favors Granting the Provisional Relief

21.    The requested provisional relief is consistent with the policy underlying bankruptcy law and is in the public interest because it will facilitate the efforts to preserve value for the ultimate benefit of the Cline Debtors' creditors, including unsecured creditors who would likely receive no recovery if the security for the Secured Notes were enforced and the Cline Debtors' assets were liquidated.  *See Rehabworks, Inc. v. Lee (In re Integrated Health Servs, Inc.)*, 281 B.R. 231, 239 (Bankr. D. Del. 2002) ("In the context of a bankruptcy case, promoting a successful reorganization is one of the most important public interests."); *In re Lazarus Burman Assocs.*, 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993) ("The public interest, in the context of a bankruptcy proceeding, is in promoting a successful reorganization."); *see also In re Adelphia Comm'cns Corp. et al.*, 368 B.R. 140, 284 (Bankr. S.D.N.Y. 2007) ("The public interest requires bankruptcy courts to consider the good of the case as a whole."); *Am. Film Techs v. Taritero (In re Am. Film Techs.)*, 175 B.R. 847, 849 (Bankr. D. Del. 1994) ("It is 'one of the paramount interests' of this court to assist the Debtor in its reorganization efforts.") (quoting *Gathering Rest., Inc. v. First Nat'l Bank of Valparaiso (In re Gathering Restr., Inc.)*, 79 B.R. 992, 1001 (Bankr. N.D. Ind. 1986)).

22.     In addition, granting the provisional relief is in the public interest because it promotes cooperation between jurisdictions in cross-border insolvencies, which is an express purpose of chapter 15 of the Bankruptcy Code.  Specifically, section 1501(a) of the Bankruptcy Code provides:

> (a)     The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of –
>
> . . .
>
> > (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;
> >
> > (4) protection and maximization of the value of the debtors' assets; and
> >
> > (5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. §1501(a).

23.     Further, the Ontario Court directed the Monitor to seek such relief in this Court as necessary to give effect to the Initial Order in the United States and specifically requested this Court's assistance through the following provision of the Initial Order:

> THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States, or in any other foreign jurisdiction, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

Initial Order ¶ 45.  Under section 1525(a), "consistent with section 1501, this court shall cooperate to the maximum extent possible with a foreign court or a foreign representative."  11

14

U.S.C. §§ 1525(a) and 1501.  The Monitor believes that entry of the Provisional Order is necessary to give effect to the Initial Order of the Ontario Court.  Thus, in addition to the reasons set forth above, this Court should grant the requested relief in accordance with well-established principles of international comity, as embodied in sections 1501 and 1525 of the Bankruptcy Code.

## NOTICE

24.     Notice of this Motion has been provided to (i) the Office of the United States Trustee for the District of Colorado, (ii) counsel for Marret; (iii) Computershare Trust Company of Canada, as trustee for the Secured Notes; and (iv) parties to litigation with the Cline Debtors in the United States, including proposed class counsel in the litigation captioned *Gerard, Jr. et al v. New Elk Coal Company, LLC et al*, 1:13-cv-00277-RM-KMT (D. Colo.). The Monitor requests that the Court enter the TRO without notice to other creditors, as the Monitor proposes to notify all creditors and parties in interest of the filing of the Chapter 15 Petitions and the relief requested therein in the form and manner set forth in the *Motion for Order Scheduling Hearing and Specifying the Form and Manner of Service of Notice*.  In light of the nature of the relief requested herein, the Monitor submits that no other or further notice of the Motion is necessary or required.

## NO PRIOR REQUEST

25.     No previous request for the relief requested herein has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Monitor respectfully requests that this Court:  (i) enter, on an *ex parte* basis, the TRO in the form attached hereto as Exhibit A, and schedule a hearing to consider the Monitor's request for a preliminary injunction, (ii) after such hearing, enter the Preliminary Injunction Order in the form attached hereto as Exhibit B, and (iii) grant any such other and further relief as this Court deems just and proper.

