## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| *In re:* | Chapter 15 |
| CLINE MINING CORPORATION, *et al.*, [1] | Case No.  14-_____ (____) |
| Debtors in a Foreign Proceeding. | (Joint Administration Requested) |

## MEMORANDUM OF LAW IN SUPPORT OF CHAPTER 15 PETITIONS
## FOR RECOGNITION OF FOREIGN PROCEEDING AND RELATED RELIEF

_____

[1]    The last four digits of the United States Tax Identification Numbers, or similar foreign identification numbers, as applicable, for the Cline Debtors follow in parentheses:  Cline (6094); New Elk (0615); and North Central (N/A).

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................2

JURISDICTION AND VENUE ................................................................................3

BACKGROUND ......................................................................................................3

ARGUMENT ...........................................................................................................3

I.      THE CANADIAN PROCEEDING IS ENTITLED TO RECOGNITION AS A
        FOREIGN MAIN PROCEEDING .................................................................3

        A.      These Cases Concern a "Foreign Proceeding" ...................................4

        B.      These Cases were Commenced by a "Foreign Representative" .......................6

        C.      These Cases were Properly Commenced under Chapter 15 .............................6

        D.      The Canadian Proceeding Should be Recognized as a Foreign Main
                Proceeding...........................................................................7

        E.      The Monitor is Entitled to an Order Granting Recognition of the
                Canadian Proceeding as a Foreign Main Proceeding .....................................10

II.     THE MONITOR IS ENTITLED TO AN ORDER ENFORCING THE ONTARIO
        ORDERS.....................................................................................11

        A.      The Requested Relief is Warranted under Sections 105(a), 1507, and
                1521 of the Bankruptcy Code ..........................................................11

        B.      The Enforcement of the Ontario Orders is Warranted under Section
                1521 of the Bankruptcy Code ..........................................................13

        C.      The Enforcement of the Ontario Orders is Warranted under Section
                1507 of the Bankruptcy Code ..........................................................17

        D.      The Requested Relief Does Not Violate Section 1506 of the
                Bankruptcy Code ......................................................................18

CONCLUSION..........................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Ad Hoc Grp. of Vitro Noteholders v. Vitro SAB De CV (In re Vitro SAB De CV)*,
   701 F.3d 1031 (5th Cir. 2012) .................................................................................. passim

*Caddel v. Clairton Corp.*,
   105 B.R. 366 (N.D. Tex. 1989) ....................................................................................5

*Collins v. Oilsands Quest, Inc.*,
   484 B.R. 593 (S.D.N.Y. 2012)....................................................................................12

*Cornfeld v. Investors Overseas Servs. Ltd.*,
   471 F. Supp. 1255 (S.D.N.Y. 1979), *aff'd,* 614 F.2d 1286 (2d Cir. 1979) .......................5

*Hilton v. Guyot*,
   159 U.S. 113 (1895) ....................................................................................................18

*Iida v. Kitahara (In re Iida)*,
   377 B.R. 243 (B.A.P. 9th Cir. 2007) ...........................................................................19

*In re Angiotech Pharms.*
   No. 11-10269 (Bankr. D. Del. Feb. 22, 2011).......................................................5, 7, 15

*In re Atlas Shipping A/S*,
   404 B.R. 726 (Bankr. S.D.N.Y. 2009) .........................................................................11

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
   374 B.R. 122 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008) ..............6, 7

*In re Biltrite Rubber (1984) Inc.*,
   No. 09-31423 (Bankr. N.D. Ohio Apr. 2, 2009)..............................................................5

*In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd., Inc.*,
   238 B.R. 25 (Bankr. S.D.N.Y. 1999), *aff'd*, 238 B.R. 699 (S.D.N.Y. 2002)....................12

*In re Canwest Global Commc'ns Corp.*,
   No. 09-15994 (Bankr. S.D.N.Y. Nov. 3, 2009) ..............................................................5

*In re Columbia Gas Sys., Inc.*,
   136 B.R. 930 (Bankr. D. Del. 1993) ............................................................................15

*In re Davis*,
   191 B.R. 577 (Bankr. S.D.N.Y. 1996)............................................................................5

*In re Destinator Techs., Inc.*,
  No. 08-11003 (Bankr. D. Del. June 6, 2008) ................................................................5, 8

*In re Ephedra Prods. Liab. Litig.*,
  349 B.R. 333 (S.D.N.Y. 2006) ........................................................................12, 18

*In re Fairfield Sentry Ltd.*,
  484 B.R. 615 (Bankr. S.D.N.Y. 2013) .............................................................11

*In re Gold & Honey, Ltd.*,
  410 B.R. 357 (Bankr. E.D.N.Y. 2009) ......................................................18, 19

*In re Klytie's Devs., Inc.*,
  Case No. 07-22719 (Bankr. D. Colo. Feb. 8, 2008) ................................................5, 7

*In re MAAX Corp.*,
  No. 08-11443 (Bankr. D. Del. Aug 5, 2008) .........................................................5, 8, 15

*In re Madill Equip. Canada*,
  No. 08-41426 (Bankr. W.D. Wa. Apr. 2, 2008) ..................................................15

*In re Metcalfe & Mansfield Alternative Invs.*,
  No. 09-16709 (Bankr. S.D.N.Y. Jan. 5, 2010) ..........................................................5, 18

*In re Millennium Global Emerging Credit Master Fund Ltd.*,
  458 B.R. 63 (Bankr. S.D.N.Y. 2011) ....................................................................7