Dated: Denver, Colorado
      December 3, 2014

**ALLEN & OVERY LLP**

  /s/ Ken Coleman
Ken Coleman
Jonathan Cho
1221 Avenue of the Americas
New York, New York 10020
Telephone (212) 610-6300
Facsimile (212) 610-6399
ken.coleman@allenovery.com
jonathan.cho@allenovery.com

*Attorneys for FTI Consulting Canada Inc., as Monitor and Foreign Representative of the Cline Debtors*

## **EXHIBIT A**

**Proposed Temporary Restraining Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| *In re:* | Chapter 15 |
| CLINE MINING CORPORATION, *et al.*, [1] | Case No.  14-_____ (____) |
| Debtors in a Foreign Proceeding. | (Joint Administration Requested) |

## <u>ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINING ORDER</u>

The *Ex Parte Application for Temporary Restraining Order and, After Notice and a Hearing, a Preliminary Injunction, Pursuant to Section 1519, 1521(a)(7), and 105(a) of the Bankruptcy Code* (the "**Motion**") was brought by FTI Consulting Canada Inc., the court-appointed monitor (the "**Monitor**") and authorized foreign representative of Cline Mining Corporation, New Elk Coal Company LLC, and North Central Energy Company (collectively, the "**Cline Debtors**") in a proceeding (the "**Canadian Proceeding**") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, pending before the Ontario Superior Court of Justice, Commercial List.   The Monitor commenced the above-captioned chapter 15 cases ancillary to the Canadian Proceeding by filing *Verified Petitions for Recognition of Foreign Proceedings* (together, the "**Chapter 15 Petitions**") under chapter 15 of title 11 of the United States Code, as amended (the "**Bankruptcy Code**").

By the Motion, the Monitor requested (i) the immediate entry, on an *ex parte* basis, of an order to show cause with a temporary restraining order staying execution against the assets of the Cline Debtors, applying sections 362 and 365(e) of the Bankruptcy Code in these cases on a provisional basis, and scheduling a hearing on the Monitor's request for a preliminary injunction, and (ii) after such

---

[1] The last four digits of the United States Tax Identification Numbers, or similar foreign identification numbers, as applicable, for the Cline Debtors follow in parentheses:  Cline Mining Corporation (6094); New Elk Coal Company LLC (0615); and North Central Energy Company (N/A).

1

hearing, the entry of a preliminary injunction order extending the relief in the temporary restraining order until the disposition of the Chapter 15 Petitions.

The Court has considered and reviewed the Motion and the Chapter 15 Petitions and all related documents filed contemporaneously therewith.  Based on the foregoing, the Court finds and concludes as follows:

a)    The Monitor has demonstrated a substantial likelihood of success on the merits that the Cline Debtors are the subject of a pending foreign main proceeding in Canada and that the Monitor is the foreign representative of the Cline Debtors;

b)    The Monitor has demonstrated that without a stay on execution against the Cline Debtors' assets and the protections of section 362 of the Bankruptcy Code, there is a material risk that the Cline Debtors will suffer irreparable harm to the value of their business, assets, and property from the potential enforcement and collection efforts of creditors pending the disposition of the Chapter 15 Petitions;

c)    The Monitor has demonstrated that without a stay on execution against the Cline Debtors' assets and the protections of section 365(e) of the Bankruptcy Code, there is a material risk that counterparties to certain of the Cline Debtors' agreements may take the position that the commencement of the Canadian Proceeding authorizes them to terminate such contract or accelerate obligations thereunder.  Such termination or acceleration, if permitted and valid, could severely disrupt the Cline Debtors' operations, result in irreparable damage to the value of the Cline Debtors' businesses, and cause substantial harm to the Cline Debtors' creditors and other parties in interest;

d)    The Monitor has demonstrated that no injury will result to any party that is greater than the harm to the Cline Debtors' business, assets and property in the absence of the requested relief, and that the interests of the public will be served by this Court's granting of the relief requested by the Monitor;

2

e)      Due to the nature of the relief requested, the Court finds that no security is required under Rule 65(c) of the Federal Rules of Civil Procedure, as made applicable in these cases by Rule 7065 of the Federal Rules of Bankruptcy Procedure;

f)      In the context of these cases, the Court finds that it would be infeasible for the Monitor to serve notice of the Motion on all parties in interest;

g)      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and section 1501 of the Bankruptcy Code;

h)      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P); and

i)      Venue is proper in this District pursuant to 28 U.S.C. §§ 1410(1) and (3).