*In re Muscletech Research & Dev. Inc.*,
  Nos. 06 CIV 538 & 539 (S.D.N.Y. Mar. 2, 2006) ..........................................................5, 15

*In re Muscletech Research & Dev. Inc.*,
  Nos. 06 CIV 538 & 539 (S.D.N.Y. Mar. 22, 2006) ...........................................................16

*In re Nortel Networks Corp.*,
  No. 09-10164 (Bankr. D. Del. Feb. 27. 2009) .............................................................5, 15

*In re Nortel Networks Corp.*,
  No. 09-10164 (Bankr. D. Del. Aug. 31, 2009) ..............................................................16

*In re Oilsands Quest, Inc.*,
  No. 12-10476, (S.D.N.Y. March 29, 2012) .......................................................15

*In re Poseidon Concepts Corp.*,
  Case No. 13-15893 (Bankr. D. Colo. May 15, 2013) ........................................................5

*In re Quebecor World Inc.*,
    No. 08-13814 (Bankr. S.D.N.Y. July 1, 2009) ...........................................................5, 16

*In re Qimonda AG*,
    433 B.R. 547, 569 (E.D. Va. 2010)...................................................................................19

*In re SemCanada Crude Co.*,
    No. 09-12637 (Bankr. D. Del. Aug 27, 2009) ....................................................................5

*In re SPhinX*,
    351 B.R. 103 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007)......................7

*In re Tri-Continental Exch. Ltd.*,
    349 B.R. 627 (Bankr. E.D. Cal. 2006) .............................................................................15

*Smith v. Dominion Bridge Corp.*,
    No. 96-7580, 1999 WL 111465 (E.D. Pa. Mar. 2, 1999) ..................................................5

*Victrix S.S., Co., S.A. v. Salen Dry Cargo A.B.*,
    825 F.2d 709 (2d Cir. 1987)............................................................................................11

## RULES AND STATUTES

11 U.S.C. § 101(23) .............................................................................................3, 4, 5, 10

11 U.S.C. § 101(24) .............................................................................................4, 5, 6, 10

11 U.S.C. § 101(41) .........................................................................................................4

11 U.S.C. § 105(a) ..................................................................................................2, 3, 11

11 U.S.C. § 304 ...............................................................................................................5

11 U.S.C. § 304(c) .........................................................................................................10

11 U.S.C. § 362 .............................................................................................................13

11 U.S.C. § 363 .............................................................................................................14

11 U.S.C. § 1107 ...........................................................................................................13

11 U.S.C. § 1108 ...........................................................................................................13

11 U.S.C. § 1122 ...........................................................................................................17

11 U.S.C. § 1125 ...........................................................................................................17

11 U.S.C. § 1501 .................................................................................................................3

11 U.S.C. § 1501(a) ..........................................................................................................20

11 U.S.C. § 1501(b)(1) .......................................................................................................3

11 U.S.C. § 1502 ...............................................................................................................10

11 U.S.C. § 1502(4) ...................................................................................................4, 7, 10

11 U.S.C. § 1504 .........................................................................................................1, 3, 4

11 U.S.C. § 1506 ...................................................................................................10, 18, 20

11 U.S.C. § 1507 ........................................................................................................ passim

11 U.S.C. § 1507(b) ..........................................................................................................17

11 U.S.C. § 1508 ...............................................................................................................20

11 U.S.C. § 1509 ............................................................................................................3, 4

11 U.S.C. § 1515 ........................................................................................................ passim

11 U.S.C. § 1515(a)-(c) ......................................................................................................6

11 U.S.C. § 1516(a) ............................................................................................................6

11 U.S.C. § 1517 .......................................................................................................1, 3, 10

11 U.S.C. § 1517(a) ..........................................................................................................10

11 U.S.C. § 1517(b)(1) .......................................................................................................7

11 U.S.C. § 1520 ..........................................................................................................3, 13

11 U.S.C. § 1521 ........................................................................................................ passim

11 U.S.C. § 1521(a) ..........................................................................................................13

11 U.S.C. § 1521(a)(1) ......................................................................................................14

11 U.S.C. § 1521(a)(2) ......................................................................................................14

11 U.S.C. § 1521(a)(5) ......................................................................................................14

11 U.S.C. § 1521(a)(7)...........................................................................14, 15

11 U.S.C. § 1522.................................................................................12, 16

28 U.S.C. § 157.......................................................................................3

28 U.S.C. § 157(b)(2)(P).........................................................................3

28 U.S.C. § 1334......................................................................................3

28 U.S.C. § 1410(1).................................................................................3

28 U.S.C. § 1410(3).................................................................................3

## OTHER AUTHORITIES

*Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 .................................................1

H.R. Rep. 109-31(I), 109 Cong., Sess. 2005,
*reprinted in* 2005 U.S.C.C.A.N. 88, 169 at 172, 175 ........................................................10, 18

FTI Consulting Canada Inc. is the court-appointed monitor (the "**Monitor**") and authorized foreign representative of Cline Mining Corporation ("**Cline**"), New Elk Coal Company LLC ("**New Elk**"), and North Central Energy Company ("**North Central**" and together with the foregoing, the "**Cline Debtors**") in a proceeding (the "**Canadian Proceeding**") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, (as amended, the "**CCAA**"), pending before the Ontario Superior Court of Justice, Commercial List (the "**Ontario Court**").