NOW THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1.      The Monitor's *ex parte* Motion for an order to show cause with temporary restraining order is GRANTED.

2.      A hearing (the "**Hearing**") on the Monitor's motion for a preliminary injunction extending the relief in this order until the disposition of the Chapter 15 Petitions shall be held at _____.m. (MT) on December __, 2014.

3.      Pending the Hearing:

(i) pursuant to sections 1519(a)(1) and 105(a) of the Bankruptcy Code, all persons and entities are enjoined from seizing, attaching, possessing, executing and/or enforcing liens against the assets of any member of the Cline Debtors within the territorial jurisdiction of the United States; and

(ii) pursuant to sections 1519 and 105(a) of the Bankruptcy Code, sections 362 and 365(e) of the Bankruptcy Code shall apply in these cases, thereby (a) staying any and all actions or proceedings against the Cline Debtors and their assets within the territorial jurisdiction of the United States and (b) enjoining all persons and entities from terminating or modifying any

executory contracts or unexpired leases with any of the Cline Debtors, or terminating or modifying any rights or obligations under such contracts or leases, solely because of a condition of the kind described in section 365(e)(1) of the Bankruptcy Code.

4.      Pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure, the security provisions of Rule 65(c) of the Federal Rules of Civil Procedure are waived.

5.      Notice of the entry of this Order shall be served by electronic mail or, in the event service by electronic mail cannot be accomplished, then by United States mail, first-class postage prepaid or by overnight courier, on all known creditors and all other parties against whom relief is sought (or their counsel).

6.      Service in accordance with this Order shall constitute adequate and sufficient service and notice.

7.      Responses or objections to the Monitor's request for a preliminary injunction must be made pursuant to the Bankruptcy Code, the local rules of the Court, and the Bankruptcy Rules and in writing describing the basis therefore, which objection or response must be filed with the Bankruptcy Court electronically by registered users of the court's ECF System and served upon counsel for the Monitor so as to be received by December 12, 2014, at 4:00 p.m. (MT), in accordance with the requirements of Bankruptcy Rule 1011(b). Notices to counsel for the Monitor should be addressed to Allen & Overy LLP, 1221 Avenue of the Americas, New York, New York 10020, Attention: Ken Coleman and Jonathan Cho.

8.      Any party in interest may make a motion seeking relief from or modifying this Order by motion, on not less than two (2) business days' notice to the Monitor's United States counsel and any such request shall be the subject matter of a hearing scheduled by the Court.

9.      This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated: Denver, Colorado
       December ___, 2014

_____
United States Bankruptcy Judge

## **EXHIBIT B**

**Proposed Preliminary Injunction Order**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| *In re:* | Chapter 15 |
| CLINE MINING CORPORATION, *et al.*,[1] | Case No. 14-_____ (___) |
| Debtors in a Foreign Proceeding. | (Joint Administration Requested) |

## PRELIMINARY INJUNCTION ORDER PURSUANT TO
## SECTIONS 1519, 1521(A)(7), AND 105(A) OF THE BANKRUPTCY CODE

The *Ex Parte Application for Temporary Restraining Order and, After Notice and a Hearing, a Preliminary Injunction, Pursuant to Sections 1519, 1521(a)(7), and 105(a) of the Bankruptcy Code* (the "**Motion**") was brought by FTI Consulting Canada Inc., the court-appointed monitor (the "**Monitor**") and authorized foreign representative of Cline Mining Corporation, New Elk Coal Company LLC, and North Central Energy Company (collectively, the "**Cline Debtors**") in a proceeding (the "**Canadian Proceeding**") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, pending before the Ontario Superior Court of Justice, Commercial List. The Monitor commenced the above-captioned chapter 15 cases ancillary to the Canadian Proceeding by filing *Verified Petitions for Recognition of Foreign Proceedings* (together, the "**Chapter 15 Petitions**") under chapter 15 of title 11 of the United States Code, as amended (the "**Bankruptcy Code**").