The Monitor commenced these chapter 15 cases ancillary to the Canadian Proceeding by filing *Verified Petitions for Recognition of Foreign Proceeding and Related Relief* (collectively, the "**Chapter 15 Petitions**"),[2] with accompanying documentation, pursuant to sections 1504 and 1515 of title 11 of the United States Code (as amended, the "**Bankruptcy Code**") seeking the entry of an order (i) recognizing the Canadian Proceeding as a "foreign main proceeding" under section 1517 of the Bankruptcy Code, and (ii) giving full force and effect in the United States to the Initial Order of the Ontario Court dated December 3, 2014 (together with any extensions or amendments thereof made by the Ontario Court, the "**Initial Order**"), the Claims Procedure Order of the Ontario Court dated December 3, 2014 (the "**Claims Procedure Order**"), and the Meetings Order of the Ontario Court dated December 3, 2014 (the "**Meetings Order**," and together with the Initial Order and the Claims Procedure Order, the "**Ontario Orders**").[3]

The Monitor respectfully files this Memorandum of Law in support of the Chapter 15 Petitions.

---

[2]   Capitalized terms used but not defined herein have the meanings assigned to them in the Chapter 15 Petitions.
[3]   Copies of the Initial Order, the Claims Procedure Order, and the Meetings Order are annexed as Exhibits 1-3 respectively to the Proposed Order annexed to the Chapter 15 Petitions as Exhibit A.

## PRELIMINARY STATEMENT

The Canadian Proceeding was commenced to facilitate a consensual recapitalization (the "**Plan**") of the Cline Debtors' businesses and assets with the support of their principal secured creditors, represented by Marret Asset Management Inc. ("**Marret**"), under the supervision of the Ontario Court and in accordance with the provisions of the CCAA. The parties believe that such a consensual recapitalization is the best option for preserving the Cline Debtors' going concern value for the benefit of all stakeholders. Accordingly, on December 3, 2014, the Ontario Court entered orders which, among other things, granted a stay of all proceedings against the Cline Debtors pursuant to the CCAA, appointed the Monitor in the Canadian Proceeding and authorized the Monitor to act as foreign representative of the Cline Debtors, established procedures for the submission and determination of claims against the Cline Debtors, and authorized the Cline Debtors to file the Plan and convene meetings of its creditors to vote on it.

Chapter 15 authorizes this Court to (i) recognize a foreign proceeding upon a foreign representative's proper commencement of a case under chapter 15 and (ii) grant assistance in the United States to such foreign representative with respect to the foreign proceeding, including by providing additional assistance under section 1507 and fashioning appropriate relief pursuant to section 1521.

The Chapter 15 Petitions satisfy all of the requirements set forth in section 1515 of the Bankruptcy Code. As a CCAA proceeding before the Ontario Court involving companies with centers of main interest in Canada, the Canadian Proceeding is entitled to the recognition and relief provided by chapter 15. In addition, the enforcement of the Ontario Orders in the

United States upon recognition is warranted under sections 105(a), 1507, and 1521 of the Bankruptcy Code.  The Monitor is informed and believes that granting the relief sought herein will best assure the fair and efficient administration of the Canadian Proceeding in accordance with the principles underlying chapter 15 of the Bankruptcy Code.  Moreover, such relief is consistent with the relief afforded by United States courts in other ancillary chapter 15 cases involving proceedings under the CCAA.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, section 1501 of the Bankruptcy Code. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1410(1) and (3).  The statutory predicates for the relief requested herein are sections 105(a), 1504, 1507, 1509, 1515, 1517, 1520 and 1521 of the Bankruptcy Code.

## BACKGROUND

1.     For a detailed description of the Cline Debtors' business, corporate organization, capital structure, and circumstances leading to the Canadian Proceeding, the Court is respectfully referred to the Chapter 15 Petitions.

## ARGUMENT

I.

### THE CANADIAN PROCEEDING IS ENTITLED
### TO RECOGNITION AS A FOREIGN MAIN PROCEEDING

2.     Chapter 15 of the Bankruptcy Code applies where a foreign representative seeks the assistance of a United States bankruptcy court in connection with a foreign proceeding. *See* 11 U.S.C. § 1501(b)(l).  The Canadian Proceeding is entitled to recognition as a "foreign main proceeding" under chapter 15 of the Bankruptcy Code because, among other things:

(A)     the Canadian Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code and is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code because the Canadian Proceeding is pending in the location of the center of main interests of each of the Cline Debtors;

(B)     the Monitor is a "person" within the meaning of section 101(41) of the Bankruptcy Code and a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code;

(C)     the Chapter 15 Petitions were filed in accordance with sections 1504 and 1509 of the Bankruptcy Code; and

(D)     the Chapter 15 Petitions meet the requirements of sections 1504, 1509, and 1515 of the Bankruptcy Code.