By the Motion, the Monitor requested (i) the immediate entry, on an ex parte basis, of an order to show cause with a temporary restraining order staying execution against the assets of the Cline Debtors, applying sections 362 and 365(e) of the Bankruptcy Code in these cases on a provisional basis, and scheduling a hearing on the Monitor's request for a preliminary injunction, and (ii) after such

---

[1] The last four digits of the United States Tax Identification Numbers, or similar foreign identification numbers, as applicable, for the Cline Debtors follow in parentheses: Cline Mining Corporation (6094); New Elk Coal Company LLC (0615); and North Central Energy Company (N/A).

hearing, the entry of a preliminary injunction order extending the relief in the temporary restraining order until the disposition of the Chapter 15 Petitions.

The Court has considered and reviewed the Motion and the Chapter 15 Petitions and all related documents filed contemporaneously therewith.  Based on the foregoing, and having held a hearing on the Monitor's request for a preliminary injunction on _____, 2014, the Court finds and concludes as follows:

a)      The Monitor has demonstrated a substantial likelihood of success on the merits that the Cline Debtors are the subject of a pending foreign main proceeding in Canada and that the Monitor is the foreign representative of the Cline Debtors;

b)      The Monitor has demonstrated that without a stay on execution against the Cline Debtors' assets and the protections of section 362 of the Bankruptcy Code, there is a material risk that the Cline Debtors will suffer irreparable harm to the value of their business, assets, and property from the potential enforcement and collection efforts of creditors pending the disposition of the Chapter 15 Petitions;

c)      The Monitor has demonstrated that without the protections of section 365(e) of the Bankruptcy Code, there is a material risk that counterparties to certain of the Cline Debtors' agreements may take the position that the commencement of the Canadian Proceeding authorizes them to terminate such contract or accelerate obligations thereunder.  Such termination or acceleration, if permitted and valid, could severely disrupt the Cline Debtors' operations, result in irreparable damage to the value of the Cline Debtors' businesses, and cause substantial harm to the Cline Debtors' creditors and other parties in interest;

d)      The Monitor has demonstrated that no injury will result to any party that is greater than the harm to the Cline Debtors' business, assets and property in the absence of the requested

relief, and that the interests of the public will be served by this Court's granting of the relief requested by the Monitor;

e) Due to the nature of the relief requested, the Court finds that no security is required under Rule 65(c) of the Federal Rules of Civil Procedure, as made applicable in these cases by Rule 7065 of the Federal Rules of Bankruptcy Procedure;

f) This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and section 1501 of the Bankruptcy Code;

g) This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P); and

h) Venue is proper in this District pursuant to 28 U.S.C. §§ 1410(1) and (3).

NOW THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1. Until such time as an order disposing of the Chapter 15 Petitions is entered,

(i) pursuant to sections 1519(a)(1) and 105(a) of the Bankruptcy Code, all persons and entities are enjoined from seizing, attaching, possessing, executing, and/or enforcing liens against the assets of any member of the Cline Debtors within the territorial jurisdiction of the United States; and

(ii) pursuant to sections 1519 and 105(a) of the Bankruptcy Code, sections 362 and 365(e) of the Bankruptcy Code shall apply in these cases, thereby (a) staying any and all actions or proceedings against the Cline Debtors and their assets within the territorial jurisdiction of the United States and (b) enjoining all persons and entities from terminating or modifying any executory contracts or unexpired leases with any of the Cline Debtors, or terminating or modifying any rights or obligations under such contracts or leases, solely because of a condition of the kind described in section 365(e)(1) of the Bankruptcy Code.

2. Pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure, the security provisions of Rule 65(c) of the Federal Rules of Civil Procedure are waived.

3

3.       Notice of the entry of this Order shall be served by electronic mail or, in the event service by electronic mail cannot be accomplished, then by United States mail, first-class postage prepaid or by overnight courier, on all known creditors and all other parties against whom relief is sought (or their counsel).

4.       Service in accordance with this Order shall constitute adequate and sufficient service and notice.

5.       This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated: Denver, Colorado
          December __, 2014

                                            _____
                                            United States Bankruptcy Judge