A.     These Cases Concern a "Foreign Proceeding"

3.     The Canadian Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.  That section provides, in pertinent part, as follows:

> The term "foreign proceeding" means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

4.     The Canadian Proceeding is an insolvency proceeding brought under the CCAA, which provides a statutory means for applicants thereunder to reorganize their affairs subject to the supervision of a court.  The Cline Debtors have applied for protection under the

4

CCAA in order to recapitalize and maximize stakeholder value under the supervision of the Ontario Court and, as such, the Canadian Proceeding falls squarely within the definition contained in section 101(23).  Indeed, since the passage of chapter 15, Canadian proceedings, and in particular those under the CCAA, have routinely been granted recognition by courts in the United States.  *See*, *e.g.*, *In re Klytie's Developments, Inc., et al.*, Case No. 07-22719 (Bankr. D. Colo. February 8, 2008);[4] *In re Angiotech Pharmaceuticals, Inc., et al.*, No. 11-10269 (Bankr. D. Del. Feb. 22, 2011); *In re Metcalfe & Mansfield Alternative Investments, et al.*, No. 09-16709 (Bankr. S.D.N.Y. January 5, 2010); *In re Canwest Global Communications Corp., et al.*, No. 09-15994 (Bankr. S.D.N.Y. November 3, 2009); *In re SemCanada Crude Company*, et al., No. 09-12637 (Bankr. D. Del. Aug 27, 2009); *In re Quebecor World Inc.*, No. 08-13814 (Bankr. S.D.N.Y. July 1, 2009); *In re Biltrite Rubber (1984) Inc., et al.*, No. 09-31423 (Bankr. N.D.Ohio April 2, 2009); *In re Nortel Networks Corp.*, No. 09-10164 (Bankr. D. Del. Feb. 27. 2009); *In re MAAX Corporation*, No. 08-11443 (Bankr. D. Del. Aug 5, 2008); *In re Destinator Technologies, Inc.*, No. 08-11003 (Bankr. D. Del. June 6, 2008); *In re Muscletech Research and Development Inc. et al.*, Nos. 06 CIV 538 and 539 (S.D.N.Y. March 2, 2006); *cf. In re Poseidon Concepts Corp., et al.*, Case No. 13-15893 (Bankr. D. Colo. May 15, 2013) (recognizing Canadian receivership proceeding).  Accordingly, the cases concern "foreign proceedings" within the meaning of section 101(23) of the Bankruptcy Code.[5]

---

[4]    Copies of unpublished decisions and orders referred to herein are attached for the Court's convenience as exhibits to the Declaration of Ken Coleman dated December 3, 2014 and filed contemporaneously herewith.

[5]    Further, under former section 304 of the Bankruptcy Code, the statutory predecessor to chapter 15, Canadian proceedings, including insolvency proceedings, were regularly granted comity. *See*, *e.g.*, *Smith v. Dominion Bridge Corp.*, No. 96-7580, 1999 WL 111465, at *3 (E.D. Pa. March 2, 1999) ("As a sister common law jurisdiction, courts have consistently extended comity to Canadian Bankruptcy proceedings."); *In re Davis*, 191 B.R. 577, 587 (Bankr. S.D.N.Y. 1996) ("Courts in the United States uniformly grant comity to Canadian proceedings"); *Cornfeld v. Investors Overseas Servs. Ltd.*, 471 F. Supp. 1255, 1260-62 (S.D.N.Y. 1979), *aff'd*, 614 F.2d 1286 (2d Cir. 1979); *Caddel v. Clairton Corp.*, 105 B.R. 366 (N.D. Tex. 1989).

B.    These Cases were Commenced by a "Foreign Representative"

5.    These cases were commenced by the Monitor, the duly-authorized, court-appointed "foreign representative" of the Cline Debtors within the meaning of section 101(24) of the Bankruptcy Code. That section defines a "foreign representative," in pertinent part, as a "person or body…authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24). The Initial Order provides that "the Monitor is authorized and empowered to act as a representative in respect of these CCAA proceedings for the purpose of having these CCAA proceedings recognized in a jurisdiction outside Canada." Initial Order ¶ 46. The Court is entitled to presume that the representative identified in the Initial Order is a "foreign representative" under section 1516(a) of the Bankruptcy Code. Accordingly, the Monitor is a proper "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code. In Paragraph 45 of the Initial Order, the Ontario Court specifically and respectfully requests that "all courts, tribunals, regulatory and administrative bodies are hereby respectfully requested . . . to grant representative status to the Monitor in any foreign proceeding." Initial Order ¶ 45.

C.    These Cases were Properly Commenced under Chapter 15

6.    The Monitor duly and properly commenced the cases, as required by sections 1504 and 1509 of the Bankruptcy Code, by filing the Chapter 15 Petitions for recognition of foreign proceeding under section 1515(a) accompanied by all documents and information required by section 1515(b) and (c). *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008) ("A case under chapter 15 is commenced by a foreign representative filing

6

a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code."). Because the Monitor has satisfied the requirements set forth in section 1515 of the Bankruptcy Code, it has properly commenced these cases.

D.       The Canadian Proceeding Should be Recognized as a Foreign Main Proceeding

7.       The Canadian Proceeding should be recognized as a "foreign main proceeding," as defined in section 1502(4) of the Bankruptcy Code.  The Bankruptcy Code provides that a "foreign proceeding" that is the subject of a chapter 15 petition must be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has its "center of . . . main interests."  11 U.S.C. § 1517(b)(1).  While the Bankruptcy Code does not define this concept, courts equate a debtor's "center of main interests" with its principal place of business, examining factors such as the location of the debtor's headquarters, management, assets, creditors, and the jurisdiction of controlling law.  *See In re Millennium Global Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 70 (Bankr. S.D.N.Y. 2011) ("In determining the COMI of a foreign debtor, cases have examined a number of factors, including: the location of the debtor's headquarters; the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes.") (*quoting In re SPhinX*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007); *In re Bear Stearns*, 374 B.R. at 128 (same).  Accordingly, though section 1516(c) of the Bankruptcy Code provides that in the absence of evidence to the contrary, the debtor's center of main interests is presumed to be located at its registered office, courts have frequently recognized foreign main proceedings for debtors incorporated in the United States.  *See, e.g., In re Klytie's*

*Developments, Inc., et al.*, Case No. 07-22719 (Bankr. D. Colo. February 8, 2008) (recognizing CCAA proceeding as foreign main proceeding, including for members of corporate group incorporated in United States); *In re Angiotech Pharmaceuticals, Inc., et al.*, No. 11-10269 (Bankr. D. Del. Feb. 22, 2011); *In re MAAX Corporation,* No. 08-11443 (Bankr. D. Del. Aug 5, 2008) (same); *In re Destinator Technologies, Inc.*, No. 08-11003 (Bankr. D. Del. June 6, 2008) (same).

*Headquarters and Management.* Cline, the parent of the Cline Group, is a Canadian entity incorporated under the laws of British Columbia, with its registered head office located in Vancouver, British Columbia.[6]  Although New Elk and North Central are incorporated in Colorado, the Cline Group operates as a highly centralized business with its corporate head office and nerve center located in Toronto, Ontario.[7]  The majority of the executive management of the Cline Group is shared, and corporate-level decision making for the Cline Group, including decisions with respect to New Elk and North Central, are undertaken by the executive management of Cline.[8]  Indeed, the Cline Group's major contracts, including those of New Elk and North Central, are approved at the corporate level by the executive management of Cline.[9]

Further, a substantial portion of administrative functions in respect of the Cline Group, including information technology, general accounting, financial reporting, budgeting, and human resource functions related to the Cline Debtors, are carried out at the headquarters in Toronto.[10]  In addition, Cline operates a centralized cash management system from the Toronto headquarters, pursuant to which Cline, as parent company, approves the expenditures of all members of the Cline Group, advances funds for all such expenditures,

---

[6]   Chapter 15 Petitions ¶ 33.
[7]   *Id.*
[8]   *Id.*
[9]   *Id.*
[10]   *Id.* at ¶ 34.

monitors the consolidated cash balance of the Cline Group and provides reporting on the Cline Group's cash balances to the board of directors of Cline.[11]  And New Elk and North Central have Canadian bank accounts with the Bank of Montreal located in Toronto, Ontario.[12]

*Property and Assets.* The Cline Debtors' principal property and assets are located in Canada and the United States.[13]

*Creditors.* Cline was publicly listed on the Toronto Stock Exchange until June 21, 2013 and the most recent annual general meeting of Cline was held in Toronto, Ontario.[14]  Further, Cline is the principal borrower/obligor under secured notes (the "**Secured Notes**") which are the primary source of financing for the Cline Group.[15]  New Elk and North Central rely nearly exclusively on Cline to finance their operations and are liable as guarantors for Cline's obligations in respect of the Secured Notes.[16]  The Secured Notes, which represent in excess of 95% of the Cline Group's liabilities, are held by beneficial owners whose investments are managed by Marret, which is based in Toronto, Ontario.[17]  In addition, the Computershare Trust Company of Canada, the trustee for the Secured Notes, is located in Toronto, Ontario, and it is believed that approximately 97% of the Secured Noteholders are domiciled in Canada.[18]

*Controlling Law*.  The Secured Notes, which represent the vast majority of the Cline Group's liabilities and are the primary source of funding for the Cline Group, were issued by Cline pursuant to indentures governed by the laws of the Province of Ontario.[19]

---

[11]  *Id.*
[12]  *Id.*
[13]  *Id.* at ¶ ¶ 3-4.
[14]  *Id.* at ¶ 6.
[15]  *Id.* at ¶ 15.
[16]  *Id.*
[17]  *Id.*
[18]  *Id.*
[19]  *Id.*

Further, the documents executed by Cline granting security interests for payment obligations in respect of the Secured Notes are governed by the laws of the Province of Ontario.[20]

       8.    Accordingly, the Canadian Proceeding is pending where each member of the Cline Debtors has its center of main interests and the proceeding constitutes a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code.

E.    <u>The Monitor is Entitled to an Order Granting Recognition of the Canadian Proceeding as a Foreign Main Proceeding</u>

       9.    As evidenced above, the Canadian Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code, the Monitor applying for recognition is a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code, and the Chapter 15 Petitions meet the requirements of section 1515 of the Bankruptcy Code. Section 1517(a) of the Bankruptcy Code provides, in pertinent part, that "[s]ubject to section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if - (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign non-main proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515. 11 U.S.C. §1517(a). *See also* H.R. Rep. 109-31(I), 109 Cong., Sess. 2005, *reprinted in* 2005 U.S.C.C.A.N. 88, 169 at 175 (noting, in enacting chapter 15, that the "decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings of the sort previously mandated by section 304(c) of the Bankruptcy Code. The requirements of this section, which incorporates the definitions in section 1502 and sections 101(23) and (24), are all that must be fulfilled to attain recognition"). Accordingly, the Monitor

---

[20]   *Id.* at ¶¶ 9-10.

respectfully submits that the Court should enter an order recognizing the Canadian Proceeding as a "foreign main proceeding" pursuant to section 1517 of the Bankruptcy Code.

II.

### THE MONITOR IS ENTITLED TO AN ORDER ENFORCING THE ONTARIO ORDERS

10.    In connection with the recognition of the Canadian Proceedings, the Monitor seeks enforcement in the United States of the Initial Order, the Claims Procedure Order, and the Meetings Order of the Ontario Court.  The Monitor respectfully submits that such relief is warranted under sections 105(a), 1507, and 1521 of the Bankruptcy Code and the general principles of comity that underpin chapter 15.

A.    The Requested Relief is Warranted under Sections 105(a), 1507, and 1521 of the Bankruptcy Code

11.    Chapter 15 of the Bankruptcy Code embodies longstanding principles of international comity and cooperation that weigh heavily in favor of the enforcement of the Ontario Orders in the United States.  *See Victrix S.S., Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987) ("American courts have long recognized the need to extend comity to foreign bankruptcy proceedings."); *In re Atlas Shipping A/S*, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009) (Chapter 15 "specifically contemplates that the court should be guided by principles of comity and cooperation with foreign courts in deciding whether to grant the foreign representative additional post-recognition relief."); *Ad Hoc Group of Vitro Noteholders v. Vitro SAB De CV (In re Vitro SAB De CV)*, 701 F.3d 1031, 1044 (5th Cir. 2012) ("Central to Chapter 15 is comity."); *In re Fairfield Sentry Ltd.*, 484 B.R. 615, 626 (Bankr. S.D.N.Y. 2013) ("Chapter 15 emanates from and was designed around this central concept of comity, as evidenced by its primary purpose and deferential framework for international judicial cooperation.").  As courts

11

have recognized, while comity does not demand categorical deference to a foreign proceeding, under these principles "a foreign judgment should generally be accorded comity if its proceedings are 'fair and impartial.'"  *Collins v. Oilsands Quest, Inc.*, 484 B.R. 593 (S.D.N.Y. 2012) (citing *In re Ephedra Prods. Liab. Litig.*, 349 B.R. 333, 336 (S.D.N.Y. 2006)).

12.     Further, "when the foreign proceeding is in a sister common law jurisdiction with procedures akin to our own, comity should be extended with less hesitation, there being fewer concerns over the procedural safeguards employed in those foreign proceedings." (internal quotations and citations omitted).  *In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, *Inc.*, 238 B.R. 25, 67 (Bankr. S.D.N.Y. 1999), *aff'd*, 238 B.R. 699 (S.D.N.Y. 2002).  US Bankruptcy courts hearing chapter 15 cases have therefore frequently granted comity to orders issued in proceedings under the CCAA.  *See supra* section I(A).

13.     In addition to general principles of comity, sections 1507 and 1521 of the Bankruptcy Code provide specific bases for a court overseeing a chapter 15 proceeding to provide additional relief to a foreign representative following the recognition of a foreign proceeding.  Section 1521 allows a court to grant "any appropriate relief," including "any relief that may be available to a trustee," subject to certain limitations and provided that "the interests of the creditors and other interested entities, including the debtor, are sufficiently protected."  11 U.S.C. §§ 1521, 1522.  Section 1507 empowers a court to provide "additional assistance" to a foreign representative provided that such assistance, "consistent with the principles of comity," will reasonably assure:  (1) just treatment of all holders of claims against or interests in the debtor's property; (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding; (3) prevention of preferential or fraudulent dispositions of property of the debtor; (4) distribution of proceeds of

the debtor's property substantially in accordance with the order prescribed by this title; and (5) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.  11 U.S.C. § 1507.

14.     In *In re Vitro*, the Fifth Circuit Court of Appeals considered the relationship between sections 1521 and 1507 of the Bankruptcy Code and established an analytical framework for considering requests for relief under chapter 15. *Vitro*, 701 F.3d at 1056.  Under the *Vitro* analysis, a court should initially consider whether the requested relief falls under one of the explicit provisions of section 1521. *Id*. If it does not, then the court must consider whether the requested relief constitutes "appropriate relief" under section 1521(a), which the *Vitro* court held to be coextensive with relief provided under former section 304 of the Bankruptcy Code, the precursor to chapter 15, or otherwise available in the United States. *Id*. Finally, if the requested relief goes beyond the relief previously available under section 304 or currently available under United States law, then a court must consider 1507, which allows for relief "more extraordinary" than that provided under section 1521.  *Id*. at 1057 (internal citations omitted).

B.     <u>The Enforcement of the Ontario Orders is Warranted under Section 1521 of the Bankruptcy Code</u>

   i.   *The Initial Order Should Be Enforced*

15.     The Initial Order provides the Cline Debtors with relief that is similar to and consistent with the relief that is available automatically under sections 362, 1107 and 1108 of the Bankruptcy Code to chapter 11 debtors upon filing a petition and to foreign representatives and/or chapter 15 debtors upon the court granting recognition of the debtor's foreign proceeding as a "foreign main proceeding" under section 1520 of the Bankruptcy Code.  For example, the Initial Order: (i) authorizes the Cline Debtors to continue managing and operating their property,

including the pre-existing cash management system; (ii) appoints the Monitor; (ii) stays all proceedings against the Cline Debtors and the Monitor as well as certain proceedings against former, current or future directors and officers of the Cline Debtors, without the written consent of the Cline Debtors and the Monitor or leave of the Ontario Court through December 31, 2014; (iii) authorizes the Cline Debtors to file the Plan; (iv) prevents parties from altering or terminating agreements with the Cline Debtors; (v) authorizes the Cline Debtors to restructure their business by downsizing or shutting down operations, selling assets, terminating employees or repudiating leases, with the consequences thereof dealt with in a plan of compromise or arrangement or on further order of the Ontario Court; and (vi) authorizes Marret to take actions in the proceedings in relation to the Secured Notes.

16.     Section 1521 allows the Court to give full force and effect in the United States to the Initial Order, as the relief granted by the Ontario Court would be available in these circumstances under applicable United States law.  *Vitro*, 701 F.3d at 1056.  Section 1521(a)(5) of the Bankruptcy Code expressly permits the Court to entrust the administration or realization of all or part of a debtor's assets within the territorial jurisdiction of the United States to a foreign representative such as the Monitor, and sections 1521(a)(1) and (2) allow the Court to stay the commencement or continuation of actions concerning the Cline Debtors' assets, rights, obligations, or liabilities.

17.     More generally, the relief granted in the Initial Order is consistent with relief available to trustees in plenary proceedings under the Bankruptcy Code, and may therefore be approved as "additional relief" under section 1521(a)(7).  For example, the use of cash collateral is also a form of relief available to a trustee under section 363 of the Bankruptcy Code, and has been granted by other courts overseeing chapter 15 proceedings.  *See In re Madill*

*Equipment Canada, et al.*, No. 08-41426 (Bankr. W.D. Wa. Apr. 2, 2008) (authorizing the interim use of cash collateral). Likewise, orders allowing debtors to maintain their existing cash management systems are routine features of plenary cases under the Bankruptcy Code. *See e.g., In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1993) (citing impracticalities in opposition to reorganization efforts of maintaining many separate accounts). Accordingly, the Monitor respectfully submits that the relief sought in the Initial Order is consistent with relief available to a trustee under the Bankruptcy Code, and that the Initial Order may be enforced as "additional relief" under section 1521(a)(7).

18.     In fact, the Initial Order is a standard feature of proceedings under the CCAA and has routinely been enforced in full in the United States upon recognition of a CCAA proceeding through chapter 15. *See, e.g., Oilsands Quest, Inc.*, No. 12-10476 (enforcing Initial Order in full in the United States); *In re Angiotech Pharmaceuticals, Inc., et al.*, No. 11-10269 (Bankr. D. Del. Feb. 22, 2011) (same); *In re Nortel Networks Corp.*, No. 09-10164 (Bankr. D. Del. Feb. 27, 2009) (same); *In re MAAX Corporation*, No. 08-11443 (Bankr. D. Del. Aug 5, 2008) (same); *In re In re Muscletech Research and Development Inc. et al.,* Nos. 06 CIV 538 and 539 (S.D.N.Y. March 2, 2006) (same).

19.     The enforcement of the Initial Order also satisfies the requirements of section 1522 of the Bankruptcy Code because the interests of creditors and other interested entities, including the Cline Debtors themselves, are sufficiently protected thereunder. *See In re Tri-Continental Exchange Ltd.*, 349 B.R. 627, 637 (Bankr. E.D. Cal. 2006) ("Standards that inform the analysis of § 1522 protective measures in connection with discretionary relief emphasize the need to tailor relief and conditions so as to balance the relief granted to the foreign representative and the interests of those affected by such relief, without unduly favoring one

group of creditors over another.").  A consensual recapitalization of the Cline Debtors is the best, and perhaps only, means of preserving the Cline Debtors as a going concern and salvaging enterprise value for the benefit of their stakeholders.  The relief provided in the Initial Order is intended to facilitate this result by authorizing the submission of the Plan and protecting the Cline Debtors during the pendency of the Canadian Proceeding.

ii.  *The Claims Procedure Order Should be Enforced*

20.     The Claims Procedure Order, which, as described in greater detail in the Chapter 15 Petitions, generally establishes a process for the identification and determination of claims against the Cline Debtors and their present and former directors and officers.  The Claims Procedure Order should be enforced under section 1521 of the Bankruptcy Code because orders establishing claims bar dates and submission procedures are a routine feature of plenary cases under the Bankruptcy Code.  Indeed, similar orders have been enforced in other chapter 15 cases involving a plenary proceeding under the CCAA.  *See, e.g. In re Nortel Networks Corporation, et al*, No. 09-10164 (Bankr. D. Del. August 31, 2009), *In re Quebecor World Inc.*, No. 08-13814 (Bankr. S.D.N.Y. November 14, 2008) and *In re Muscletech Research and Development Inc.*, et al, 06 CIV 538 (S.D.N.Y. March 22, 2006).

iii. *The Meetings Order Should be Enforced*

21.     Likewise, the Meetings Order authorizes the Monitor to prepare and disseminate information packets regarding the Plan, categorizes similarly situated creditors into classes for the purposes of voting on the Plan, and authorizes the Monitor to convene creditor meetings for approval of the Plan.  Such relief is consistent with plan solicitation processes in plenary cases under the Bankruptcy Code.  *See* 11 U.S.C. § 1122; 1125.

C.    The Enforcement of the Ontario Orders is Warranted under Section 1507 of the Bankruptcy Code

22.    If the Court concludes that the enforcement of the Ontario Orders is not warranted under section 1521 of the Bankruptcy Code, the Monitor respectfully submits that such relief is warranted as "additional assistance" under section 1507, which empowers a court to grant relief in aid of a foreign proceeding beyond what might be available in a plenary case provided that certain considerations are satisfied.  *Vitro*, 701 F.3d at 1056.  The Monitor submits that enforcing the Ontario Orders is entirely consistent with the relevant considerations specified in section 1507:

- the Canadian Proceeding ensures the just treatment of all holders of claims against or interests in the Cline Debtors' property, as such property will be distributed in accordance with the CCAA under the supervision of the Ontario Court and under the oversight of the Monitor, which is a neutral officer of the court in the Canadian Proceeding;

- there is no allegation or evidence that claim holders in the United States will suffer prejudice or inconvenience in the processing of claims in the Canadian Proceeding;

- there is no allegation or evidence that any preferential or fraudulent disposition of the Cline Debtors' property is being made under the Ontario Orders;

- the Ontario Orders will result in the distribution of the proceeds of the Cline Debtors' property consistent with the order prescribed by the Bankruptcy Code; and

- the Ontario Orders allow the Cline Debtors to retain their going concern value, whereas absent a recapitalization in accordance with the Plan they likely would be liquidated.

11 U.S.C. § 1507(b).

23.    Further, as the Fifth Circuit observed in *Vitro*, relief granted in foreign insolvency proceedings may be enforced in the United States through section 1507 if it can be demonstrated that the requested relief "is substantially in accordance with the circumstances that

would warrant such relief in the United States." *Vitro*, 701 F.3d at 1069.  By the Ontario Orders, the Ontario Court has approved relief that is consistent with relief available in plenary bankruptcy proceedings.  Accordingly, the Monitor respectfully submits that this Court is entitled to enforce the Ontario Orders in the United States pursuant to section 1507 of the Bankruptcy Code.

D.      The Requested Relief Does Not Violate Section 1506 of the Bankruptcy Code

        *24.*      Finally, the requested relief does not violate section 1506 of the Bankruptcy Code, which provides that a court may refuse to take an action in a chapter 15 case if such "action would be manifestly contrary to the public policy of the United States."  11 U.S.C. § 1506.  The legislative history of section 1506 makes clear that the public policy exception should be "narrowly interpreted" and is restricted to "the most fundamental policies of the United States."  *In re Ephedra Prods. Liab. Litig.*, 349 B.R. 333, 336 (S.D.N.Y. 2006) (citing H.R. REP. NO. 109-31(I), at 109, *as reprinted in* 2005 U.S.C.C.A.N. 88, 172).  *See also In re Gold & Honey, Ltd.*, 410 B.R. 357 (Bankr. E.D.N.Y. 2009).  *Cf. Hilton v. Guyot*, 159 U.S. 113 (1895) (holding that a foreign judgment should generally be accorded comity if "its proceedings are according to the course of a civilized jurisprudence").  Accordingly, courts have held that the public policy exception "should be interpreted restrictively" and that "a foreign judgment should generally be accorded comity if its proceedings are . . . fair and impartial."  *In re Ephedra Prods. Liab. Litig.*, 349 B.R. at 90-91 (internal citations omitted) (affirming foreign judgment issued in the absence of a jury trial).  *See also In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010) (noting that "this public policy exception is narrowly construed" and enforcing broad third-party releases in Initial Order); *Iida v. Kitahara (In re Iida)*, 377 B.R. 243 (B.A.P. 9th Cir. 2007) ("This public policy exception is narrow and, by virtue of the qualifier

'manifestly,' is limited only to the most fundamental policies of the United States.").  Courts engaging in this analysis examine (i) whether the foreign proceeding was procedurally unfair and (ii) whether the application of foreign law would "'severely impinge the value and import' of a U.S. statutory or constitutional right, such that granting comity would 'severely hinder United States bankruptcy courts' abilities to carry out . . . the most fundamental policies and purposes' of these rights."  *In re Qimonda AG,* 433 B.R. 547, 569 (E.D. Va. 2010) (citing *Gold & Honey, Ltd.*, 410 B.R. at 372).

25. In the instant matter, the Monitor requests (i) recognition of the Canadian Proceeding as a "foreign main proceeding," and (ii) the enforcement of the Ontario Orders in the United States.  It cannot be contended that mere recognition of the Canadian Proceeding pursuant to Chapter 15 of the Bankruptcy Code would violate the public policy of the United States. Similarly, the enforcement of the Ontario Orders would not violate the public policy of the United States because, as discussed above, the Ontario Orders authorize relief that is consistent with relief available in plenary proceedings under the Bankruptcy Code.

26. Finally, paragraph 45 of the Initial Order provides that:

> THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States, or in any other foreign jurisdiction, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

Initial Order ¶ 45.  The Ontario Court has thus requested the assistance and cooperation of courts in the United States in giving effect to the Initial Order.  In the absence of any public policy concerns, such request should be granted on the basis of comity and sections 1507 and 1521 of the Bankruptcy Code.

27.     Accordingly, the Monitor respectfully submits that this Court should give full force and effect to the Ontario Orders in the United States upon recognition of the Canadian Proceeding.  Such relief would not be manifestly contrary to the public policy of the United States, as prohibited in section 1506.  Indeed, granting such recognition furthers the United States public policy respecting foreign proceedings as articulated, among other ways, through the objectives set forth in sections 1501(a) and 1508 of the Bankruptcy Code.

## CONCLUSION

WHEREFORE, the Monitor respectfully requests that this Court grant the relief requested in the Chapter 15 Petitions, and such other and further relief as may be just and proper.

Dated: Denver, Colorado
      December 3, 2014

**ALLEN & OVERY LLP**

  /s/ Ken Coleman
Ken Coleman
Jonathan Cho
1221 Avenue of the Americas
New York, New York 10020
Telephone (212) 610-6300
Facsimile (212) 610-6399
ken.coleman@allenovery.com
jonathan.cho@allenovery.com

*Attorneys for FTI Consulting Canada Inc., as Monitor and Foreign Representative of the Cline Debtors*

20