**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**
Bankruptcy Judge Elizabeth E. Brown

| | |
|---|---|
| In re:<br><br>CLINE MINING CORPORATION,<br><br>Debtor in a Foreign Proceeding. | Bankruptcy Case No.  14-26132 EEB<br><br>Chapter 15 |
| In re:<br><br>NEW ELK COAL COMPANY LLC,<br><br>Debtor in a Foreign Proceeding. | Bankruptcy Case No.  14-26133 EEB<br><br>Chapter 15 |
| In re:<br><br>NORTH CENTRAL ENERGY COMPANY,<br><br>Debtor in a Foreign Proceeding. | Bankruptcy Case No.  14-26134 EEB<br><br>Chapter 15<br><br>**Jointly Administered Under**<br>**Case No. 14-26132 EEB** |

## ORDER GRANTING RECOGNITION AND RELATED RELIEF

**THIS MATTER** was brought before the Court by FTI Consulting Canada Inc.,  the court-appointed monitor (the "**Monitor**") and authorized foreign representative of Cline Mining Corporation, New Elk Coal Company LLC, and North Central Energy Company (collectively, the "**Cline Debtors**") [1] in a proceeding (the "**Canadian Proceeding**") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, pending before the Ontario Superior Court of Justice, Commercial List (the "**Ontario Court**").

The Monitor filed *Verified Petitions for Recognition of Foreign Proceeding and Related Relief* on December 3, 2014 (the "**Chapter 15 Petitions**"), commencing the above-captioned cases

---

[1]     The last four digits of the United States Tax Identification Numbers, or similar foreign identification numbers, as applicable, for the Cline Debtors follow in parentheses:  Cline Mining Corporation (6094); New Elk Coal Company LLC (0615); and North Central Energy Company (N/A).

under chapter 15 of title 11 of the United States Code (as amended, the "**Bankruptcy Code**") and seeking the entry of an order (i) recognizing the Canadian Proceeding as a "foreign main proceeding" under section 1517 of the Bankruptcy Code and (ii) giving full force and effect in the United States to the Initial Order, the Claims Procedure Order, and the Meetings Order of the Ontario Court, dated December 3, 2014 and annexed hereto as Exhibits 1, 2, and 3 respectively, including any extensions or amendments thereof authorized by the Ontario Court (together, the "**Ontario Orders**").

The Court has considered and reviewed the Chapter 15 Petitions and the other pleadings and exhibits submitted by the Monitor in support thereof. No objections were filed to the Chapter 15 Petitions..

After due deliberation and sufficient cause appearing therefore, the Court finds and concludes as follows:

(A)     this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, 11 U.S.C. § 1501;

(B)     this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P);

(C)     venue is proper in this District pursuant to 28 U.S.C. § 1410(3);

(D)     the Monitor is a "person" within the meaning of 11 U.S.C. § 101(41) and is the duly appointed "foreign representative" of the Cline Debtors within the meaning of 11 U.S.C. § 101(24);

(E)     the cases were properly commenced pursuant to 11 U.S.C. §§ 1504 and 1509, and the Chapter 15 Petitions meet the requirements of 11 U.S.C. §§ 1504 and 1515;

(F)     the Canadian Proceeding is a foreign proceeding within the meaning of 11 U.S.C. § 101(23);

(G)     the Canadian Proceeding is entitled to recognition by this Court pursuant to 11 U.S.C. § 1517;

(H)     the Canadian Proceeding is pending in Ontario, Canada, where each of the Cline Debtors has its center of main interests within the meaning of 11 U.S.C. § 1502(4), and as such constitutes a "foreign main proceeding" pursuant to 11 U.S.C. § 1502(4) and is entitled to recognition as a foreign main proceeding pursuant to 11 U.S.C. § 1517(b)(1);

(I)          the Monitor is entitled to additional relief pursuant to 11 U.S.C. §§ 1507 and 1521 and all relief afforded foreign main proceedings automatically upon recognition pursuant to 11 U.S.C. § 1520; and

(J)          the relief granted herein is necessary and appropriate, in the interest of the public and international comity, and consistent with the public policy of the United States.

NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1.          The Canadian Proceeding is hereby recognized as a foreign main proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code, and all automatic relief under section 1520 of the Bankruptcy Code shall apply in these cases.

2.          The Ontario Orders, and any amendments or extensions thereof as may be granted from time to time by the Ontario Court, are hereby given full force and effect in the United States pursuant to sections 1507 and 1521 of the Bankruptcy Code.

3.          Notwithstanding anything to the contrary contained herein, this Order shall not be construed as (a) enjoining a police or regulatory act of a governmental unit, including a criminal action or proceeding, or (b) staying the exercise of any rights in connection with such act that are not subject to the stay arising under section 362(a) of the Bankruptcy Code.

4.          This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any request for additional relief or any adversary proceeding brought in and through these cases, and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of this Court.

5.          The Chapter 15 Petitions and supporting papers shall be available upon request at the offices of Allen & Overy LLP, 1221 Avenue of the Americas, New York, New York 10020 to the attention of Mark Nixdorf, (212) 610-6300, mark.nixdorf@allenovery.com.

6.     Notwithstanding Bankruptcy Rule 7062, made applicable to these cases by Bankruptcy Rule 1018, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and upon its entry, this Order shall become final and appealable.

7.     The Monitor shall give notice of this Order to all creditors and parties in interest or their counsel of record.  The notice need not include the exhibits to this Order, but should provide information on where copies of the exhibits may be accessed.

Dated:  January 15, 2015

BY THE COURT:

Elizabeth E. Brown,
United States Bankruptcy Judge

**<u>Exhibit A</u>**

**<u>Revised Proposed Order</u>**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO
Bankruptcy Judge Elizabeth E. Brown

| | |
|---|---|
| In re:<br><br>CLINE MINING CORPORATION,<br><br>Debtor in a Foreign Proceeding. | Bankruptcy Case No.  14-26132 EEB<br><br>Chapter 15 |
| In re:<br><br>NEW ELK COAL COMPANY LLC,<br><br>Debtor in a Foreign Proceeding. | Bankruptcy Case No.  14-26133 EEB<br><br>Chapter 15 |
| In re:<br><br>NORTH CENTRAL ENERGY COMPANY,<br><br>Debtor in a Foreign Proceeding. | Bankruptcy Case No.  14-26134 EEB<br><br>Chapter 15<br><br>**Jointly Administered Under<br>Case No. 14-26132 EEB** |

## ORDER GRANTING RECOGNITION AND RELATED RELIEF

**THIS MATTER** was brought before the Court by FTI Consulting Canada Inc.,  the court-appointed monitor (the "**Monitor**") and authorized foreign representative of Cline Mining Corporation, New Elk Coal Company LLC, and North Central Energy Company (collectively, the "**Cline Debtors**") [1] in a proceeding (the "**Canadian Proceeding**") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, pending before the Ontario Superior Court of Justice, Commercial List (the "**Ontario Court**").

The Monitor filed *Verified Petitions for Recognition of Foreign Proceeding and Related Relief* on December 3, 2014 (the "**Chapter 15 Petitions**"), commencing the above-captioned cases

---
[1]    The last four digits of the United States Tax Identification Numbers, or similar foreign identification numbers, as applicable, for the Cline Debtors follow in parentheses:  Cline Mining Corporation (6094); New Elk Coal Company LLC (0615); and North Central Energy Company (N/A).

under chapter 15 of title 11 of the United States Code (as amended, the "**Bankruptcy Code**") and seeking the entry of an order (i) recognizing the Canadian Proceeding as a "foreign main proceeding" under section 1517 of the Bankruptcy Code and (ii) giving full force and effect in the United States to the Initial Order, the Claims Procedure Order, and the Meetings Order of the Ontario Court, dated December 3, 2014 and annexed hereto as Exhibits 1, 2, and 3 respectively, including any extensions or amendments thereof authorized by the Ontario Court (together, the "**Ontario Orders**").

The Court has considered and reviewed the Chapter 15 Petitions and the other pleadings and exhibits submitted by the Monitor in support thereof.  No objections were filed to the Chapter 15 Petitions..

After due deliberation and sufficient cause appearing therefore, the Court finds and concludes as follows:

(A)      this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, 11 U.S.C. § 1501;

(B)      this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P);

(C)      venue is proper in this District pursuant to 28 U.S.C. § 1410(3);

(D)      the Monitor is a "person" within the meaning of 11 U.S.C. § 101(41) and is the duly appointed "foreign representative" of the Cline Debtors within the meaning of 11 U.S.C. § 101(24);

(E)      the cases were properly commenced pursuant to 11 U.S.C. §§ 1504 and 1509, and the Chapter 15 Petitions meet the requirements of 11 U.S.C. §§ 1504 and 1515;

(F)      the Canadian Proceeding is a foreign proceeding within the meaning of 11 U.S.C. § 101(23);

(G)      the Canadian Proceeding is entitled to recognition by this Court pursuant to 11 U.S.C. § 1517;

(H)      the Canadian Proceeding is pending in Ontario, Canada, where each of the Cline Debtors has its center of main interests within the meaning of 11 U.S.C. § 1502(4), and as such constitutes a "foreign main proceeding" pursuant to 11 U.S.C. § 1502(4) and is entitled to recognition as a foreign main proceeding pursuant to 11 U.S.C. § 1517(b)(1);

(I)        the Monitor is entitled to additional relief pursuant to 11 U.S.C. §§ 1507 and 1521 and all relief afforded foreign main proceedings automatically upon recognition pursuant to 11 U.S.C. § 1520; and

(J)        the relief granted herein is necessary and appropriate, in the interest of the public and international comity, and consistent with the public policy of the United States.

NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1.      The Canadian Proceeding is hereby recognized as a foreign main proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code, and all automatic relief under section 1520 of the Bankruptcy Code shall apply in these cases.

2.      The Ontario Orders, and any amendments or extensions thereof as may be granted from time to time by the Ontario Court, are hereby given full force and effect in the United States pursuant to sections 1507 and 1521 of the Bankruptcy Code.

3.      Notwithstanding anything to the contrary contained herein, this Order shall not be construed as (a) enjoining a police or regulatory act of a governmental unit, including a criminal action or proceeding, or (b) staying the exercise of any rights in connection with such act that are not subject to the stay arising under section 362(a) of the Bankruptcy Code..

4.      This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any request for additional relief or any adversary proceeding brought in and through these cases, and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of this Court.

5.      The Chapter 15 Petitions and supporting papers shall be available upon request at the offices of Allen & Overy LLP, 1221 Avenue of the Americas, New York, New York 10020 to the attention of Mark Nixdorf, (212) 610-6300, mark.nixdorf@allenovery.com.

6.     Notwithstanding Bankruptcy Rule 7062, made applicable to these cases by Bankruptcy Rule 1018, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and upon its entry, this Order shall become final and appealable.

Dated: Denver, Colorado
       January __, 2015

 

_____

United States Bankruptcy Judge

**<u>EXHIBIT 1</u>**

**Initial Order**

Court File No. CV14-10781-00CL

## ONTARIO
## SUPERIOR COURT OF JUSTICE
## (COMMERCIAL LIST)

| THE HONOURABLE REGIONAL | ) | WEDNESDAY, THE 3RD |
|---|---|---|
| | ) | |
| SENIOR JUSTICE MORAWETZ | ) | DAY OF DECEMBER, 2014 |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF CLINE MINING CORPORATION, NEW ELK COAL COMPANY LLC AND NORTH CENTRAL ENERGY COMPANY (each an "Applicant" and collectively, the "Applicants")**

## INITIAL ORDER

THIS APPLICATION, made by the Applicants, pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**") was heard this day at 330 University Avenue, Toronto, Ontario.

ON READING the affidavit of Matthew Goldfarb sworn December 2, 2014 and the Exhibits thereto (the "**Goldfarb Affidavit**") and the Pre-Filing Report of the Proposed Monitor, FTI Consulting Canada Inc. ("**FTI**"), and on being advised that there are no secured creditors who are likely to be affected by the charges created herein other than those served, and on hearing the submissions of counsel for the Applicants, FTI, Marret Asset Management Inc. (on behalf of the beneficial holders of the Secured Notes (as defined below) (the "**Secured Noteholders**"), in such capacity "**Marret**") and such other counsel as were present, no one else appearing for any other party, and on reading the consent of FTI to act as the Monitor,

- 2 -

**SERVICE**

1.      THIS COURT ORDERS that the time for service of the Notice of Application and the Application Record is hereby abridged and validated so that this Application is properly returnable today and hereby dispenses with further service thereof.

**APPLICATION**

2.      THIS COURT ORDERS AND DECLARES that the Applicants are companies to which the CCAA applies.

**PLAN OF ARRANGEMENT**

3.      THIS COURT ORDERS that each of the Applicants shall have the authority to file and may, subject to further order of this Court, file with this Court, individually or collectively, a plan of compromise or arrangement (hereinafter referred to as the "**Plan**").

**POSSESSION OF PROPERTY AND OPERATIONS**

4.      THIS COURT ORDERS that the Applicants shall remain in possession and control of their current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof (the "**Property**"). Subject to further Order of this Court, the Applicants shall continue to carry on business in a manner consistent with the preservation of their business (the "**Business**") and Property. The Applicants are authorized and empowered to continue to retain and employ the employees, consultants, agents, experts, accountants, counsel and such other persons (collectively "**Assistants**") currently retained or employed by them, with liberty to retain such further Assistants as they deem reasonably necessary or desirable in the ordinary course of business in accordance with existing Business practices or for the carrying out of the terms of this Order.

5.      THIS COURT ORDERS that the Applicants shall be entitled to continue to utilize the central cash management system currently in place as described in the Goldfarb Affidavit or replace it with another substantially similar central cash management system (the "**Cash Management System**") and that any present or future bank providing the Cash Management System shall not be under any obligation whatsoever to inquire into the propriety, validity or

- 3 -

legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by the Applicants of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, shall be entitled to provide the Cash Management System without any liability in respect thereof to any Person (as hereinafter defined) other than the Applicants, pursuant to the terms of the documentation applicable to the Cash Management System, and shall be, in its capacity as provider of the Cash Management System, an unaffected creditor under the Plan with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System.

6.      THIS COURT ORDERS that the Applicants shall be entitled but not required to pay the following expenses whether incurred prior to or after this Order:

(a)     all outstanding and future wages, salaries, commissions, bonuses, incentive payments, employee and pension benefits, vacation pay and expenses payable on or after the date of this Order in respect of employees, contractors, directors, officers or other personnel providing services to the Applicants, in each case incurred in the ordinary course of business and consistent with existing compensation policies and arrangements and, without limiting the generality of the foregoing, the Applicants are authorized to have deposited with AIG Insurance Company of Canada an amount of up to $50,000 for the purpose of obtaining a directors and officers run-off insurance policy;

(b)     all outstanding and future amounts owing to or in respect of individuals working as independent contractors in connection with the Business in respect of services provided to the Business and expenses payable in respect thereof, in each case in the ordinary course of business and consistent with existing policies and arrangements;

(c)     the fees and disbursements of any Assistants retained or employed by any of the Applicants in respect of these proceedings or any similar or ancillary proceedings in other jurisdictions or in respect of related corporate matters, including, for greater certainty, any counsel or advisors referred to in paragraph 29 of this Order, at their standard rates and charges, including the fees and disbursements of legal counsel, financial advisors and other professional advisors retained by the Applicants; and

- 4 -

(d)     any payment referred to in paragraphs 7(a) or 7(b) of this Order that was incurred during or that pertains to the period prior to the date of this Order if, in the opinion of the Applicants and with the consent of the Monitor, the supplier of the applicable good or service or the provider of the applicable license or permit, as applicable, is critical to the Business and the ongoing operations of the Applicants.

7.      THIS COURT ORDERS that, except as otherwise provided to the contrary herein, the Applicants shall be entitled but not required to pay all reasonable expenses incurred by the Applicants in carrying on the Business in the ordinary course after this Order, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

(a)     all expenses and capital expenditures reasonably necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors and officers insurance), maintenance, security services and any license fees, permit fees, royalties, user fees or levies in respect of the Business or the Property; and

(b)     payment for goods and services supplied or to be supplied to any of the Applicants, or to obtain the release of goods contracted for prior to the date of this Order.

8.      THIS COURT ORDERS that the Applicants shall remit, in accordance with legal requirements, or pay:

(a)     any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from employees' wages, including, without limitation, amounts in respect of (i) employment insurance, (ii) Canada Pension Plan and (iii) income taxes;

(b)     all goods and services or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by the Applicants in connection with the sale of goods and services by the Applicants, but only where such Sales Taxes are accrued or collected after the date of this Order, or where such Sales Taxes were accrued or collected prior to the date of this Order but not required to be remitted until on or after the date of this Order, and

- 5 -

(c)     any amount payable to the Crown in right of Canada or of any Province thereof or any political subdivision thereof or any other taxation authority in respect of municipal realty, municipal business or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured creditors and which are attributable to or in respect of the carrying on of the Business by the Applicants.

9.      THIS COURT ORDERS that until a real property lease is disclaimed in accordance with the CCAA, the Applicants shall pay all amounts constituting rent or payable as rent under real property leases (including, for greater certainty, common area maintenance charges, utilities and realty taxes and any other amounts payable to the landlord under the lease) or as otherwise may be negotiated between the applicable Applicant and the landlord from time to time ("**Rent**"), for the period commencing from and including the date of this Order, at such intervals as such Rent is usually paid in the ordinary course of business, in advance (but not in arrears).  On the date of the first of such payments, any Rent relating to the period commencing from and including the date of this Order shall also be paid.

10.     THIS COURT ORDERS that, except as specifically permitted herein, the Applicants are hereby directed, until further Order of this Court: (a) to make no payments of principal, interest thereon or otherwise on account of amounts owing by the Applicants to any of their creditors as of this date; (b) to grant no security interests, trust, liens, charges or encumbrances upon or in respect of any of their Property; (c) to not grant credit or incur liabilities except in the ordinary course of the Business in accordance with existing Business practices; and (d) to make no payments in respect of equity claims or equity interests.

**RESTRUCTURING**

11.     THIS COURT ORDERS that each of the Applicants shall, subject to such requirements as are imposed by the CCAA, have the right to:

(a)     permanently or temporarily cease, downsize or shut down any of its business or operations, and to dispose of redundant or non-material assets not exceeding $750,000 in any one transaction or $1.5 million in the aggregate, subject to the prior approval of Marret;

- 6 -

(b)     to sell assets not exceeding $750,000 in any one transaction or $1.5 million in the aggregate, subject to the prior approval of Marret;

(c)     terminate the employment of such of its employees or temporarily or indefinitely lay off such of its employees as it deems appropriate and on such terms as may be agreed by the applicable Applicant and the applicable employee, or, failing such agreement, to deal with the consequences thereof in the Plan;

(d)     in accordance with paragraphs 12 and 13, vacate, abandon or quit the whole but not part of any leased premises and disclaim any real property lease and any ancillary agreements relating to any leased premises, in accordance with Section 32 of the CCAA, on such terms as may be agreed upon between the applicable Applicant and such landlord, or failing such agreement, to deal with the consequences thereof in the Plan, subject in each case to the prior approval of Marret;

(e)     disclaim, in whole or in part, such of its arrangements or agreements of any nature whatsoever with whomsoever, whether oral or written, as the applicable Applicant deems appropriate, in accordance with Section 32 of the CCAA, with such disclaimers to be on such terms as may be agreed upon between the applicable Applicant and such counter-parties, or failing such agreement, to deal with the consequences thereof in the Plan, subject in each case to the prior approval of Marret;

(f)     subject to the consent of the Monitor and Marret, return any equipment that is subject to a valid first-ranking security to the applicable equipment provider holding such security in satisfaction of such equipment provider's claims on terms to be agreed between the applicable Applicant and such equipment provider, or failing such agreement, to deal with the consequences thereof in the Plan; and

(g)     pursue all avenues of refinancing of its Business or Property, in whole or part, subject to prior approval of this Court being obtained before any material refinancing,

all of the foregoing to permit the Applicants to proceed with an orderly restructuring of the Business (the "**Restructuring**").

- 7 -

12.    THIS COURT ORDERS that each of the Applicants shall provide each of the relevant landlords with notice of the applicable Applicant's intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal.  The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal and, if the landlord disputes the applicable Applicant's entitlement to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors, such landlord and such Applicant, or by further Order of this Court upon application by such Applicant on at least two (2) days notice to such landlord and any such secured creditors. If any of the Applicants disclaims a lease governing a premises leased by such Applicant in accordance with Section 32 of the CCAA, such Applicant shall not be required to pay Rent under such lease pending resolution of any such dispute (other than Rent payable for the notice period provided for in Section 32(5) of the CCAA), and the disclaimer of the lease shall be without prejudice to such Applicant's claim to the fixtures in dispute.

13.    THIS COURT ORDERS that if a notice of disclaimer is delivered pursuant to Section 32 of the CCAA, then (a) during the notice period prior to the effective time of the disclaimer, the landlord may show the affected leased premises to prospective tenants during normal business hours, on giving the applicable Applicant and the Monitor 24 hours' prior written notice, and (b) at the effective time of the disclaimer, the relevant landlord shall be entitled to take possession of any such leased premises without waiver of or prejudice to any claims or rights such landlord may have against the applicable Applicant in respect of such lease or leased premises, provided that nothing herein shall relieve such landlord of its obligation to mitigate any damages claimed in connection therewith.

**NO PROCEEDINGS AGAINST THE APPLICANTS OR THE PROPERTY**

14.    THIS COURT ORDERS that until and including December 31, 2014, or such later date as this Court may order (the "**Stay Period**"), no proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**") shall be commenced or continued against or in respect of any of the Applicants or the Monitor, or affecting the Business or the Property, except with the written consent of the Applicants and the Monitor, or with leave of this Court, and any and all

- 8 -

Proceedings currently under way against or in respect of any of the Applicants or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

**NO EXERCISE OF RIGHTS OR REMEDIES**

15.     THIS COURT ORDERS that during the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of any of the Applicants or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended except with the written consent of the Applicants and the Monitor, or leave of this Court, provided that nothing in this Order shall (i) empower the Applicants to carry on any business which the Applicants are not lawfully entitled to carry on, (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA, (iii) prevent the filing of any registration to preserve or perfect a security interest, or (iv) prevent the registration of a claim for lien.

**NO INTERFERENCE WITH RIGHTS**

16.     THIS COURT ORDERS that during the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by any of the Applicants, except with the written consent of the Applicants and the Monitor, or leave of this Court.

**CONTINUATION OF SERVICES**

17.     THIS COURT ORDERS that during the Stay Period, all Persons having oral or written agreements with any of the Applicants or statutory or regulatory mandates for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, equipment leasing services, transportation services, utility or other services to the Business or any of the Applicants, are hereby restrained until further Order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the applicable Applicant, and that the Applicants shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each

- 9 -

case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the Applicants in accordance with normal payment practices of the Applicants or such other practices as may be agreed upon by the supplier or service provider and each of the applicable Applicant and the Monitor, or as may be ordered by this Court.

**NON-DEROGATION OF RIGHTS**

18.    THIS COURT ORDERS that, notwithstanding anything else in this Order, no Person shall be prohibited from requiring immediate payment for goods, services, use of lease or licensed property or other valuable consideration provided on or after the date of this Order, nor shall any Person be under any obligation on or after the date of this Order to advance or re-advance any monies or otherwise extend any credit to the Applicants. Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.

**PROCEEDINGS AGAINST DIRECTORS AND OFFICERS**

19.    THIS COURT ORDERS that during the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against any of the former, current or future directors or officers of any of the Applicants with respect to any claim against the directors or officers that arose before the date hereof and that relates to any obligations of any of the Applicants whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such obligations.

**DIRECTORS' AND OFFICERS' INDEMNIFICATION AND CHARGE**

20.    THIS COURT ORDERS that each of the Applicants shall indemnify its directors and officers against obligations and liabilities that they may incur as directors or officers of the applicable Applicant after the commencement of the within proceedings, except to the extent that, with respect to any officer or director, the obligation or liability was incurred as a result of the director's or officer's gross negligence or wilful misconduct.

21.    THIS COURT ORDERS that the directors and officers of the Applicants shall be entitled to the benefit of and are hereby granted a charge (the "**Directors' Charge**") on the Property, which charge shall not exceed an aggregate amount of $500,000, as security for the indemnities

- 10 -

provided in paragraph 20 of this Order. The Directors' Charge shall have the priority set out in paragraphs 32 and 34 hereof.

22. THIS COURT ORDERS that, notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) the Applicants' directors and officers shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 20 of this Order.

**APPOINTMENT OF MONITOR**

23. THIS COURT ORDERS that FTI is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the business and financial affairs of the Applicants with the powers and obligations set out in the CCAA and as set forth herein, and that the Applicants and their shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps taken by the Applicants pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

24. THIS COURT ORDERS that the Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

(a)   monitor the Applicants' receipts and disbursements;

(b)   report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, and such other matters as may be relevant to the proceedings herein;

(c)   advise and assist the Applicants in their preparation of the Applicants' cash flow statements, which information shall be reviewed with the Monitor on a periodic basis;

(d)   advise and assist the Applicants in their development and implementation of the Plan and any amendments to the Plan;

- 11 -

(e)     assist the Applicants, to the extent required by the Applicants, with the holding and administering of creditors' meetings for voting on the Plan;

(f)     have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of the Applicants, to the extent that is necessary to adequately assess the Applicants' business and financial affairs or to perform its duties arising under this Order;

(g)     assist the Applicants, to the extent required by the Applicants, with their restructuring activities;

(h)     be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order;

(i)     assist the Applicants, to the extent required by the Applicants, with any matters relating to any foreign proceedings commenced in relation to the Applicants, including retaining independent legal counsel, agents, experts, accountants or such other persons as the Monitor deems necessary or advisable; and

(j)     perform such other duties as are required by this Order or by this Court from time to time.

25.     THIS COURT ORDERS that the Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the Business and shall not, by fulfilling its obligations hereunder, be deemed to have taken or maintained possession or control of the Business or Property, or any part thereof.

26.     THIS COURT ORDERS that nothing herein contained shall require the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, "**Possession**") of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the

- 12 -

*Canadian Environmental Protection Act*, the Ontario *Environmental Protection Act*, the *Ontario Water Resources Act*, or the Ontario *Occupational Health and Safety Act* and regulations thereunder (the "**Environmental Legislation**"), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation. The Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

27.     THIS COURT ORDERS that the Monitor shall provide any creditor of the Applicants with information provided by the Applicants in response to reasonable requests for information made in writing by such creditor addressed to the Monitor. The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph. In the case of information that the Monitor has been advised by the Applicants is confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Applicants may agree.

28.     THIS COURT ORDERS that, in addition to the rights and protections afforded the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the protections afforded the Monitor by the CCAA or any applicable legislation.

29.     THIS COURT ORDERS that the Monitor, counsel to the Monitor, counsel to the Applicants, the Chief Restructuring Officer of the Applicants (the "**CRO**") and counsel to Marret shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges, whether incurred prior to or after the date of this Order, by the Applicants as part of the costs of these proceedings. The Applicants are hereby authorized and directed to pay the accounts of the Monitor, counsel to the Monitor, counsel to the Applicants, the CRO and counsel to Marret on a weekly basis, or on such basis as otherwise agreed by the Applicants and the applicable payee and, in addition, the Applicants are hereby authorized to have paid to the Monitor a retainer in the amount of $50,000, to be held by the Monitor as security for payment of its fees and disbursements outstanding from time to time, and the Applicants are hereby

- 13 -

authorized to have paid to counsel to the Monitor a retainer in the amount of $40,000, to be held by counsel to the Monitor as security for the payment of its fees and disbursements outstanding from time to time.

30.      THIS COURT ORDERS that the Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the Commercial List of the Ontario Superior Court of Justice.

31.      THIS COURT ORDERS that the Monitor, counsel to the Monitor, counsel to the Applicants, the CRO and counsel to Marret shall be entitled to the benefit of and are hereby granted a charge (the "**Administration Charge**") on the Property, which charge shall not exceed an aggregate amount of $350,000, as security for their professional fees and disbursements incurred at the standard rates and charges of the Monitor, the CRO and such counsel, both before and after the making of this Order in respect of these proceedings.  The Administration Charge shall have the priority set out in paragraphs 32 and 34 hereof.

**VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER**

32.      THIS COURT ORDERS that the priorities of the Directors' Charge and the Administration Charge (collectively, the "**Charges**"), as among them, shall be as follows:

> First – Administration Charge; and

> Second – Directors' Charge.

33.      THIS COURT ORDERS that the filing, registration or perfection of the Charges shall not be required, and that the Charges shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered, recorded or perfected subsequent to the Charges coming into existence, notwithstanding any such failure to file, register, record or perfect.

34.      THIS COURT ORDERS that each of the Charges (all as constituted and defined herein) shall constitute a charge on the Property and such Charges shall rank in priority to all other security interests, trusts, liens, charges and encumbrances, claims of secured creditors, statutory or otherwise (collectively, "**Encumbrances**") in favour of any Person, notwithstanding the order

- 14 -

of perfection or attachment, except for any security interest listed on Schedule "A" hereto that is validly perfected and enforceable.

35.     THIS COURT ORDERS that except as otherwise expressly provided for herein, or as may be approved by this Court, including pursuant to the terms of the Plan, the Applicants shall not grant any Encumbrances over any Property that rank in priority to, or *pari passu* with, any of the Charges, unless the Applicants also obtain the prior written consent of the Monitor, Marret and the chargees entitled to the benefit of the Charges (collectively, the "**Chargees**") affected thereby, or further Order of this Court. The Applicants shall not seek any further Court-ordered charges on their Property or Business without the prior approval of Marret. Unless otherwise ordered by this Court, the terms of the release and discharge of any of the Charges shall be acceptable to the applicable Chargees affected thereby.

36.     THIS COURT ORDERS that the Charges shall not be rendered invalid or unenforceable and the rights and remedies of the Chargees under the Charges shall not otherwise be limited or impaired in any way by (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) issued pursuant to the *Bankruptcy and Insolvency Act*, R.S.C., c. B-3, as amended (the "**BIA**"), or any bankruptcy order made pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; (d) the provisions of any federal or provincial statutes; or (e) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, sublease, offer to lease or other agreement (collectively, an "**Agreement**") which binds the Applicant, and notwithstanding any provision to the contrary in any Agreement:

(a)     the creation of the Charges shall not create or be deemed to constitute a breach by any of the Applicants of any Agreement to which it is a party;

(b)     none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the creation of the Charges; and

(c)     the payments made by any of the Applicants pursuant to this Order, and the granting of the Charges, do not and will not constitute preferences, fraudulent conveyances,

- 15 -

transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

37.    THIS COURT ORDERS that any Charge created by this Order over leases of real property in Canada shall only be a Charge in the applicable Applicants' interest in such real property leases.

**THE INDENTURE TRUSTEE AND MARRET**

38.    THIS COURT ORDERS that, until the termination of these proceedings, further Order of this Court or as otherwise instructed in writing by the Secured Noteholders, Computershare Trust Company of Canada, in its capacity as indenture trustee (the "**Trustee**") in respect of the 10% senior secured bonds due June 15, 2014 (CUSIP 186905AA3 / ISIN CA 186905AA37) issued pursuant to the indenture dated December 13, 2011, as amended, and the 10% senior secured bonds due June 15, 2014 (CUSIP 186905AE5 / ISIN CA 186905AE58) issued pursuant to the indenture dated July 8, 2013, as amended (collectively the "**Secured Notes**") is hereby relieved of any obligation to take any further actions in these proceedings in respect of the Secured Notes and the indentures governing the Secured Notes (the "**Indentures**"), and Marret is hereby authorized and empowered to take all such actions in these proceedings, including without limitation: (i) filing claims of the Secured Noteholders in the CCAA claims process (provided that nothing herein prevents the Trustee from filing a proof of claim against the Applicants in relation to any unpaid fees and expenses incurred by it in the course of acting as Trustee in accordance with the Indentures); (ii) administering, soliciting and facilitating the casting of votes by the Secured Noteholders in respect of any plan of compromise or arrangement in respect of the Applicants; (iii) facilitating the distribution of consideration under the CCAA Plan to the Secured Noteholders; (iv) taking any steps or actions with respect to the security over the assets and property of the Applicants held by the Trustee in respect of the Secured Notes, including any waiver, discharge or enforcement of the security; and (v) taking any steps the Trustee is otherwise required or may be directed to take on behalf of the Secured Noteholders under the Indentures in respect of the Secured Notes.  Notwithstanding the foregoing, upon agreement between Cline Mining Corporation, Marret and the Trustee, and with the consent of the Monitor, the Trustee may take such actions as are necessary to facilitate the distribution of consideration to the Secured Noteholders pursuant to the Plan.  The Trustee is entitled to rely upon this

- 16 -

paragraph 38 and shall have no liability to any Person for complying with this paragraph 38. Cline Mining Corporation is hereby authorized to pay the reasonable and documented fees, expenses and disbursements of the Trustee (including the reasonable and documented fees, expenses and disbursements of the Trustee's counsel) incurred and payable in accordance with the Indentures up to an amount to be determined by agreement of the Applicants, the Trustee and the Monitor, or failing such agreement, by Order of the Court. In accordance with the Indentures, any amounts that are payable to the Trustee, in its individual corporate capacity, pursuant to the terms of the Indentures, if not paid in cash by the Applicants, shall be payable out of any distributions, dividends, securities or other consideration issued to the holders of the Secured Notes by the Applicants in any Plan, liquidation or otherwise.

**SERVICE AND NOTICE**

39.     THIS COURT ORDERS that the Monitor shall (i) without delay, publish in The Globe and Mail, the Denver Post and the Pueblo Chieftain a notice containing the information prescribed under the CCAA, (ii) within five days after the date of this Order, (A) make this Order publicly available in the manner prescribed under the CCAA, (B) send, in the prescribed manner, a notice to every known creditor who has a claim against any of the Applicants of more than $1000, provided that with respect to contingent claims against the Applicants in respect of the WARN Act Class Action (as defined in the Goldfarb Affidavit), the Monitor shall only be required to send a notice to counsel of record for the representative plaintiffs in the WARN Act Class Action, and (C) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder, provided that the Monitor shall not make the names and addresses of individuals who are creditors publicly available and provided further that only the representative plaintiffs in the WARN Act Class Action shall be listed in respect of the contingent claims against the Applicants in respect of the WARN Act Class Action.

40.     THIS COURT ORDERS that the E-Service Protocol of the Commercial List (the "**Protocol**") is approved and adopted by reference herein and, in this proceeding, the service of documents made in accordance with the Protocol (which can be found on the Commercial List website        at        http://www.ontariocourts.ca/scj/practice/practice-directions/toronto/e-service-

- 17 -

protocol/) shall be valid and effective service. Subject to Rule 17.05 this Order shall constitute an order for substituted service pursuant to Rule 16.04 of the Rules of Civil Procedure. Subject to Rule 3.01(d) of the Rules of Civil Procedure and paragraph 21 of the Protocol, service of documents in accordance with the Protocol will be effective on transmission. This Court further orders that a Case Website shall be established in accordance with the Protocol with the following URL: http://cfcanada.fticonsulting.com/cline.

41.     THIS COURT ORDERS that if the service or distribution of documents in accordance with the Protocol is not practicable, the Applicants and the Monitor are at liberty to serve or distribute this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery, facsimile or other electronic transmission to the Applicants' creditors or other interested parties at their respective addresses as last shown on the records of the Applicants and that any such service or distribution by courier, personal delivery or facsimile or other electronic transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

**GENERAL**

42.     THIS COURT ORDERS that the Applicants are hereby relieved of any obligation to call and hold annual meetings of their shareholders until after the termination of these CCAA proceedings or further Order of this Court.

43.     THIS COURT ORDERS that each of the Applicants and the Monitor may from time to time apply to this Court to amend, vary, supplement or replace this Order or for advice and directions concerning the discharge of their respective powers and duties under this Order or the interpretation or application of this Order.

44.     THIS COURT ORDERS that nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Applicants, the Business or the Property.

45.     THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States, or in any other foreign jurisdiction, to give effect to this Order and to assist the Applicants, the Monitor

- 18 -

and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

46.     THIS COURT ORDERS that each of the Applicants and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order, and that the Monitor is authorized and empowered to act as a representative in respect of these CCAA proceedings for the purpose of having these CCAA proceedings recognized in a jurisdiction outside Canada. Without limiting the generality of the foregoing, the Monitor is hereby authorized, as the foreign representative of the Applicants, to, if deemed advisable by the Monitor and the Applicants, apply for recognition of these CCAA proceedings and to act as the representative of these CCAA proceedings in any proceedings in the United States pursuant to Chapter 15, Title 11 of the United States Code.

47.     THIS COURT ORDERS that any interested party (other than the Applicants or the Monitor) that wishes to amend or vary this Order shall be entitled to appear or bring a motion before this Court on a date to be set by this Court upon the granting of this Order (the "**Comeback Date**"), and any such interested party shall give notice to any other party or parties likely to be affected by the order sought in advance of the Comeback Date.

48.     THIS COURT ORDERS that this Order and all of its provisions are effective as of 12:01 a.m. Eastern Standard/Daylight Time on the date of this Order.

## SCHEDULE "A"

## SECURITY REGISTRATIONS

| Secured Party | Filing No. | Collateral Description | Equipment Serial No. (if applicable) | Jurisdiction |
|---|---|---|---|---|
| Bank of Montreal/Banque de Montreal | 675927639 – 20120130 1837 1532 2055 (5 years) | Accounts, Other (relates to security for balances in respect of corporate credit cards provided by Bank of Montreal) | N/A | Ontario |
| Komatsu Financial Limited Partnership & Power Motive Corporation | 2010F070368 | Grader Wheel Loader Wheel Loader | 51669 66173 55610 | Colorado |
| Applied Industrial Technologies, Inc. | 21012F002747 | Purchase Money Security Interest in and to all Consignee's now held or hereafter acquired equipment consigned or shipped to Consignee by or on behalf of Consignor or others and under any product name, including all additions and accessions thereto and substitutions therefor and products thereof. | N/A | Colorado |
| Caterpillar Global Mining Virginia LLC | 20122061314 | Miscellaneous Assembly Drive Units & Parts | CO-0-3529520146 888198 | Colorado |
| Komatsu Financial Limited Partnership | 20132010774 | Crawler Dozer | 11716 | Colorado |
| Komatsu Financial Limited Partnership | 20132011002 | Crawler Dozer | 81206 | Colorado |

- 20 -

| Secured Party | Filing No. | Collateral Description | Equipment Serial No. (if applicable) | Jurisdiction |
|---|---|---|---|---|
| Applied Industrial Technologies, Inc. | 098991194 | Purchase Money Security Interest in and to all Consignee's now held or hereafter acquired equipment consigned or shipped to Consignee by or on behalf of Consignor or others and under any product name, including all additions and accessions thereto and substitutions therefor and products thereof. | N/A | Kansas |
| Komatsu Financial Limited Partnership | 071129329 | Motor Grader | 51669 | Kansas |
| Komatsu Financial Limited Partnership | 071129386 | Articulated Truck | A11045 | Kansas |
| Komatsu Financial Limited Partnership | 071129394 | Articulated Truck | A11052 | Kansas |
| Komatsu Financial Limited Partnership | 071129402 | Wheel Loader | 55610 | Kansas |
| Komatsu Financial Limited Partnership | 071129410 | Wheel Loader | 66173 | Kansas |

6321633

Court File No. CV14-10781-00CL

IN THE MATTER OF THE *COMPANIES' CREDITORS*
*ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF CLINE MINING CORPORATION, NEW ELK COAL COMPANY LLC AND
NORTH CENTRAL ENERGY COMPANY

---

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

---

**INITIAL ORDER**

---

**Goodmans LLP**
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, Canada  M5B 2M6

Robert J. Chadwick          (LSUC# 35165K)
Logan Willis                (LSUC# 53894K)
Bradley Wiffen              (LSUC# 64279L)

Tel: 416.979.2211
Fax: 416.979.1234
Lawyers for the Applicants

**<u>EXHIBIT 2</u>**

**Claims Procedure Order**

Court File No. CV-14-10781-00CL

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

THE HONOURABLE REGIONAL                        WEDNESDAY, THE 3RD DAY

SENIOR JUSTICE MORAWETZ                                OF DECEMBER, 2014

IN THE MATTER OF THE *COMPANIES' CREDITORS*
*ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE AND ARRANGEMENT OF
CLINE MINING CORPORATION, NEW ELK COAL COMPANY LLC AND
NORTH CENTRAL ENERGY COMPANY

<u>**CLAIMS PROCEDURE ORDER**</u>

**THIS MOTION** made by Cline Mining Corporation ("**Cline**"), New Elk Coal Company

LLC ("**New Elk**") and North Central Energy Company ("**North Central**" and, together with

Cline and New Elk, the "**Applicants**"), for an order establishing a claims procedure for the

identification and quantification of certain claims against the Applicants and their directors and

officers was heard this day at 330 University Avenue, Toronto, Ontario.

**ON READING** the Notice of Motion, the Affidavit of Matthew Goldfarb sworn

December 2, 2014 (the "**Goldfarb Affidavit**") and the Pre-Filing Report of FTI Consulting

Canada Inc. in its capacity as proposed Court-appointed monitor of the Applicants (the

"**Monitor**"), and on hearing from counsel for the Applicants, the Monitor, and Marret Asset

Management Inc. (on behalf of the beneficial holders of the Secured Notes (as defined below), in

- 2 -

such capacity "**Marret**") and such other counsel as were present, no one else appearing although duly served as appears from the affidavit of service, filed.

## SERVICE

1.    **THIS COURT ORDERS** that the time for service of the Notice of Motion and Motion Record herein be and is hereby abridged and that the motion is properly returnable today and service upon any interested party other than those parties served is hereby dispensed with.

## DEFINITIONS AND INTERPRETATION

2.    **THIS COURT ORDERS** that, for the purposes of this Order (the "**Claims Procedure Order**"), in addition to terms defined elsewhere herein, the following terms shall have the following meanings:

   (a)    "**2011 Notes**" means the 10% senior secured notes due June 15, 2014 issued by Cline pursuant to the 2011 Indenture;

   (b)    "**2011 Indenture**" means the note indenture dated December 13, 2011 that was entered into between Cline, Marret and the 2011 Trustee in connection with the issuance of the 2011 Notes, as amended from time to time;

   (c)    "**2011 Trustee**" means Computershare Trust Company of Canada, in its capacity as trustee under the 2011 Indenture;

   (d)    "**2013 Notes**" means the 10% senior secured convertible notes due June 15, 2014 issued by Cline pursuant to the 2013 Indenture;

- 3 -

(e) **"2013 Indenture"** means the note indenture dated July 8, 2013 that was entered into between Cline, Marret and the 2013 Trustee in connection with the issuance of the 2013 Notes, as amended from time to time;

(f) **"2013 Trustee"** means Computershare Trust Company of Canada, in its capacity as trustee under the 2013 Indenture;

(g) **"Affected Secured Claims"** means all Claims against one or more of the Applicants that are secured by a valid security interest over assets or property of the Applicants that are not (i) Unaffected Claims, (ii) Affected Unsecured Claims or (iii) Equity Claims; and for greater certainty, the claims comprising the Secured Noteholders Allowed Secured Claim are Affected Secured Claims;

(h) **"Affected Secured Creditor"** means the holder of an Affected Secured Claim in respect of and to the extent of such Affected Secured Claim, whether a Known Creditor or an Unknown Creditor;

(i) **"Affected Unsecured Claims"** means all Claims against one or more of the Applicants that are not secured by a valid security interest over assets or property of the Applicants and that are not (i) Unaffected Claims, (ii) Affected Secured Claims or (iii) Equity Claims; and for greater certainty, "Affected Unsecured Claims" includes the Claims comprising the Secured Noteholders Allowed Unsecured Claim, any Marret Unsecured Claim and any portion of an Affected Secured Claim in respect of which there is a deficiency in the realizable value of the security held in respect of such Claim relative to the amount of such Claim,

- 4 -

and for the purpose of this Order only (and not for purposes of the Plan or the Meetings Order), "Affected Unsecured Claims" includes WARN Act Claims;

(j)     **"Affected Unsecured Creditor"** means the holder of an Affected Unsecured Claim in respect of and to the extent of such Affected Unsecured Claim, whether a Known Creditor or an Unknown Creditor;

(k)     "**Assessments**" means Claims of Her Majesty the Queen in Right of Canada or of any Province or Territory or Municipality or any other taxation authority in any Canadian or foreign jurisdiction, including, without limitation, amounts which may arise or have arisen under any notice of assessment, notice of reassessment, notice of appeal, audit, investigation, demand or similar request from any taxation authority;

(l)     "**Business Day**" means a day, other than a Saturday, Sunday or a statutory holiday, on which banks are generally open for business in Toronto, Ontario and New York, New York;

(m)     "**Calendar Day**" means a day, including Saturday, Sunday and any statutory holidays in the Province of Ontario, Canada;

(n)     **"CCAA"** means the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended;

(o)     "**CCAA Proceedings**" means the within proceedings commenced by the Applicants under the CCAA;

(p)     "**Claim**" means:

- 5 -

(i)     any right or claim of any Person against any of the Applicants, whether or not asserted, in connection with any indebtedness, liability or obligation of any kind whatsoever of any such Applicant in existence on the Filing Date, and costs payable in respect thereof to and including the Filing Date, whether or not such right or claim is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, perfected, unperfected, present, future, known, or unknown, by guarantee, surety or otherwise, and whether or not such right is executory or anticipatory in nature, including any Assessment and any right or ability of any Person to advance a claim for contribution or indemnity or otherwise with respect to any matter, action, cause or chose in action, whether existing at present or commenced in the future, which indebtedness, liability or obligation is based in whole or in part on facts that existed prior to the Filing Date and any other claims that would have been claims provable in bankruptcy had such Applicant become bankrupt on the Filing Date, including for greater certainty any Equity Claim and any claim against any of the Applicants for indemnification by any Director or Officer in respect of a Director/Officer Claim (but excluding any such claim for indemnification that is covered by the Directors' Charge (as defined in the Initial Order)) (each, a "**Prefiling Claim**", and collectively, the "**Prefiling Claims**");

(ii)    any right or claim of any Person against any of the Applicants in connection with any indebtedness, liability or obligation of any kind

- 6 -

whatsoever owed by any such Applicant to such Person arising out of the restructuring, disclaimer, resiliation, termination or breach by such Applicant on or after the Filing Date of any contract, lease or other agreement whether written or oral and includes any other right or claim that is to be treated as a Restructuring Period Claim under the Plan (each, a "**Restructuring Period Claim**", and collectively, the "**Restructuring Period Claims**"); and

(iii)    any right or claim of any Person against one or more of the Directors and/or Officers howsoever arising, whether or not such right or claim is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, perfected, unperfected, present, future, known, or unknown, by guarantee, surety or otherwise, and whether or not such right is executory or anticipatory in nature, including any Assessment and any right or ability of any Person to advance a claim for contribution or indemnity or otherwise with respect to any matter, action, cause or chose in action, whether existing at present or commenced in the future, for which any Director or Officer is alleged to be, by statute or otherwise by law or equity, liable to pay in his or her capacity as a Director or Officer (each a "**Director/Officer Claim**", and collectively, the "**Director/Officer Claims**"),

in each case other than any Unaffected Claim;

(q)    "**Claims Bar Date**" means 5:00 p.m. on January 13, 2015.

- 7 -

(r) **"Claims Package"** means the materials to be provided to Persons who may have a Claim in accordance with this Claims Procedure Order, which materials shall include:

    (i) in the case of a Known Creditor, a Notice of Claim, a Notice of Dispute of Claim, an Instruction Letter, and such other materials as the Applicants, with the consent of the Monitor, may consider appropriate or desirable; or

    (ii) in the case of an Unknown Creditor, a blank Proof of Claim and Proof of Claim Instruction Letter, and such other materials as the Applicants, with the consent of the Monitor, may consider appropriate or desirable.

(s) **"Claims Schedule"** means a list of all known secured and unsecured Creditors with Claims against one or more of the Applicants prepared and updated from time to time by the Applicants, with the assistance of the Monitor, showing the name, last known address, last known facsimile number, and last known email address of each such Creditor (except that where such Creditor is represented by counsel known by the Applicants, the address, facsimile number, and email address of such counsel may be substituted) and the amount of each such Creditor's Claim against the applicable Applicants as valued by the Applicants;

(t) **"Class Action Counsel"** means counsel to James Gerard Jr. and Michael Cox, on behalf of themselves and all others who are alleged to be similarly situated in the WARN Act Class Action;

(u)  **"Court"** means the Superior Court of Justice (Commercial List) in the City of Toronto in the Province of Ontario;

- 8 -

(v)     "**Creditor**" means any Person having a Claim and includes, without limitation, the transferee or assignee of a Claim transferred and recognized as a Creditor in accordance with paragraph 44 hereof or a trustee, executor, liquidator, receiver, receiver and manager, or other Person acting on behalf of or through such Person;

(w)     "**Directors**" means all current and former directors (or their estates) of the Applicants, in such capacity, and "**Director**" means any one of them;

(x)     "**Disputed Claim**" means a Disputed Voting Claim or a Disputed Distribution Claim;

(y)     "**Disputed Director/Officer Claim**" means a Director/Officer Claim that is validly disputed in accordance with the Claims Procedure Order and that remains subject to adjudication in accordance with this Claims Procedure Order;

(z)     "**Disputed Distribution Claim**" means an Affected Unsecured Claim or an Affected Secured Claim (including a contingent Affected Unsecured Claim or a contingent Affected Secured Claim that may crystallize upon the occurrence of an event or events occurring after the date of the Initial Order) or such portion thereof which is not barred by any provision of this Order, which has not been allowed as a Distribution Claim, which is validly disputed for distribution purposes in accordance with this Claims Procedure Order and which remains subject to adjudication for distribution purposes in accordance with this Claims Procedure Order;

(aa)    "**Disputed Voting Claim**" means an Affected Unsecured Claim or an Affected Secured Claim (including a contingent Affected Unsecured Claim or a contingent

- 9 -

Affected Secured Claim that may crystallize upon the occurrence of an event or events occurring after the date of the Initial Order) or such portion thereof which is not barred by any provision of this Order, which has not been allowed as a Voting Claim, which is validly disputed for voting purposes in accordance with this Claims Procedure Order and which remains subject to adjudication for voting purposes in accordance with this Claims Procedure Order;

(bb)    "**Distribution Claim**" means any Claim against the Applicants, or such portion thereof, that is not barred by any provision of this Order and which has been finally accepted and determined for distribution purposes in accordance with this Claims Procedure Order and the CCAA;

(cc)    "**Equity Claim**" has the meaning set forth in Section 2(1) of the CCAA;

(dd)    "**Filing Date**" means the date of the Initial Order;

(ee)    "**Government Authority**" means any federal, provincial, state or local government, agency or instrumentality thereof or similar entity, howsoever designated or constituted exercising executive, legislative, judicial, regulatory or administrative functions in Canada, the United States, or elsewhere;

(ff)    "**Initial Order**" means the Initial Order under the CCAA dated December 3, 2014, as amended, restated or varied from time to time;

(gg)    "**Instruction Letter**" means the instruction letter to Known Creditors, substantially in the form attached as Schedule "B" hereto, regarding the Notice of

- 10 -

Claim, completion of a Notice of Dispute of Claim by a Known Creditor and the claims procedure described herein;

(hh)   "**Known Creditor**" means an Affected Unsecured Creditor or an Affected Secured Creditor whose Claim against one or more of the Applicants is known to the Applicants as of the date of this Claims Procedure Order and whose Affected Unsecured Claim or Affected Secured Claim is included in the Claims Schedule, other than a Secured Noteholder in respect of its applicable portion of the Secured Noteholders Allowed Claim, and for greater certainty shall not include a WARN Act Plaintiff in respect of a WARN Act Claim;

(ii)   "**Marret**" has the meaning set forth in the preamble of this Order;

(jj)   "**Marret Unsecured Claim**" means any proven Claims of Marret, in its individual corporate capacity and not on behalf of the Secured Noteholders, against one or more of the Applicants, including any secured Claims of Marret, in such capacity, in respect of which there is a deficiency in the realizable value of the security held by Marret relative to the amount of such secured Claim;

(kk)   "**Meetings**", and each a "**Meeting**", means a meeting of the Creditors of the Applicants called for the purpose of considering and voting in respect of a Plan;

(ll)   "**Meetings Order**" means the Order under the CCAA dated December 3, 2014 that, among other things, sets the date for the Meetings, as same may be amended, restated or varied from time to time;

- 11 -

(mm)   "**Notice of Claim**" means the notice referred to in paragraph 18 hereof, substantially in the form attached hereto as Schedule "C", advising each Known Creditor of its Claim against the Applicants as determined by the Applicants based on the books and records of the Applicants;

(nn)   "**Notice of Dispute of Claim**" means the notice referred to in paragraph 19 hereof, substantially in the form attached as Schedule "D" hereto, which must be delivered to the Monitor by any Known Creditor wishing to dispute a Notice of Claim, with reasons for its dispute;

(oo)   "**Notice of Dispute of Revision or Disallowance**" means the notice referred to in paragraph 27 or 39 hereof, as applicable, substantially in the form attached as Schedule "F" hereto, which must be delivered to the Monitor by any Unknown Creditor or a Person asserting a Director/Officer Claim wishing to dispute a Notice of Revision or Disallowance, with reasons for its dispute;

(pp)   "**Notice of Revision or Disallowance**" means the notice referred to in paragraph 26 or paragraph 38 hereof, as applicable, substantially in the form of Schedule "E" advising an Unknown Creditor or a Person asserting a Director/Officer Claim that the Applicants, with the consent of the Monitor, have revised or rejected all or part of such Unknown Creditor's Claim set out in its Proof of Claim;

(qq)   "**Notice to Creditors**" means the notice for publication by the Monitor as described in paragraph 17 hereof, substantially in the form attached hereto as Schedule "A";

- 12 -

(rr)  **"Officers"** means all current and former officers (or their estates) of the Applicants, in such capacity, and **"Officer"** means any one of them;

(ss)  **"Person"** means any individual, corporation, firm, limited or unlimited liability company, general or limited partnership, association (incorporated or unincorporated), trust, unincorporated organization, joint venture, trade union, Government Authority or any agency, regulatory body or officer thereof or any other entity, wherever situate or domiciled, and whether or not having legal status;

(tt)  **"Plan"** means the plan of compromise and arrangement to be filed by the Applicants pursuant to the CCAA as the same may be amended, supplemented or restated from time to time in accordance with the terms thereof;

(uu)  **"Plan Implementation Date"** shall have the meaning ascribed thereto in the Plan;

(vv)  **"Prefiling Claim"** has the meaning ascribed to that term in paragraph 2(p)(i) of this Claims Procedure Order;

(ww)  **"Proof of Claim"** means the Proof of Claim referred to in paragraph 24 hereof to be filed by Unknown Creditors, substantially in the form attached hereto as Schedule "H";

(xx)  **"Proof of Claim Instruction Letter"** means the instruction letter to Unknown Creditors, substantially in the form attached as Schedule "G" hereto, regarding the completion of a Proof of Claim by an Unknown Creditor;

- 13 -

(yy)  "**Restructuring Period Claim**" has the meaning ascribed to that term in paragraph 2(p)(ii) of this Claims Procedure Order;

(zz)  "**Restructuring Period Claims Bar Date**" means seven (7) Calendar Days after termination, repudiation or resiliation of the applicable agreement or other event giving rise to the applicable Restructuring Period Claim;

(aaa)  "**Secured Noteholder**" means a registered or beneficial holder of Secured Notes in that capacity, and, for greater certainty, does not include former registered or beneficial holders of Secured Notes;

(bbb)  "**Secured Noteholders Allowed Claim**" has the meaning ascribed thereto in paragraph 14 hereof;

(ccc)  "**Secured Noteholders Allowed Secured Claim**" has the meaning ascribed thereto in paragraph 15 hereof;

(ddd)  "**Secured Noteholders Allowed Unsecured Claim**" has the meaning ascribed thereto in paragraph 15 hereof;

(eee)  "**Secured Notes**" means the 2011 Notes and the 2013 Notes;

(fff)  "**Unaffected Claims**" and each an "**Unaffected Claim**" shall have the meaning ascribed thereto in the Plan;

(ggg)  "**Unknown Creditor**" means an Affected Unsecured Creditor or Affected Secured Creditor other than (i) the Secured Noteholders in respect of the Secured Noteholders Allowed Claim and (ii) any Known Creditor with respect to its Claim

- 14 -

against the Applicants included in the Claims Schedule and set out in a Notice of Claim, but includes any Secured Noteholder and any Known Creditor asserting any other Claim against the Applicants, and for greater certainty includes the WARN Act Plaintiffs in respect of any WARN Act Claims;

(hhh) **"Voting Claim"** means any Claim of a Creditor against the Applicants, or such portion thereof, that is not barred by any provision of this Order and which has been finally accepted and determined for voting at a Meeting, in accordance with the provisions of this Claims Procedure Order and the CCAA.

(iii) **"WARN Act"** means the U.S. federal Worker Adjustment and Retraining Notification Act of 1988 (29 U.S.C. §§ 2101 – 2109);

(jjj) **"WARN Act Claims"** means the Claims advanced by the WARN Act Plaintiffs in the WARN Act Class Action and any other Claims of individuals similarly situated to the WARN Act Plaintiffs that may be asserted against any of the Applicants pursuant to the WARN Act;

(kkk) **"WARN Act Class Action"** means the class action lawsuit filed against Cline and New Elk by the WARN Act Plaintiffs in the United States District Court for the District of Colorado, Case Number 1:13-CV-00277, as amended; and

(lll) **"WARN Act Plaintiffs"** means the plaintiffs in the WARN Act Class Action and all others who are alleged in the WARN Act Class Action to be similarly situated, and any other individual who is similarly situated to the plaintiffs in the WARN Act Class Action who asserts Claims against any of the Applicants pursuant to the WARN Act.

- 15 -

3.     **THIS COURT ORDERS** that all references as to time herein shall mean local time in Toronto, Ontario, Canada, and any reference to an event occurring on a Business Day shall mean prior to 5:00 p.m. on such Business Day unless otherwise indicated herein.

4.     **THIS COURT ORDERS** that all references to the word "including" shall mean "including without limitation".

5.     **THIS COURT ORDERS** that all references to the singular herein include the plural, the plural include the singular, and any gender includes the other gender.

**GENERAL PROVISIONS**

6.     **THIS COURT ORDERS** that the Applicants and the Monitor are hereby authorized to use reasonable discretion as to the adequacy of compliance with respect to the manner in which forms delivered hereunder are completed and executed, and may, where they are satisfied that a Claim has been adequately proven, waive strict compliance with the requirements of this Claims Procedure Order as to completion and execution of such forms and to request any further documentation from a Creditor that the Applicants or the Monitor may require in order to enable them to determine the validity of a Claim.

7.     **THIS COURT ORDERS** that all Claims shall be denominated in Canadian dollars. Any Claims denominated in a foreign currency shall be converted to Canadian dollars at the Bank of Canada noon exchange rate in effect on the Filing Date. For greater certainty, U.S. dollar denominated claims shall be converted at the Bank of Canada Canadian/U.S. dollar noon exchange rate in effect on the Filing Date.

- 16 -

8.    **THIS COURT ORDERS** that, unless otherwise agreed by the Applicants, interest and penalties that would otherwise accrue after the Filing Date shall not be included in any Claim.

9.    **THIS COURT ORDERS** that copies of all forms delivered hereunder, as applicable, and determinations of Claims by the Court shall be maintained by the Monitor.

10.   **THIS COURT ORDERS** that, notwithstanding anything to the contrary herein, the Applicants may, with the consent of the Monitor, refer any Affected Unsecured Creditor's Claim, Affected Secured Creditor's Claim or Director/Officer Claim for resolution to the Court, where in the Applicants' view such a referral is preferable or necessary for the resolution or determination of the Claim.

11.   **THIS COURT ORDERS** that the Applicants may, with the consent of the Monitor, apply to this Court for an Order appointing a claims officer to resolve Disputed Claims and/or Disputed Director/Officer Claims on such terms and in accordance with such process as may be ordered by this Court.

**MONITOR'S ROLE**

12.   **THIS COURT ORDERS** that the Monitor, in addition to its prescribed rights, duties, responsibilities and obligations under the CCAA and under the Initial Order, shall assist the Applicants in connection with the administration of the claims procedure provided for herein, including the determination of Claims of Creditors, if applicable, and the referral of a particular Claim to the Court, as requested by the Applicants from time to time, and is hereby directed and empowered to take such other actions and fulfill such other roles as are contemplated by this Claims Procedure Order.

- 17 -

## CLAIMS PROCEDURE FOR SECURED NOTEHOLDERS

13.    **THIS COURT ORDERS** that neither the Applicants nor the Monitor shall be required
to send to a Secured Noteholder a Notice of Claim and neither the Secured Noteholders,
the 2011 Trustee nor the 2013 Trustee shall be required to file a Proof of Claim in respect
of Claims pertaining to the Secured Notes.

14.    **THIS COURT ORDERS AND DECLARES** that the aggregate of all amounts owing
directly by Cline under the 2011 Indenture and the 2013 Indenture and the guarantees
executed by New Elk and North Central in respect of the Secured Notes (including, in
each case, principal and accrued interest thereon) up to the Filing Date (the "**Secured
Noteholders Allowed Claim**") shall be determined by the Applicants, with the consent
of Marret, and shall be referenced in the Plan.  In the event that the Applicants and
Marret are unable to agree on the amount of the Secured Noteholders Allowed Claim,
any of such parties shall be entitled to apply to this Court concerning the determination of
the Secured Noteholders Allowed Claim.

15.    **THIS COURT ORDERS** that, for purposes of this Claims Procedure Order, the
Meetings Order and the Plan, the Secured Noteholders Allowed Claim shall be allowed
for both voting and distribution purposes against the Applicants as follows:

(a)    an amount to be agreed by the Applicants and Marret, which amount shall be
referenced in the Plan, shall be allowed as Affected Secured Claims against the
Applicants (collectively the "**Secured Noteholders Allowed Secured Claim**");
and

- 18 -

(b)     an amount to be agreed by the Applicants and Marret, which amount shall be referenced in the Plan, shall be allowed as Affected Unsecured Claims against the Applicants (collectively the "**Secured Noteholders Allowed Unsecured Claim**"),

provided that the foregoing treatment of the Secured Noteholders Allowed Claim shall be without prejudice to the right of the Secured Noteholders, Marret, the 2011 Trustee or the 2013 Trustee to treat the full amount of the Secured Noteholders Allowed Claim as a secured Claim for any purpose other than voting at the Meetings or receiving distributions under the Plan, as applicable.  In the event that the Applicants and Marret are unable to agree on the amount of the Secured Noteholders Allowed Secured Claim or the Secured Noteholders Allowed Unsecured Claim, any of such parties shall be entitled to apply to this Court concerning the determination of such Claims.

16.     **THIS COURT ORDERS** that the Claims comprising the Secured Noteholders Allowed Secured Claim and the Secured Noteholders Allowed Unsecured Claim shall constitute Voting Claims and Distribution Claims for the purpose of voting on and receiving distributions pursuant to the Plan.

## NOTICE TO CREDITORS

17.     **THIS COURT ORDERS** that forthwith after the date of this Claims Procedure Order the Monitor shall publish the Notice to Creditors, for at least two (2) Business Days in The Globe and Mail (National Edition), the Denver Post and the Pueblo Chieftain.

- 19 -

**CLAIMS PROCEDURE FOR KNOWN CREDITORS**

**(i)     Notice of Claims**

18.     **THIS COURT ORDERS** that the Monitor shall send a Claims Package to each of the Known Creditors by prepaid ordinary mail to the address as shown on the Claims Schedule before 11:59 p.m. on the date that is five (5) Business Days after the date hereof. The Monitor shall specify in the Notice of Claim the Known Creditor's Claim against the Applicants for voting and distribution purposes as determined by the Applicants based on the books and records of the Applicants.

**(ii)    Adjudication of Claims against the Applicants**

19.     **THIS COURT ORDERS** that if a Known Creditor wishes to dispute the amount of the Claim as set out in the Notice of Claim, the Known Creditor shall deliver to the Monitor a Notice of Dispute of Claim which must be received by the Monitor by no later than the Claims Bar Date. Such Known Creditor shall specify therein the details of the dispute with respect to its Claim and shall specify whether it disputes the determination of the Claim for voting and/or distribution purposes.

20.     **THIS COURT ORDERS** that if a Known Creditor does not deliver to the Monitor a completed Notice of Dispute of Claim such that it is received by the Monitor by the Claims Bar Date disputing its Claims as determined in the Notice of Claim for voting and distribution purposes, then (a) such Known Creditor shall be deemed to have accepted the valuation of the Known Creditor's Claims as set out in the Notice of Claim, (b) such Known Creditor's Claim as determined in the Notice of Claim shall be treated as both a Voting Claim and a Distribution Claim, and (c) any and all of the Known Creditor's rights to dispute the Claims as determined in the Notice of Claim or to otherwise assert or

- 20 -

pursue such Claims other than as they are determined in the Notice of Claim shall be forever extinguished and barred without further act or notification. A Known Creditor may accept a determination of a Claim for voting purposes as set out in the Notice of Claim and dispute the determination of the Claim for distribution purposes provided that it does so in its Notice of Dispute of Claim and such Notice of Dispute of Claim is received by the Monitor by the Claims Bar Date. A determination of a Voting Claim of a Known Creditor does not in any way affect and is without prejudice to the process to determine such Known Creditor's Distribution Claim.

**(iii)    Resolution of Claims against the Applicants**

21.    **THIS COURT ORDERS** that in the event that the Applicants, with the assistance of the Monitor, are unable to resolve a dispute regarding any Disputed Voting Claim with a Known Creditor, the Applicants shall so notify the Monitor and the Known Creditor. Thereafter, the Disputed Voting Claim shall be referred to the Court for resolution or to such alternative dispute resolution as may be ordered by the Court or as agreed to by the Monitor, the Applicants and the applicable Creditor; provided, however that to the extent a Claim is referred under this paragraph to the Court or an alternative dispute resolution, it shall be on the basis that the Claim against the Applicants shall be resolved or adjudicated both for voting and distribution purposes (and that it shall remain open to the parties to agree that the Creditor's Voting Claim may be settled by the Known Creditor and the Applicants without prejudice to a future determination of the Creditor's Distribution Claim). The Court or an alternative dispute resolution, as the case may be, shall resolve the dispute between the Applicants and the Known Creditor.

- 21 -

22.     **THIS COURT ORDERS** that where the Known Creditor's Disputed Voting Claim has not been finally determined in accordance with this Claims Procedure Order by the date on which a vote is held at a Meeting, the ability of such Known Creditor to vote its Disputed Voting Claim and the effect of casting any such vote shall be governed by the Meetings Order.

23.     **THIS COURT ORDERS** that in the event that the Applicants, with the assistance of the Monitor, are unable to resolve a dispute with a Known Creditor regarding any Distribution Claim, the Applicants shall so notify the Monitor and the Known Creditor. Thereafter, the Disputed Distribution Claim shall be referred to the Court for resolution or to such alternative dispute resolution as may be ordered by the Court or as agreed to by the Monitor, the Applicants and the applicable Creditor.  The Court or an alternative dispute resolution, as the case may be, shall resolve the dispute between the Applicants and such Known Creditor.

## CLAIMS PROCEDURE FOR UNKNOWN CREDITORS

(i)     **Proof of Claim**

24.     **THIS COURT ORDERS** that the Monitor shall send a Claims Package to any Unknown Creditor who makes a request therefor prior to the Claims Bar Date.  With respect to any WARN Act Plaintiff, the Monitor shall have satisfied the obligations referred to in the foregoing sentence once it has provided a Claims Package to Class Action Counsel.  Any Unknown Creditor that wishes to assert a Claim must file a completed Proof of Claim such that it is received by the Monitor by no later than the Claims Bar Date.

- 22 -

25.   **THIS COURT ORDERS** that, notwithstanding anything to the contrary in paragraphs 24 and 26 hereof, the following shall apply with respect to any Restructuring Period Claims:

(a)   any notices of disclaimer or resiliation delivered to Creditors by the Applicants or the Monitor after the Filing Date shall be accompanied by a Claims Package;

(b)   the Monitor shall send a Claims Package to any Creditor who makes a request therefor in respect of a Restructuring Period Claim prior to the Restructuring Period Claims Bar Date;

(c)   any Creditor that wishes to assert a Restructuring Period Claim must return a completed Proof of Claim to the Monitor such that it is received by the Monitor by no later than 5:00 p.m. on the Restructuring Period Claims Bar Date;

(d)   any Creditor that does not return a Proof of Claim to the Monitor by 5:00 p.m. on the Restructuring Period Claims Bar Date shall not be entitled to attend or vote at any Meeting and shall not be entitled to receive any distribution from any Plan in respect of Restructuring Period Claims and any and all Restructuring Period Claims of such Creditor shall be forever extinguished and barred without any further act or notification.

**(ii)   Adjudication of Claims against the Applicants**

26.   **THIS COURT ORDERS** that any Unknown Creditor that does not file a Proof of Claim such that it is received by the Monitor by the Claims Bar Date with respect to any Claim against the Applicants shall not be entitled to attend or vote at any Meeting and shall not be entitled to receive any distribution from any Plan in respect of such Claims and any

- 23 -

and all such Claims of such Unknown Creditor shall be forever extinguished and barred without any further act or notification and irrespective of whether or not such Unknown Creditor received a Claims Package.

27.    **THIS COURT ORDERS** that the Applicants, with the assistance of the Monitor, shall review all Proofs of Claim received by the Claims Bar Date or the Restructuring Period Claims Bar Date, as applicable, and shall accept, revise or reject each Claim against the Applicants set out therein for voting and/or distribution purposes. The Monitor shall notify each Unknown Creditor who has delivered a Proof of Claim by the Claims Bar Date or the Restructuring Period Claims Bar Date, as applicable, as to whether such Unknown Creditor's Claim against the Applicants as set out therein has been revised or rejected for voting purposes (and/or for distribution purposes if the Applicants elect to do so), and the reasons therefor, by sending a Notice of Revision or Disallowance.

28.    **THIS COURT ORDERS** that any Unknown Creditor who wishes to dispute a Notice of Revision or Disallowance sent pursuant to the immediately preceding paragraph shall deliver a Notice of Dispute of Revision or Disallowance to the Monitor such that it is received by no later than 5:00 p.m. on the date that is seven (7) Calendar Days after the date of delivery to the applicable Unknown Creditor of the Notice of Revision or Disallowance.  Such Unknown Creditor shall specify therein the details of the dispute with respect to its Claim and shall specify whether it disputes the determination of the Claim for voting and/or distribution purposes, as applicable.

29.    **THIS COURT ORDERS** that where an Unknown Creditor that receives a Notice of Revision or Disallowance pursuant to paragraph 27 above does not file a Notice of Dispute of Revision or Disallowance by the time set out in paragraph 28 above, then such

- 24 -

Unknown Creditor's Voting Claim (and Distribution Claim if the Notice of Revision or
Disallowance also dealt with the Distribution Claim) shall be deemed to be as determined
in the Notice of Revision or Disallowance and any and all of the Unknown Creditor's
rights to dispute the Claim(s) as determined in the Notice of Revision or Disallowance or
to otherwise assert or pursue such Claims other than as they are determined in the Notice
of Revision or Disallowance, in each case for voting purposes and distribution purposes
(if the Notice of Revision or Disallowance dealt with the Distribution Claim), shall be
forever extinguished and barred without further act or notification.   An Unknown
Creditor may accept a determination of a Claim for voting purposes as set out in the
Notice of Revision and Disallowance and may dispute the determination of the Claim for
distribution purposes, provided that it does so in its Notice of Dispute of Revision or
Disallowance and such Notice of Dispute of Revision or Disallowance is received by the
Monitor by the date and time set forth in paragraph 28.   A determination of a Voting
Claim of an Unknown Creditor does not in any way affect and is without prejudice to the
process to determine such Unknown Creditor's Distribution Claim.

30.   **THIS COURT ORDERS** that the Applicants, with the assistance of the Monitor, shall
review and consider the Proofs of Claim filed in accordance with this Claims Procedure
Order in order to determine the Distribution Claims of Unknown Creditors.   The
Applicants shall notify each Unknown Creditor who filed a Proof of Claim and who did
not receive a Notice of Revision or Disallowance for distribution purposes pursuant to
paragraph 27 herein as to whether such Unknown Creditor's Claim as set out in such
Unknown Creditor's Proof of Claim has been revised or rejected for distribution
purposes, and the reasons therefor, by delivery of a Notice of Revision or Disallowance.

- 25 -

31.     **THIS COURT ORDERS** that any Unknown Creditor who wishes to dispute a Notice of Revision or Disallowance for distribution purposes sent pursuant to the immediately preceding paragraph shall deliver a Notice of Dispute of Revision or Disallowance to the Monitor such that it is received by the Monitor by no later than 5:00 p.m. on the date that is seven (7) Calendar Days after the date of delivery to the applicable Unknown Creditor of the Notice of Revision or Disallowance referred to in paragraph 30.

32.     **THIS COURT ORDERS** that where an Unknown Creditor that receives a Notice of Revision or Disallowance pursuant to paragraph 30 above does not file a Notice of Dispute of Revision or Disallowance for distribution purposes by the time set out in paragraph 31 above, the value of such Unknown Creditor's Distribution Claim shall be deemed to be as set out in the Notice of Revision or Disallowance for distribution purposes and any and all of the Unknown Creditor's rights to dispute the Distribution Claim as valued on the Notice of Revision or Disallowance or to otherwise assert or pursue such Distribution Claim in an amount that exceeds the amount set forth on the Notice of Revision or Disallowance shall be forever extinguished and barred without further act or notification.

**(iii)    Resolution of Claims against the Applicants**

33.     **THIS COURT ORDERS** that in the event that the Applicants, with the assistance of the Monitor, are unable to resolve a dispute regarding any Disputed Voting Claim with an Unknown Creditor, the Applicants shall so notify the Monitor and the Unknown Creditor. Thereafter, the Disputed Voting Claim shall be referred to the Court for resolution or to such alternative dispute resolution as may be ordered by the Court or as agreed to by the Monitor, the Applicants and the applicable Creditor; provided, however that to the extent

- 26 -

a Claim is referred under this paragraph to the Court or an alternative dispute resolution, it shall be on the basis that the value of the Claim shall be resolved or adjudicated both for voting and distribution purposes (and that it shall remain open to the parties to agree that the Creditor's Voting Claim may be settled by the Unknown Creditor and the Applicants without prejudice to a future hearing by the Court or an alternative dispute resolution to determine the Creditor's Distribution Claim in accordance with paragraph 35 hereof). The Court or an alternative dispute resolution, as the case may be, shall resolve the dispute between the Applicants and the Unknown Creditor.

34. **THIS COURT ORDERS** that where the value of an Unknown Creditor's Voting Claim has not been finally determined by the date of the Meetings, the ability of such Unknown Creditor to vote its Disputed Voting Claim and the effect of casting any such vote shall be governed by the Meetings Order.

35. **THIS COURT ORDERS** that in the event that the Applicants, with the assistance of the Monitor, are unable to resolve a dispute regarding any Distribution Claim with an Unknown Creditor, the Applicants shall so notify the Monitor and the Unknown Creditor. Thereafter, the Disputed Distribution Claim shall be referred to the Court for resolution or to such alternative dispute resolution as may be ordered by the Court or as agreed to by the Monitor, the Applicants and the applicable Creditor. The Court or an alternative dispute resolution, as the case may be, shall resolve the dispute between the Applicants and the Unknown Creditor.

**(iv)    Adjudication of Director/Officer Claims**

36. **THIS COURT ORDERS** that, for greater certainty, the procedures in paragraphs 18 to 35 shall not apply to adjudication of Director/Officer Claims.

- 27 -

37.    **THIS COURT ORDERS** that if a Person does not file a Proof of Claim with the Monitor such that it is received by the Monitor by the Claims Bar Date with respect to a Director/Officer Claim, any and all such Claims of such Person shall be forever extinguished and barred without any further act or notification and irrespective of whether or not such Person received a Claims Package, the Directors and Officers shall have no liability whatsoever in respect of such Director/Officer Claims.

38.    **THIS COURT ORDERS** that the Applicants, with the assistance of the Monitor, shall review all Proofs of Claim received by the Claims Bar Date in respect of Director/Officer Claims and shall accept, revise or reject each Director/Officer Claim set out therein. The Monitor shall provide copies of Proofs of Claim in respect of Director/Officer Claims to any counsel to a Director or Officer upon such request being made. The Monitor, with the consent of the Applicants, shall notify each Person who has delivered a Proof of Claim by the Claims Bar Date in respect of Director/Officer Claims as to whether such Person's Claim as set out therein has been revised or rejected and the reasons therefor, by sending a Notice of Revision or Disallowance. The Monitor shall provide a copy of such Notice of Revision or Disallowance to any counsel to a Director or Officer.

39.    **THIS COURT ORDERS** that any Person who wishes to dispute a Notice of Revision or Disallowance sent pursuant to the immediately preceding paragraph shall deliver a Notice of Dispute of Revision or Disallowance to the Monitor such that it is received by the Monitor by no later than 5:00 p.m. on the date that is seven (7) Calendar Days after the date of delivery to the applicable Person of the Notice of Revision or Disallowance. The Monitor shall provide a copy of such Notice of Dispute of Revision or Disallowance to any counsel to a Director or Officer upon such request being made.

- 28 -

40.     **THIS COURT ORDERS** that where a Person that receives a Notice of Revision or Disallowance pursuant to paragraph 38 above does not file a Notice of Dispute of Revision or Disallowance by the time set out in paragraph 39 above, such Person's Director/Officer Claim shall be deemed to be as determined in the Notice of Revision or Disallowance and any and all of such Person's rights to dispute the Director/Officer Claim(s) as determined in the Notice of Revision or Disallowance or to otherwise assert or pursue such Director/Officer Claims other than as they are determined in the Notice of Revision or Disallowance shall be forever extinguished and barred without further act or notification.

**(v)      Resolution of Director/Officer Claims**

41.     **THIS COURT ORDERS** that in the event that the Applicants determine that it is necessary to finally determine the amount of a Director/Officer Claim and the Applicants, with the assistance of the Monitor and the consent of the applicable Directors and Officers, are unable to resolve a dispute regarding such Director/Officer Claim with the Person asserting such Director/Officer Claim, the Applicants shall so notify the Monitor and such Person. Thereafter, the Disputed Director/Officer Claim shall be referred to the Court for resolution or to such alternative dispute resolution as may be ordered by the Court or as agreed to by the Monitor, the Applicants and the applicable Person. The Court or an alternative dispute resolution, as the case may be, shall resolve the dispute.

**WARN ACT CLAIMS**

42.     **THIS COURT ORDERS** that, notwithstanding anything to the contrary herein, for purposes of the matters set out in this Order, in respect of the WARN Act Class Action and any WARN Act Claims:

- 29 -

(a)     the WARN Act Plaintiffs shall be treated as Unknown Creditors in accordance
        with paragraphs 24 to 35 of this Order (and, for greater certainty, the WARN Act
        Plaintiffs shall not be treated as Known Creditors);

(b)     Class Action Counsel shall be entitled to file Proofs of Claim, Notices of Dispute
        of Revision and Disallowance, receive service and delivery of Claims Packages
        and other materials in these proceedings and otherwise deal with the Applicants,
        the Monitor and their respective counsel in respect of the matters described in this
        Order on behalf of the WARN Act Plaintiffs, provided that the ability of Class
        Action Counsel to vote at any Meeting of the WARN Act Plaintiffs Class (as
        defined in the Meetings Order) shall be governed by the Meetings Order; and

(c)     the Applicants shall be permitted to accept any duly filed WARN Act Claims as
        Voting Claims for the limited purpose of allowing such Claims to be voted at a
        Meeting of the WARN Act Plaintiffs Class (as defined in the Meetings Order)
        without prejudice to the determination of such Claims as Voting Claims and/or
        Distribution Claims for any other purpose.

**SET-OFF**

43.    **THIS COURT ORDERS** that the Applicants may set-off (whether by way of legal,
       equitable or contractual set-off) against payments, obligations or other distributions to be
       made pursuant to or in connection with the Plan to any Creditor, any claims of any nature
       whatsoever that the Applicants may have against such Creditor; however, neither the
       failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or
       release by the Applicants of any such claim that the Applicants may have against such
       Creditor.

- 30 -

**NOTICE OF TRANSFEREES**

44.    **THIS COURT ORDERS** that if, after the Filing Date, the holder of a Claim transfers or assigns the whole of such Claim to another Person, neither the Monitor nor the Applicants shall be obligated to give notice or otherwise deal with the transferee or assignee of such Claim in respect thereof unless and until actual notice of transfer or assignment, together with satisfactory evidence of such transfer or assignment, shall have been received and acknowledged by the Applicants and the Monitor in writing and thereafter such transferee or assignee shall for the purposes hereof constitute the "Creditor" in respect of such Claim. Any such transferee or assignee of a Claim shall be bound by any notices given or steps taken in respect of such Claim in accordance with this Claims Procedure Order prior to receipt and acknowledgement by the Applicants and the Monitor of satisfactory evidence of such transfer or assignment. A transferee or assignee of a Claim takes the Claim subject to any rights of set-off to which the Applicants may be entitled with respect to such Claim. For greater certainty, a transferee or assignee of a Claim is not entitled to set-off, apply, merge, consolidate or combine any Claims assigned or transferred to it against or on account or in reduction of any amounts owing by such Person to the Applicants.  The effect of a transfer or assignment of a Claim for purposes of voting at any Meeting shall be governed by the Meetings Order. Reference to transfer in this Claims Procedure Order includes a transfer or assignment whether absolute or intended as security.

45.    **THIS COURT ORDERS** that, subject to any restrictions contained in Applicable Laws, a Creditor (other than a Secured Noteholder) may transfer or assign the whole of its Claim after the Meetings provided that the Applicants or the Monitor shall not be obliged

- 31 -

to make distributions to any such transferee or assignee or otherwise deal with such transferee or assignee as a Creditor in respect thereof unless and until actual notice of the transfer or assignment, together with satisfactory evidence of such transfer or assignment and such other documentation as the Applicants and the Monitor may reasonably require, has been received by the Applicants and the Monitor on or before the Plan Implementation Date, or such other date as the Monitor may agree, failing which the original transferor shall have all applicable rights as the "Creditor" with respect to such Claim as if no transfer of the Claim had occurred. Thereafter, such transferee or assignee shall, for all purposes in accordance with the Claims Procedure Order constitute the Creditor in respect of the transferred or assigned Claim and shall be bound by notices given and steps taken in respect of such Claim. For greater certainty, the Applicants shall not recognize partial transfers or assignments of Claims.

46.  **THIS COURT ORDERS** that nothing in this Claims Procedure Order shall restrict Secured Noteholders who have beneficial ownership of a Claim in respect of Secured Notes from transferring or assigning such Claim, in whole or in part, in connection with a transfer of such Secured Noteholders' Secured Notes, provided that if such transfer or assignment occurs after any applicable record date, the Applicants, the Monitor and their agents shall have no obligation to deal with such transferee or assignee as a Creditor in respect thereof for purposes of dealing with any matter in respect of which such record date was set, and the Applicants, the Monitor and their agents shall be entitled deal with the Secured Noteholder who beneficially owned such Secured Notes as of such record date in respect of any such matter.  Secured Noteholders who assign or acquire their Claims after the Plan Implementation Date shall be wholly responsible for ensuring that

- 32 -

plan distributions intended to be included within such assignments are in fact delivered to the assignee and that neither the Applicants, the Monitor, CDS, the 2011 Trustee, the 2013 Trustee, nor their agents, as applicable, shall have any liability in connection therewith.

## SERVICE AND NOTICES

47.     **THIS COURT ORDERS** that the Applicants and the Monitor may, unless otherwise specified by this Claims Procedure Order, serve and deliver the Claims Package, any letters, notices or other documents to Creditors or any other interested Person by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery, facsimile transmission or email to such Persons at the physical or electronic address, as applicable, last shown on the books and records of the Applicants or set out in such Creditor's Proof of Claim. Any such service and delivery shall be deemed to have been received: (i) if sent by ordinary mail, on the third Business Day after mailing within Ontario, the fifth Business Day after mailing within Canada (other than within Ontario), and the tenth Business Day after mailing internationally; (ii) if sent by courier or personal delivery, on the next Business Day following dispatch; and (iii) if delivered by facsimile transmission or email by 5:00 p.m. on a Business Day, on such Business Day and if delivered after 5:00 p.m. or other than on a Business Day, on the following Business Day.

48.     **THIS COURT ORDERS** that any notice or communication required to be provided or delivered by a Creditor to the Monitor or the Applicants under this Claims Procedure Order shall be in writing in substantially the form, if any, provided for in this Claims Procedure Order and will be sufficiently given only if delivered by prepaid registered mail, courier, personal delivery or email addressed to:

- 33 -

If to the Applicants:

c/o Cline Mining Corporation
161 Bay Street, 26th Floor,
Toronto, ON  M5J 2S1
Attention:     Matthew Goldfarb, Chief Restructuring Officer
Email:         mgoldfarb@clinemining.com

With a copy to:

Goodmans LLP
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, Ontario M5H 2S7
Attention:     Robert Chadwick / Logan Willis / Bradley Wiffen
Fax:           (416) 979-1234
Email:         rchadwick@goodmans.ca / lwillis@goodmans.ca /
               bwiffen@goodmans.ca

If to the Monitor:

FTI Consulting Canada Inc., Court-appointed Monitor of Cline Mining
Corporation, New Elk Coal Company LLC and North Central Energy Company

Claims Process

79 Wellington Street West
TD South Tower
Suite 2010, P.O. Box 104
Toronto, ON  M5K 1G8
Attention:     Pamela Luthra
Fax:           (416) 649.8101
Email:         cline@fticonsulting.com

With a copy to:

Osler, Hoskin & Harcourt LLP
100 King Street West
1 First Canadian Place
Suite 6200, P.O. Box 50
Toronto ON  M5X 1B8
Attention: Mark Wasserman / Michael De Lellis
Fax:           (416) 862 6666
Email:         mwasserman@osler.com / mdelellis@osler.com

- 34 -

Any such notice or communication delivered by a Creditor shall be deemed to be received upon actual receipt by the Monitor thereof during normal business hours on a Business Day or if delivered outside of normal business hours, the next Business Day.

49.   **THIS COURT ORDERS** that if during any period during which notices or other communications are being given pursuant to this Claims Procedure Order a postal strike or postal work stoppage of general application should occur, such notices or other communications sent by ordinary mail and then not received shall not, absent further Order of this Court, be effective and notices and other communications given hereunder during the course of any such postal strike or work stoppage of general application shall only be effective if given by courier, personal delivery, facsimile transmission or email in accordance with this Claims Procedure Order.

50.   **THIS COURT ORDERS** that in the event that this Claims Procedure Order is later amended by further Order of the Court, the Applicants or the Monitor may post such further Order on the Monitor's website and such posting shall constitute adequate notice to Creditors of such amended claims procedure.

**MISCELLANEOUS**

51.   **THIS COURT ORDERS** that notwithstanding any other provisions of this Claims Procedure Order, the solicitation by the Monitor or the Applicants of Proofs of Claim, the delivery of a Notice of Claim, and the filing by any Person of any Proof of Claim shall not, for that reason only, grant any Person any standing in these proceedings or rights under any proposed Plan.

- 35 -

52.  **THIS COURT ORDERS** that nothing in this Claims Procedure Order shall constitute or
be deemed to constitute an allocation or assignment of Claims into particular classes for
the purpose of a Plan and, for greater certainty, the treatment of Claims, or any other
claims and the classification of Creditors for voting and distribution purposes shall be
subject to the terms of any proposed Plan, the Meetings Order or further Order of this
Court.

53.  **THIS COURT ORDERS** that, except as expressly provided herein, the determination of
Claims pursuant to this Order shall apply for all purposes unless otherwise further
ordered by the Court.

54.  **THIS COURT ORDERS** that the Applicants or the Monitor may from time to time
apply to this Court to amend, vary, supplement or replace this Order or for advice and
directions concerning the discharge of their respective powers and duties under this Order
or the interpretation or application of this Order.

55.  **THIS COURT ORDERS** that any interested party, other than the Applicants or the
Monitor, that wishes to amend or vary this Order shall be entitled to appear or bring a
motion before this Court on a date to be set by this Court upon the granting of this Order
(the "**Comeback Date**"), and any such interested party shall give notice to any other
party or parties likely to be affected by the order sought in advance of the Comeback
Date.

56.  **THIS COURT ORDERS** that this Order shall have full force and effect in all provinces
and territories in Canada, outside Canada and against all Persons against whom it may be
enforceable.

- 36 -

57.    **THIS COURT REQUESTS** the aid and recognition of other Canadian and foreign Courts, tribunal, regulatory or administrative bodies, including any Court or administrative tribunal of any Federal or State Court or administrative body in the United States of America, to act in aid of and to be complementary to this Court in carrying out the terms of this Order where required.   All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

## SCHEDULE "A"

### NOTICE TO CREDITORS OF Cline Mining Corporation, New Elk Coal Company LLC and North Central Energy Company (the "Applicants") and/or their Directors or Officers

### RE:   NOTICE OF CLAIMS BAR DATE IN COMPANIES' CREDITORS ARRANGEMENT ACT ("CCAA") PROCEEDINGS

**NOTICE IS HEREBY GIVEN** that pursuant to an Order of the Ontario Superior Court of Justice made December 3, 2014 (the "**Order**"), a claims procedure has been commenced for the purpose of identifying and determining all claims against the Applicants and the Directors and Officers of the Applicants that are to be affected in the Applicants' Plan of Compromise and Arrangement under the CCAA.

**PLEASE TAKE NOTICE** that the claims procedure applies only to the Claims described in the Order. A copy of the Order and other public information concerning CCAA Proceedings in respect of the Applicants can be found at the following website: http://cfcanada.fticonsulting.com/cline. Any creditor, other than a Secured Noteholder, who has not received a Notice of Claim and who believes that he or she has a Claim against the Applicants or a Director or Officer under the Order must contact the Monitor in order to obtain a Proof of Claim form.

**THE CLAIMS BAR DATE** is **5:00 p.m. (Toronto Time) on January 13, 2015**. Proofs of Claim in respect of Prefiling Claims and Director/Officer Claims must be completed and filed with the Monitor on or before the Claims Bar Date.

**THE RESTRUCTURING PERIOD CLAIMS BAR DATE** is **5:00pm (Toronto Time) on the date that is seven (7) Calendar Days after termination, repudiation or resiliation of the agreement or other event giving rise to the Restructuring Period Claim.** Proofs of Claim in respect of Restructuring Period Claims must be completed and filed with the Monitor on or before the Restructuring Period Claims Bar Date.

**HOLDERS OF CLAIMS** who have not received a Notice of Claim and who do not file a Proof of Claim by the Claims Bar Date or the Restructuring Period Claims Bar Date, as applicable, shall not be entitled to vote at any meeting of creditors regarding the plan of compromise and arrangement being proposed by the Applicants or to participate in any distribution under such plan, and any Claims such creditor may have against the Applicants and/or any of the Directors or Officers of the Applicants shall be forever extinguished and barred.

- 2 -

**CREDITORS REQUIRING INFORMATION** or claim documentation may contact the Monitor at the following address by prepaid registered mail, courier, personal delivery, facsimile transmission, email or telephone:

FTI Consulting Canada Inc., Court-appointed Monitor of Cline Mining Corporation, New Elk Coal Company LLC and North Central Energy Company

Claims Process

79 Wellington Street West
TD South Tower
Suite 2010, P.O. Box 104
Toronto, ON  M5K 1G8
Attention:     Pamela Luthra

| | |
|---|---|
| Telephone | (416) 649.8099 (Local Toronto) |
| | (855) 398.7390 (Toll-Free) |
| Fax: | (416) 649.8101 |
| Email | cline@fticonsulting.com |

## SCHEDULE "B"

### INSTRUCTION LETTER
### FOR THE CLAIMS PROCEDURE FOR KNOWN CREDITORS
### OF CLINE MINING CORPORATION, NEW ELK COAL COMPANY LLC AND
### NORTH CENTRAL ENERGY COMPANY (collectively, the "Applicants")

### CLAIMS PROCEDURE

By Order of the Ontario Superior Court of Justice (Commercial List) dated December 3, 2014 (as such Order may be amended from time to time, the "**Claims Procedure Order**") under the *Companies' Creditors Arrangement Act,* R.S.C. 1985, c. C-36 (the "**CCAA**"), the Applicants and FTI Consulting Canada Inc., in its capacity as Court-appointed monitor of the Applicants (the "**Monitor**"), have been authorized to conduct a claims procedure (the "**Claims Procedure**"). A copy of the Claims Procedure Order and other public information concerning these proceedings can be obtained from the Monitor's website at http://cfcanada.fticonsulting.com/cline.

This letter provides general instructions for completing a Notice of Dispute of Claim form. Defined terms not defined within this instruction letter shall have the meaning ascribed thereto in the Claim Procedure Order.

The Claims Procedure is intended to identify and determine the amount of any claims against the Applicants or any or all of the Directors or Officers of the Applicants, whether unliquidated, contingent or otherwise, that are to be affected in the plan of compromise and arrangement being pursued by the Applicants under the CCAA. Please review the Claims Procedure Order for the full terms of the Claims Procedure.

All notices and inquiries with respect to the Claims Procedure should be directed to the Monitor by prepaid registered mail, courier, personal delivery, facsimile transmission, email, or telephone at the address below:

> FTI Consulting Canada Inc., Court-appointed Monitor of Cline Mining Corporation, New Elk Coal Company LLC and North Central Energy Company
>
> Claims Process
>
> 79 Wellington Street West
> TD South Tower
> Suite 2010, P.O. Box 104
> Toronto, ON  M5K 1G8
> Attention:      Pamela Luthra
>
> Telephone      (416) 649.8099 (Local Toronto)
>                      (855) 398.7390 (Toll-Free)
> Fax:             (416) 649.8101
> Email           cline@fticonsulting.com

- 2 -

**FOR CREDITORS DISPUTING A NOTICE OF CLAIM**

If you have received a Notice of Claim and you dispute the determination of your Claims as set forth therein for voting and/or distribution purposes, you must file a Notice of Dispute of Claim form with the Monitor. All Notices of Dispute of Claim **must be received by the Monitor on or before 5:00 p.m. (Toronto Time) on January 13, 2015**. If a Notice of Dispute of Claim is not received on or before that time then you shall be deemed to have accepted the determination of your Claims as set out in the Notice of Claim for both voting and distribution purposes, and any and all of your rights to dispute such Claims as so valued or to otherwise assert or pursue such Claims in an amount that exceeds the amount set forth on the Notice of Claim shall be forever extinguished and barred without further act or notification.

If you believe you have any additional Claims other than the Claims set out in the Notice of Claim (including a Pre-Filing Claim, a Director/Officer Claim or a Restructuring Period Claim) you must file a Proof of Claim to assert any such additional Claims so that it is received by the Monitor by the Claims Bar Date or the Restructuring Period Claims Bar Date, as applicable, otherwise any such Claim shall be forever extinguished and barred without further act or notification.

All Claims shall be converted to Canadian dollars at the Bank of Canada Canadian Dollar noon exchange rate in effect at the date of the Initial Order. Claim amounts listed in the Notice of Claim are denominated in Canadian Dollars.

Additional Notices of Dispute of Claim forms and Proof of Claim forms can be obtained from the Monitor's website at http://cfcanada.fticonsulting.com/cline or by contacting the Monitor.

DATED this _____ day of _____, 2014.

SCHEDULE "C"

Court File No. CV-14-10781-00CL

## ONTARIO
## SUPERIOR COURT OF JUSTICE
## COMMERCIAL LIST
## IN THE MATTER OF THE *COMPANIES' CREDITORS*
## *ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

## AND IN THE MATTER OF A PLAN OF COMPROMISE
## AND ARRANGEMENT OF CLINE MINING CORPORATION, NEW ELK COAL
## COMPANY LLC AND NORTH CENTRAL ENERGY COMPANY

---

## NOTICE OF CLAIM

---

TO:    **[insert name and address of creditor]**

This notice is issued pursuant to the Claims Procedure for Claims in respect of Cline Mining Corporation, New Elk Coal Company LLC and North Central Energy Company (the "**Applicants**"), and their Directors and Officers, which was approved by the Order of the Ontario Superior Court of Justice (Commercial List) granted December 3, 2014 in the CCAA Proceedings ("**Claims Procedure Order**"). Capitalized terms used herein are as defined in the Claims Procedure Order unless otherwise noted. A copy of the Claims Procedure Order can be obtained from the website of FTI Consulting Canada Inc., the Court-appointed Monitor of the Applicants, at http://cfcanada.fticonsulting.com/cline.

According to the books, records and other relevant information in the possession of the Applicants, your total Claim(s) are as follows:

| Debtor | Type of Claim | Amount* | Secured/Unsecured |
|---|---|---|---|
|  |  | $ |  |

* Amount is in Canadian Dollars. All Claims in an original currency other than Canadian Dollars are converted to Canadian Dollars using the Bank of Canada noon exchange rate on December 3, 2014.

If you agree that the foregoing determination accurately reflects your Claim(s) against the Applicants, you are not required to respond to this Notice of Claim. If you disagree with the determination of your Claim(s) against the Applicants as set out herein, you must deliver a

- 2 -

Notice of Dispute of Claim to the Monitor such that it is received by the Monitor by no later than **5:00 p.m. (Toronto Time) on January 13, 2015** (the "**Claims Bar Date**").

You may accept the Claim(s) set out in this Notice of Claim for voting purposes without prejudice to your rights to dispute the Claim(s) for distribution purposes. If you fail to deliver a Notice of Dispute of Claim for voting and distribution purposes such that it is received by the Monitor by the Claims Bar Date, then you shall be deemed to have accepted your Claim(s) as set out in this Notice of Claim.

If you believe you have a Claim that has not been provided for in the Notice of Claim you received, including any additional Prefiling Claim, any Restructuring Period Claim or any Director/Officer Claims, you must contact the Monitor to request a Claims Package and you must complete a Proof of Claim form in respect of such Claim and deliver it to the Monitor at the address or facsimile noted below such that it is received by the Monitor by the Claims Bar Date (in respect of a Prefiling Claim or Director/Officer Claims) and by 5:00pm (Toronto Time) on the date that is seven (7) Calendar Days after termination, repudiation or resiliation of the agreement or other event giving rise to the Restructuring Period Claim (in respect of a Restructuring Period Claim) (the "**Restructuring Period Claims Bar Date**"). If you fail to deliver such Proof of Claim by such date, you shall not be entitled to vote at any Meeting of creditors regarding the plan of compromise and arrangement by the Applicants or participate in any distribution under such plan in respect of such Claim, and such Claim shall be forever extinguished and barred.

DATED at Toronto, this _____ day of December, 2014.

FTI Consulting Canada Inc., Court-appointed Monitor of Cline Mining Corporation, New Elk Coal Company LLC and North Central Energy Company

Claims Process

79 Wellington Street West
TD South Tower
Suite 2010, P.O. Box 104
Toronto, ON  M5K 1G8
Attention:      Pamela Luthra
Telephone      (416) 649.8099 (Local Toronto)
               (855) 398.7390 (Toll-Free)
Fax:           (416) 649.8101
Email          cline@fticonsulting.com

**SCHEDULE "D"**

Court File No. CV-14-10781-00CL

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

**IN THE MATTER OF THE COMPANIES' CREDITORS**
**ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE**
**AND ARRANGEMENT OF CLINE MINING CORPORATION, NEW ELK COAL**
**COMPANY LLC AND NORTH CENTRAL ENERGY COMPANY**

---

**NOTICE OF DISPUTE OF CLAIM**

---

1. **PARTICULARS OF CREDITOR**

   (a)   Full Legal Name of Creditor:   _____

   (b)   Full Mailing Address of Creditor:   _____

   _____

   _____

   _____

   (c)   Telephone Number of Creditor:   _____

   (d)   Facsimile Number of Creditor:   _____

   (e)   E-mail Address of Creditor:   _____

   (f)   Attention (Contact Person):   _____

- 2 -

2. **PARTICULARS OF ORIGINAL CREDITOR FROM WHOM YOU ACQUIRED CLAIM, IF APPLICABLE:**

   (a)    Have you acquired this Claim by assignment?    Yes ☐  No ☐

         (if yes, attach documents evidencing assignment)

   (b)    Full Legal Name of original creditor(s): _____

3. **DISPUTE OF DETERMINATION OF CLAIM FOR VOTING AND/OR DISTRIBUTION PURPOSES:**

   *(Any Claims denominated in a foreign currency shall be converted to Canadian dollars at the Bank of Canada Canadian Dollar noon exchange rate in effect as of the date of the Initial Order.)*

   We hereby disagree with the determination of our Claim as set out in the Notice of Claim dated _____, as set out below:

   | | As specified in Notice of Claim | Disputed for (check all that apply) | Claim asserted by Creditor |
   |---|---|---|---|
   | **Claim against: Name of Applicant or Director/Officer** | | | |
   | **Voting Claim** | | | |
   | **Distribution Claim** | | | |
   | **Secured or Unsecured?** | | | |

   *(Insert particulars of Claim per Notice of Claim and the value of your claim as asserted by you.)*

- 3 -

4.     **REASONS FOR DISPUTE:**

*(Provide full particulars of the Claim and supporting documentation, including amount, description of transaction(s) or agreement(s) giving rise to the Claim, name of any guarantor(s) which has guaranteed the Claim, particulars and copies of any security and amount of Claim allocated thereto, date and number of all invoices, particulars of all credits, discounts, etc. claimed. The particulars provided must support the description of the Claim as stated by you in item 3, above.)*

_____

_____

_____

_____

_____

_____

This Notice of Dispute of Claim must be returned to and received by the Monitor by no later than **5:00 p.m. (Toronto Time) on January 13, 2015**, the Claims Bar Date, at the following address by prepaid registered mail, courier, personal delivery, facsimile transmission or email:

FTI Consulting Canada Inc., Court-appointed Monitor of Cline Mining Corporation, New Elk Coal Company LLC and North Central Energy Company

Claims Process

79 Wellington Street West
TD South Tower
Suite 2010, P.O. Box 104
Toronto, ON  M5K 1G8
Attention:     Pamela Luthra
Telephone     (416) 649.8099 (Local Toronto)
                      (855) 398.7390 (Toll-Free)
Fax:             (416) 649.8101
Email          cline@fticonsulting.com

Dated at _____ this _____ day of _____, 201___.

**SCHEDULE "E"**

Court File No. CV-14-10781-00CL

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

**IN THE MATTER OF THE COMPANIES' CREDITORS**
**ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE**
**AND ARRANGEMENT OF CLINE MINING CORPORATION, NEW ELK COAL**
**COMPANY LLC AND NORTH CENTRAL ENERGY COMPANY**

---

**NOTICE OF REVISION OR DISALLOWANCE**

---

TO:     **[insert name and address of creditor]**

The Applicants have reviewed your Proof of Claim dated _____, and have revised or rejected your Claim in respect of _____ for the following reasons:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

- 2 -

Subject to further dispute by you in accordance with the provisions of the Claims Procedure Order, your Claim will be allowed as follows:

**Type of Claim allowed (Prefiling Claim, Restructuring Period Claim, WARN Act Claim or Director / Officer Claim):**

_____ .

| | Amount | Secured or Unsecured? |
|---|---|---|
| **Per Proof of Claim** | | |
| **Revised / Rejected for Voting/Distribution** | | |
| **Allowed as Revised for Voting / Distribution** | | |

If you intend to dispute this Notice of Revision or Disallowance, you must notify the Monitor of such intent by delivery to the Monitor of a Notice of Dispute of Revision or Disallowance in accordance with the Claims Procedure Order such that it is received by the Monitor by no later than seven (7) Calendar Days after you receive such Notice of Revision or Disallowance at the following address by prepaid registered mail, courier, personal delivery, facsimile transmission, email or telephone:

> FTI Consulting Canada Inc., Court-appointed Monitor of Cline Mining Corporation, New Elk Coal Company LLC and North Central Energy Company
>
> Claims Process
>
> 79 Wellington Street West
> TD South Tower
> Suite 2010, P.O. Box 104
> Toronto, ON  M5K 1G8
> Attention:     Pamela Luthra
> Telephone      (416) 649.8099 (Local Toronto)
>                (855) 398.7390 (Toll-Free)
> Fax:           (416) 649.8101
> Email          cline@fticonsulting.com

If you do not deliver a Notice of Dispute of Revision or Disallowance in accordance with the Claims Procedure Order, the value of your Claim shall be deemed to be as set out in this Notice of Revision or Disallowance.

DATED at Toronto, Ontario this _____ day of _____, 201___ .

**SCHEDULE "F"**

Court File No. CV-14-10781-00CL

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

**IN THE MATTER OF THE COMPANIES' CREDITORS**
**ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE**
**AND ARRANGEMENT OF CLINE MINING CORPORATION, NEW ELK COAL**
**COMPANY LLC AND NORTH CENTRAL ENERGY COMPANY**

---

**NOTICE OF DISPUTE OF REVISION OR DISALLOWANCE**

---

1.   **PARTICULARS OF CREDITOR**

    (a)   Full Legal Name of Creditor: _____

    (b)   Full Mailing Address of Creditor: _____

                        _____

                        _____

                        _____

                        _____

    (c)   Telephone Number of Creditor: _____

    (d)   Facsimile Number of Creditor: _____

    (e)   E-mail Address of Creditor: _____

    (f)   Attention (Contact Person): _____

- 2 -

2.    **PARTICULARS OF ORIGINAL CREDITOR FROM WHOM YOU ACQUIRED CLAIM, IF APPLICABLE:**

   (a)    Have you acquired this Claim by assignment?    Yes ☐ No ☐

         (if yes, attach documents evidencing assignment)

   (b)    Full Legal Name of original creditor(s): _____

3.    **DISPUTE OF REVISION OR DISALLOWANCE OF CLAIM FOR VOTING AND/OR DISTRIBUTION PURPOSES:**

   *(Any Claims denominated in a foreign currency shall be converted to Canadian dollars at the Bank of Canada Canadian Dollar noon exchange rate in effect as of the date of the Initial Order.)*

   We hereby disagree with the determination of our Claim as set out in the Notice of Revision or Disallowance dated _____, as set out below:

| | As specified in Notice of Revision or Disallowance | Disputed for (check all that apply) | Claim asserted by Creditor |
|---|---|---|---|
| **Claim against: Name of Applicant or Director/Officer** | | | |
| **Voting Claim** | | | |
| **Distribution Claim** | | | |
| **Secured or Unsecured?** | | | |

   Is your claim a WARN Act Claim?        Yes ☐ No ☐

   *(Insert particulars of Claim per Notice of Revision or Disallowance, and the value of your Claim as asserted by you).*

4.    **REASONS FOR DISPUTE:**

   *(Provide full particulars of the Claim and supporting documentation, including amount, description of transaction(s) or agreement(s) giving rise to the Claim, name of any guarantor(s) which has guaranteed the Claim, particulars and copies of any security, and amount of Claim allocated thereto, date and number of all invoices, particulars of all*

- 3 -

*credits, discounts, etc. claimed.  The particulars provided must support the determination of the Claim as stated by you in item 3, above.)*

_____

_____

_____

_____

_____

_____

_____

_____

If you intend to dispute the Notice of Revision or Disallowance, you must notify the Monitor of such intent by delivery to the Monitor of a Notice of Dispute of Revision or Disallowance in accordance with the Claims Procedure Order such that it is received by the Monitor by no later than seven (7) Calendar Days after you receive such Notice of Revision or Disallowance at the following address by prepaid registered mail, courier, personal delivery, facsimile transmission, email or telephone:

> FTI Consulting Canada Inc., Court-appointed Monitor of Cline Mining Corporation, New Elk Coal Company LLC and North Central Energy Company
>
> Claims Process
>
> 79 Wellington Street West
> TD South Tower
> Suite 2010, P.O. Box 104
> Toronto, ON  M5K 1G8
> Attention:      Pamela Luthra
> Telephone       (416) 649.8099 (Local Toronto)
>                 (855) 398.7390 (Toll-Free)
> Fax:            (416) 649.8101
> Email           cline@fticonsulting.com

Dated at _____ this _____ day of _____, 201___.

SCHEDULE "G"

**PROOF OF CLAIM INSTRUCTION LETTER
FOR THE CLAIMS PROCEDURE FOR UNKNOWN CREDITORS OF CLINE MINING
CORPORATION, NEW ELK COAL COMPANY LLC AND NORTH CENTRAL
ENERGY COMPANY (the "Applicants")**

**CLAIMS PROCEDURE**

By Order of the Ontario Superior Court of Justice (Commercial List) dated December 3, 2014 (the "**CCAA Filing Date**") (as such Order may be amended from time to time the "**Claims Procedure Order**") under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (the "**CCAA**"), the Applicants and FTI Consulting Canada Inc., in its capacity as Court-appointed Monitor of the Applicants (the "**Monitor**"), have been authorized to conduct a claims procedure (the "**Claims Procedure**"). A copy of the Claims Procedure Order and other public information concerning these proceedings can be obtained from the Monitor's website at: http://cfcanada.fticonsulting.com/cline.

This letter provides general instructions for completing a Proof of Claim form. Defined terms not defined within this instruction letter shall have the meaning ascribed thereto in the Claims Procedure Order.

The Claims Procedure is intended to identify and determine any claims against the Applicants and the Directors or Officers of the Applicants, whether unliquidated, contingent or otherwise, that are to be affected in the plan of compromise and arrangement being pursued by the Applicants under the CCAA. Please review the Claims Procedure Order for the full terms of the Claims Procedure.

All notices and inquiries with respect to the Claims Procedure should be directed to the Monitor by prepaid registered mail, courier, personal delivery, facsimile transmission or email at the address below:

> FTI Consulting Canada Inc., Court-appointed Monitor of Cline Mining Corporation, New Elk Coal Company LLC and North Central Energy Company
>
> Claims Process
>
> 79 Wellington Street West
> TD South Tower
> Suite 2010, P.O. Box 104
> Toronto, ON  M5K 1G8
> Attention:      Pamela Luthra
> Telephone      (416) 649.8099 (Local Toronto)
>                (855) 398.7390 (Toll-Free)
> Fax:           (416) 649.8101
> Email          cline@fticonsulting.com

- 2 -

**FOR CREDITORS SUBMITTING A PROOF OF CLAIM**

If you believe that you have a Claim against the Applicants or a Director or Officer of the Applicants and you have not already received a Notice of Claim in respect of such Claim, you must complete and file a Proof of Claim form with the Monitor. All Proofs of Claim for Prefiling Claims (i.e. Claims against the Applicants arising prior to the CCAA Filing Date) and all Director/Officer Claims **must be received by the Monitor before 5:00 p.m. (Toronto Time) on January 13, 2015** (the "**Claims Bar Date**"), unless the Monitor and the Applicants agree in writing or the Court orders that the Proof of Claim be accepted after that date. If you do not file a Proof of Claim in respect of any such Claims by the Claims Bar Date, you shall not be entitled to vote at any meeting of creditors regarding the plan of compromise and arrangement being proposed by the Applicants or participate in any distribution under such plan in respect of such Claims and any such Claims shall be forever extinguished and barred.

All Proofs of Claim for Restructuring Period Claims (i.e. Claims against the Applicants arising on or after the CCAA Filing Date) **must be received by the Monitor on the date that is seven (7) Calendar Days after termination, repudiation or resiliation of the agreement or other event giving rise to the Restructuring Period Claim** (the "**Restructuring Period Claims Bar Date**"), unless the Monitor and the Applicants agree in writing or the Court orders that the Proof of Claim be accepted after that date. If you do not file a Proof of Claim in respect of any such Restructuring Period Claims by the Restructuring Period Claims Bar Date, you shall not be entitled to vote at any meeting of creditors regarding the plan of compromise and arrangement being proposed by the Applicants or participate in any distribution under such plan in respect of such Claims and any such Claims you may have against the Applicants and/or any of the Directors and Officers of the Applicants shall be forever extinguished and barred.

All Claims denominated in a foreign currency shall be converted to Canadian dollars at the Bank of Canada United States/Canadian Dollar noon exchange rate in effect as of the date of the Initial Order.

**ADDITIONAL FORMS**

Additional Proof of Claim forms can be obtained from the Monitor's website at http://cfcanada.fticonsulting.com/cline or by contacting the Monitor.

DATED this _____ day of December, 2014.

**SCHEDULE "H"**

Court File No. CV-14-10781-00CL

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

**IN THE MATTER OF THE COMPANIES' CREDITORS**
**ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE**
**AND ARRANGEMENT OF CLINE MINING CORPORATION, NEW ELK COAL**
**COMPANY LLC AND NORTH CENTRAL ENERGY COMPANY**

---

**PROOF OF CLAIM**

---

1.   **PARTICULARS OF CREDITOR**

    (a)   Full Legal Name of Creditor: _____

    (b)   Full Mailing Address of Creditor: _____

                                       _____

                                       _____

                                       _____

                                       _____

    (c)   Telephone Number of Creditor: _____

    (d)   Facsimile Number of Creditor: _____

    (e)   E-mail Address of Creditor: _____

    (f)   Attention (Contact Person): _____

- 2 -

2. **PARTICULARS OF ORIGINAL CREDITOR FROM WHOM YOU ACQUIRED CLAIM, IF APPLICABLE:**

    (a)    Have you acquired this Claim by assignment?    Yes ☐ No ☐

            (if yes, attach documents evidencing assignment)

    (b)    Full Legal Name of original creditor(s): _____

3. **PROOF OF CLAIM**

    **THE UNDERSIGNED CERTIFIES AS FOLLOWS:**

    (a)    That I am a Creditor of the Applicants / I hold the position of _____ of the Creditor;

    (b)    That I have knowledge of all the circumstances connected with the Claim described and set out below;

    (c)    The Applicants and/or the Director(s) or Officer(s) of the Applicants were and still are indebted to the Creditor as follows *(Any Claims denominated in a foreign currency shall be converted to Canadian dollars at the Bank of Canada Canadian Dollar noon exchange rate in effect as of the date of the Initial Order.)*

        (i)    Name of Applicant(s) to which Claim Relates:

                _____

        (ii)    Prefiling Claims against the Applicants (not including WARN Act Claims):

            $_____

        (iii)    Restructuring Period Claims against the Applicants:

            $_____

        (iv)    Director/Officer Claims against the Directors and/or Officers of the Applicants:

            $_____

        (v)    WARN Act Claims against the Applicants:

            $_____

- 3 -

    (vi)      TOTAL CLAIM:

        $_____ (Total of (ii), (iii), (iv) and (v))

4.     **NATURE OF CLAIM AGAINST THE APPLICANTS**

     *(CHECK AND COMPLETE APPROPRIATE CATEGORY)*

     ☐    Unsecured Claim of $_____

     ☐    Secured Claim of $_____

     In respect of this debt, I hold security over the assets of the Applicants valued at $_____, the particulars of which security and value are attached to this Proof of Claim form.

     *(If the Claim is secured, provide full particulars of the security, including the date on which the security was given the value for which you ascribe to the assets charged by your security, the basis for such valuation and attach a copy of the security documents evidencing the security.)*

5.     **PARTICULARS OF CLAIM:**

     The particulars of the undersigned's total Claim (including Prefiling Claims, Restructuring Period Claims, WARN Act Claims and Director/Officer Claims) are attached.

     *(Provide full particulars of the Claim and supporting documentation, including amount, description of transaction(s) or agreement(s) giving rise to the Claim, name of any guarantor(s) which has guaranteed the Claim, particulars and copies of any security and amount of Claim allocated thereto, date and number of all invoices, particulars of all credits, discounts, etc. claimed. If a claim is made against any Directors or Officer, specify the applicable Directors or Officers and the legal basis for the Claim against them.).*

6.     **FILING OF CLAIM**

     For Prefiling Claims, this Proof of Claim must be returned to and received by the Monitor by **5:00 p.m. (Toronto Time) on the Claims Bar Date (January 13, 2015)**.

     For Restructuring Period Claims, Claim must be returned to and received by the Monitor by **5:00 p.m. (Toronto Time) on the date that is seven (7) Calendar Days after termination, repudiation or resiliation of the agreement or other event giving rise to the Restructuring Period Claim.**

- 4 -

In both cases, completed forms must be delivered by prepaid registered mail, courier, personal delivery, facsimile transmission or email at the address below to the Monitor at the following address:

> FTI Consulting Canada Inc., Court-appointed Monitor of Cline Mining Corporation, New Elk Coal Company LLC and North Central Energy Company

> Claims Process

> 79 Wellington Street West
> TD South Tower
> Suite 2010, P.O. Box 104
> Toronto, ON M5K 1G8
> Attention:    Pamela Luthra
> Telephone    (416) 649.8099 (Local Toronto)
>                    (855) 398.7390 (Toll-Free)
> Fax:            (416) 649.8101
> Email          cline@fticonsulting.com

Dated at _____ this _____ day of _____, 201___.

Court File No.: CV-14-10781-00CL

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE AND ARRANGEMENT OF CLINE MINING CORPORATION, NEW ELK COAL COMPANY LLC AND NORTH CENTRAL ENERGY COMPANY

---

*ONTARIO*
## SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

Proceeding commenced at Toronto

---

## CLAIMS PROCEDURE ORDER

---

**Goodmans LLP**
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, Canada  M5B 2M6

Robert J. Chadwick          LSUC# 35165K
Logan Willis                LSUC# 53894K
Bradley Wiffen              LSUC# 64279L

Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Applicants

6322529

**EXHIBIT 3**

**Meetings Order**

Court File No. CV-14-10781-00CL

## *ONTARIO*
## SUPERIOR COURT OF JUSTICE
## (COMMERCIAL LIST)

| | | |
|---|---|---|
| THE HONOURABLE REGIONAL | ) | WEDNESDAY, THE 3RD |
| | ) | |
| SENIOR JUSTICE MORAWETZ | ) | DAY OF DECEMBER, 2014 |

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE AND ARRANGEMENT OF CLINE MINING CORPORATION, NEW ELK COAL COMPANY LLC AND NORTH CENTRAL ENERGY COMPANY

### MEETINGS ORDER

**THIS MOTION** made by Cline Mining Corporation, New Elk Coal Company LLC and North Central Energy Company (collectively, the "**Applicants**") for an Order granting the relief set out in the Applicants' Notice of Motion, including, *inter alia*:

a)     authorizing the Applicants to file with the Court a plan of compromise and arrangement of the Applicants under the *Companies' Creditors Arrangement Act* (the "**CCAA**"); and

b)     authorizing and directing the Applicants to call meetings of their creditors to consider and vote upon the plan of compromise and arrangement filed by the Applicants,

was heard this day at 330 University Avenue, Toronto, Ontario.

**ON READING** the Notice of Motion, the Affidavit of Matthew Goldfarb sworn December 2, 2014 (the "**Goldfarb Affidavit**") and the pre-filing report of FTI Consulting Canada Inc. (the "**Pre-Filing Report**") in its capacity as proposed Court-appointed monitor of

- 2 -

the Applicants (the "**Monitor**"), and on hearing from counsel for the Applicants, the Monitor, and Marret Asset Management Inc. (on behalf of the beneficial holders of the Secured Notes (as defined below), in such capacity, "**Marret**") and such other counsel as were present, no one else appearing although duly served as appears from the affidavit of service, filed.

## SERVICE

1.      **THIS COURT ORDERS** that the time for service of the Notice of Motion herein be and is hereby abridged and that the Notice of Motion is properly returnable today and service thereof upon any person other than those on the Service List be and is hereby dispensed with.

## DEFINITIONS

2.      **THIS COURT ORDERS** that, unless otherwise noted, capitalized terms shall be as defined in this Order or in the Plan of Compromise and Arrangement in respect of the Applicants, which is attached as Exhibit F to the Goldfarb Affidavit (as it may be amended in accordance with its terms, the "**Plan**").

## MONITOR'S ROLE

3.      **THIS COURT ORDERS** that the Monitor, in addition to its prescribed rights and obligations under (i) the CCAA, (ii) the Initial Order, and (iii) the Claims Procedure Order, is hereby directed and empowered to take such other actions and fulfill such other roles as are authorised by this Meetings Order.

4.      **THIS COURT ORDERS** that: (i) in carrying out the terms of this Meetings Order, the Monitor shall have all the protections given to it by the CCAA, the Initial Order, the Claims Procedure Order, or as an officer of the Court, including the stay of proceedings in its favour; (ii) the Monitor shall incur no liability or obligation as a result of carrying out the provisions of this Meeting Order, save and except for any gross negligence or wilful misconduct on its part; (iii) the Monitor shall be entitled to rely on the books and records of the Applicants and any information provided by the Applicants without

- 3 -

independent investigation; and (iv) the Monitor shall not be liable for any claims or damages resulting from any errors or omissions in such books, records or information.

## PLAN OF COMPROMISE AND ARRANGEMENT

5.     **THIS COURT ORDERS** that the Plan be and is hereby accepted for filing with the Court, and that the Applicants are authorized to seek approval of the Plan by the Creditors holding Voting Claims (as defined in the Claims Procedure Order) or Disputed Voting Claims (as defined in the Claims Procedure Order) (each an "**Eligible Voting Creditor**") at the Meetings (as hereinafter defined) in the manner set forth herein.

6.     **THIS COURT ORDERS** that the Applicants be and are hereby authorized to amend, modify and/or supplement the Plan, provided that any such amendment, modification or supplement shall be made in accordance with the terms of Article 10.5 of the Plan.

## NOTICE OF MEETINGS

7.     **THIS COURT ORDERS** that each of the following in substantially the forms attached to this Order as Schedules "A", "B", "C" and "D", respectively, are hereby approved:

     (a)     the Applicants' information statement (the "**Information Statement**");

     (b)     the form of notice of the Meetings and Sanction Hearing (the "**Notice of Meetings**");

     (c)     the form of proxy for Eligible Voting Creditors other than Secured Noteholders (the "**Creditors Proxy**"); and

     (d)     the form of proxy for Secured Noteholders (the "**Secured Noteholders Proxy**")

(collectively, the "**Information Package**").

8.     **THIS COURT ORDERS** that, notwithstanding paragraph 7 above, but subject to paragraph 6, the Applicants and the Monitor may from time to time make such minor changes to the documents in the Information Package as the Applicants and the Monitor

- 4 -

consider necessary or desirable or to conform the content thereof to the terms of the Plan, this Order or any further Orders of the Court.

9.   **THIS COURT ORDERS** that, as soon as practicable after the granting of this Order, the Monitor shall cause a copy of the Information Package (and any amendments made thereto in accordance with paragraph 8 hereof), this Order, and the Pre-Filing Report to be posted on the Monitor's Website.  The Monitor shall ensure that the Information Package (and any amendments made thereto in accordance with paragraph 8 hereof) remains posted on the Monitor's Website until at least one (1) Business Day after the Plan Implementation Date.

10.  **THIS COURT ORDERS** that, as soon as practicable after the granting of this Order, the Monitor shall send the Information Package (without the Secured Noteholders Proxy) to all Creditors (other than Secured Noteholders) known to the Monitor and the Applicants as of the date of this Order by regular mail, facsimile, courier or e-mail at the last known address (including fax number or email address) for such Creditors set out in the books and records of the Applicants.  Notwithstanding the foregoing, any materials, including the Information Package, to be delivered to Creditors by the Applicants or the Monitor shall be deemed to be duly delivered to the WARN Act Plaintiffs if they have been delivered to WARN Act Class Action Counsel.

11.  **THIS COURT ORDERS** that, as soon as practicable following the receipt of a request therefor, the Monitor shall send a copy of the Information Package (without the Secured Noteholders Proxy) by registered mail, facsimile, courier or e-mail, to each Creditor (other than Secured Noteholders) who, no later than three (3) Business Days prior to the applicable Meeting (or any adjournment thereof), makes a written request for it.

12.  **THIS COURT ORDERS** that, as soon as practicable after the granting of this Order, the Monitor shall use reasonable efforts to cause the Notice of Meetings (substantially in the form attached hereto as **Schedule "B"**) to be published for a period of one (1) Business Day in The Globe and Mail (National Edition), the Denver Post and the Pueblo Chieftain, provided that the Monitor shall be entitled to make such amendments or abridgments to

- 5 -

the Notice of Meetings as are reasonable, in its discretion, for the purpose of publishing the Notice of Meetings in the foregoing newspapers.

**SECURED NOTEHOLDERS SOLICITATION PROCESS**

13.     **THIS COURT ORDERS** that the record date for the purposes of determining which Secured Noteholders are entitled to receive notice of the Secured Noteholders Meeting and vote at the Secured Noteholders Meeting with respect to their Secured Noteholder's Allowed Secured Claim (as herein defined) and to receive notice of the Unsecured Creditors Meeting and vote at the Unsecured Creditors Meeting with respect to their Secured Noteholder's Allowed Unsecured Claim (as herein defined) shall be 5:00 p.m. (Toronto time) on the date of the initial CCAA Order granted by this Court in these proceedings (the "**Secured Noteholder Voting Record Date**"), without prejudice to the right of the Applicants, in consultation with the Monitor, to set any other record date or dates for the purpose of distributions under the Plan or other purposes.

14.     **THIS COURT ORDERS** that on or before the Business Day following the date hereof, the Monitor shall provide an electronic copy of the Information Package (other than the Creditors Proxy) to Marret on behalf of all Secured Noteholders, and such delivery shall be deemed to be effective delivery thereof to all Secured Noteholders, without any requirement for the delivery of the Information Package to Computershare Trust Company of Canada as indenture trustee of the Secured Notes (the "**Trustee**") or to CDS participant holders of the Secured Notes (the "**CDS Participants**").

15.     **THIS COURT ORDERS** that upon receiving the Information Package from the Monitor, Marret shall do the following:

     (a)     forward the Information Package to the beneficial Secured Noteholders in accordance with the usual practice of Marret for dealing with the beneficial Secured Noteholders;

     (b)     solicit from each of the beneficial Secured Noteholders its instructions with respect to voting at the Meetings; and

- 6 -

(c)     submit to the Monitor a master voting list (the "**Master Voting List**") in a form satisfactory to the Applicants and the Monitor. The master voting list shall set out the principal amount of 2011 Notes and the principal amount of 2013 Notes held by each beneficial Secured Noteholder (identified by name) as well as the position of each beneficial Secured Noteholder (identified by name) as to voting in favour of or against the Plan with respect to (i) its Secured Noteholder's Allowed Secured Claim and (ii) its Secured Noteholder's Allowed Unsecured Claim. The Master Voting List will contain a representation, in a form satisfactory to the Applicants and the Monitor, duly executed by the Marret, that the Master Voting List is a true summary of the position of the beneficial Secured Noteholders.

Once the Monitor has received the Master Voting List from Marret, the Monitor will record the votes for each applicable beneficial Secured Noteholder in accordance with that Master Voting List. The Monitor may amend the Information Package to make those materials consistent with any other vote solicitation process for Secured Noteholders as may be deemed appropriate by the Monitor in consultation with counsel for the Applicants and Marret. For greater certainty, any votes cast on behalf of the Secured Noteholders and recorded pursuant to this paragraph 15 shall be deemed to be valid without any further action by the Monitor, the Trustee or the CDS Participants.

16.     **THIS COURT ORDERS** that with respect to votes to be cast at any Meetings by a Secured Noteholder, it is the beneficial holder of the Secured Notes (and for greater certainty not the registered holder of such Secured Notes or the CDS Participant, who is entitled to cast such votes as an Eligible Voting Creditor. Each beneficial Secured Noteholder that casts a vote at the Meetings in accordance with this Order shall be counted as an individual Creditor for each Voting Class in which it casts such vote. For the purposes of voting at the Secured Noteholders Meeting and the Unsecured Noteholders Meeting, the votes recorded on the Master Voting List shall be accepted as if voted in person by the Secured Noteholders at the Secured Noteholders Meeting and the Unsecured Creditors Meeting, as applicable.

- 7 -

**NOTICE SUFFICIENT**

17.   **THIS COURT ORDERS** that the publication of the Notice of Meetings in accordance with paragraph 12 above, the sending of a copy of the Information Package to Creditors in accordance with paragraph 10 above, the posting of the Information Package on the Monitor's Website in accordance with paragraph 9 above, and the provision of notice to Creditors in the manner set out in paragraphs 9 to 12 and 14 to 15 above, shall constitute good and sufficient service of this Order, the Plan and the Notice of Meetings on all Persons who may be entitled to receive notice thereof, or who may wish to be present in person or by proxy at the Meetings or in these proceedings, and no other form of notice or service need be made on such Persons and no other document or material need be served on such Persons in respect of these proceedings.  Service shall be effective, in the case of mailing, three (3) Business Days after the date of mailing, in the case of service by courier, on the day after the courier was sent, in the case of any means of transmitted, recorded or electronic communication, when dispatched or delivered for dispatch and in the case of service by fax or e-mail, on the day the fax or e-mail was transmitted, unless such day is not a Business Day, or the fax or e-mail transmission was made after 5:00 p.m., in which case, on the next Business Day.

18.   **THIS COURT ORDERS** that the non-receipt of a copy of the Information Package beyond the reasonable control of the Monitor, or any failure or omission to provide a copy of the Information Package as a result of events beyond the reasonable control of the Monitor (including, without limitation, any inability to use postal services) shall not constitute a breach of this Order, and shall not invalidate any resolution passed or proceedings taken at the WARN Act Plaintiffs Meeting, the Secured Noteholders Meeting or the Unsecured Creditors Meeting, but if any such failure or omission is brought to the attention of the Monitor, then the Monitor shall use reasonable efforts to rectify the failure or omission by the method and in the time most reasonably practicable in the circumstances.

- 8 -

## THE MEETINGS

19.    **THIS COURT ORDERS** that, subject to paragraph 48 hereof, the Applicants are authorized to hold Meetings of the following classes of Affected Creditors for the purpose of considering and voting on a resolution to approve the Plan (each a "**Voting Class**" and collectively, the "**Voting Classes**"), each as more particularly described in the Plan: (a) the Secured Noteholders Class; (b) the Affected Unsecured Creditors Class; and (c) the WARN Act Plaintiffs Class.

20.    **THIS COURT ORDERS** that the Applicants are hereby authorized and directed to call, hold and conduct a separate meeting for each Voting Class at Goodmans LLP, 333 Bay Street, Suite 3400, Toronto, Ontario, on January 21, 2015, at 10:00a.m. for the WARN Act Plaintiffs Class (the "**WARN Act Plaintiffs Meeting**"), 11:00 a.m. for the Affected Unsecured Creditors Class (the "**Unsecured Creditors Meeting**") and 12:00 p.m. for the Secured Noteholders Class (the "**Secured Noteholders Meeting**" and, together with the Unsecured Creditors Meeting and the WARN Act Plaintiffs Meeting, the "**Meetings**" and each a "**Meeting**"), or as adjourned to such places and times as the Chair or Monitor may determine in accordance with paragraph 48 hereof, for the purposes of considering and voting on the resolution to approve the Plan and transacting such other business as may be properly brought before the applicable Meeting.

21.    **THIS COURT ORDERS** that the only Persons entitled to notice of, attend or speak at the Meetings are the Eligible Voting Creditors (or their respective duly appointed proxyholders), representatives of the Monitor, the Applicants, Marret, all such parties' financial and legal advisors, the Chair, Secretary and the Scrutineers, provided that an Eligible Voting Creditor (or its respective duly appointed proxyholder) and its financial and legal advisors shall only be entitled to notice of, attend or speak at a Meeting if such Eligible Voting Creditor is entitled to vote at the applicable Meeting in accordance with this Order. Any other person may be admitted to a Meeting only by invitation of the Applicants or the Chair.

- 9 -

**AFFECTED UNSECURED CREDITORS CLASS**

22.      **THIS COURT ORDERS** that, for the purposes of voting at the Unsecured Creditors Meeting, each Affected Unsecured Creditor with a Voting Claim or a Disputed Voting Claim (including each beneficial Secured Noteholder with respect to its Secured Noteholder's Allowed Unsecured Claim (as defined below) and, for greater certainty, not including the WARN Act Plaintiffs) shall be entitled to one vote as a member of the Affected Unsecured Creditors Class.

23.      **THIS COURT ORDERS** that each Affected Unsecured Creditor with a Voting Claim or a Disputed Voting Claim of not more than $10,000 (other than Secured Noteholders and, for greater certainty, not including WARN Act Plaintiffs) shall be deemed to vote in favour of the Plan unless such Affected Unsecured Creditor has notified the Monitor in writing of its intention to vote against the Plan prior to the Unsecured Creditors Meeting and does vote against the Plan at the Unsecured Creditors Meeting (in person or by Proxy).

24.      **THIS COURT ORDERS** that, for the purposes of voting at the Unsecured Creditors Meeting, the value of a vote cast by any Affected Unsecured Creditor (not including a Secured Noteholder with respect to its Secured Noteholder's Allowed Unsecured Claim and, for greater certainty, not including WARN Act Plaintiffs) shall be deemed equal to his, her or its unsecured Voting Claim.

25.      **THIS COURT ORDERS** that, for the purposes of voting at the Unsecured Creditors Meeting, the value of a vote cast by any Secured Noteholder shall be deemed to be equal to its Secured Noteholder's Pro-Rata Share of the Secured Noteholders Allowed Unsecured Claim (as defined in the Claims Procedure Order) (such Secured Noteholder's Pro-Rata Share being its "**Secured Noteholder's Allowed Unsecured Claim**"). For the purposes of this Order, "**Secured Noteholder's Pro-Rata Share**" shall mean, with respect to each Secured Noteholder, the principal amount of Secured Notes held by such Secured Noteholder divided by the total aggregate principal amount of all Secured Notes, in each case as at the Secured Noteholder Voting Record Date.

- 10 -

26.     **THIS COURT ORDERS** that, subject to paragraph 15, in order to cast votes on behalf of the Secured Noteholders at the Unsecured Creditors Meeting, Marret must provide the Master Voting List to the Monitor on or before 5:00 p.m. on the Business Day before the Unsecured Creditors Meeting.  Notwithstanding the foregoing, the Chair shall have the discretion to accept for voting purposes a duly completed Master Voting List filed with the Chair (or the Chair's designee) at any time prior to the commencement of the Unsecured Creditors Meeting or any adjournment thereof.

## WARN ACT PLAINTIFFS CLASS

27.     **THIS COURT ORDERS** that, for the purposes of voting at the WARN Act Plaintiffs Meeting, each WARN Act Plaintiff with a Voting Claim or a Disputed Voting Claim shall be entitled to cast one vote as a member of the WARN Act Plaintiffs Class.

28.     **THIS COURT ORDERS** that, for the purposes of voting at the WARN Act Plaintiffs Meeting, the value of a vote cast by any WARN Act Plaintiff shall be equal to such WARN Act Plaintiff's Voting Claim.

## SECURED NOTEHOLDERS CLASS

29.     **THIS COURT ORDERS** that, for the purposes of voting at the Secured Noteholders Meeting, each beneficial Secured Noteholder (with respect to its Secured Noteholder's Allowed Secured Claim (as defined below)) shall be entitled to one vote as a member of the Secured Noteholders Class.

30.     **THIS COURT ORDERS** that, for the purposes of voting at the Secured Noteholders Meeting, the secured Voting Claim of any Secured Noteholder shall be deemed to be equal to its Secured Noteholder's Pro-Rata Share of the Secured Noteholders Allowed Secured Claim (as defined in the Claims Procedure Order) (such Secured Noteholder's Pro-Rata Share of any Secured Noteholders Allowed Secured Claim being its "**Secured Noteholder's Allowed Secured Claim**").

31.     **THIS COURT ORDERS** subject to paragraph 15, in order to cast votes on behalf of the Secured Noteholders at the Secured Noteholders Meeting, Marret must provide the

- 11 -

Master Voting List to the Monitor on or before 5:00 p.m. on the Business Day before the Unsecured Creditors Meeting. Notwithstanding the foregoing, the Chair shall have the discretion to accept for voting purposes a duly completed Master Voting List filed with the Chair (or the Chair's designee) at any time prior to the Secured Noteholders Meeting or any adjournment thereof.

## VOTING BY PROXIES

32.  **THIS COURT ORDERS** that all Creditor Proxies submitted in respect of (i) the Unsecured Creditors Meeting (or any adjournment thereof) or (ii) the WARN Act Plaintiffs Meeting (or any adjournment thereof) must be (a) submitted by 5:00 p.m. at least one (1) Business Day prior to the Unsecured Creditors Meeting or the WARN Act Plaintiffs, as applicable; and (b) in substantially the form attached to this Order as Schedule "C" or in such other form acceptable to the Monitor or the Chair. The Monitor is hereby authorized to use reasonable discretion as to the adequacy of compliance with respect to the manner in which any proxy is completed and executed, and may waive strict compliance with the requirements in connection with the deadlines imposed in connection therewith.

33.  **THIS COURT ORDERS** that Affected Unsecured Creditors with Voting Claims or Disputed Voting Claims valued at not more than $10,000 shall be entitled to submit a Creditors Proxy but, subject to paragraph 23 hereof, shall not be entitled to cast a vote on the Plan at the Meeting (either in person or by proxy).

34.  **THIS COURT ORDERS** that, for greater certainty, Class Action Counsel (as defined in the Claims Procedure Order) shall be permitted to cast votes only on behalf of those WARN Act Plaintiffs who have duly appointed Class Action Counsel as their proxy pursuant to section 32 hereof.

35.  **THIS COURT ORDERS** that the Secured Noteholders shall be entitled to vote at the Meetings pursuant to the process described in paragraph 15 hereof and pursuant to a duly submitted Secured Noteholders Proxy.

- 12 -

36.   **THIS COURT ORDERS** that for the purpose of tabulating the votes cast on any matter that may come before the Meetings, the Chair shall be entitled to rely on any vote cast by a holder of a proxy that has been duly submitted to the Monitor in the manner set forth in this Meetings Order without independent investigation.

37.   **THIS COURT ORDERS** that paragraphs 23, 26 and 31 to 36, and the instructions contained in the Creditors Proxy and the Secured Noteholders Proxy shall govern the submission of such documents and any deficiencies in respect of the form or substance of such documents filed with the Monitor.

## TRANSFERS OR ASSIGNMENTS OF CLAIMS

38.   **THIS COURT ORDERS** that an Affected Creditor other than a Secured Noteholder may transfer or assign the whole of its Affected Claim prior to the Meetings. If an Affected Creditor other than a Secured Noteholder transfers or assigns the whole of an Affected Claim to another Person, such transferee or assignee shall not be entitled to attend and vote the transferred or assigned Affected Claim at the applicable Meeting unless (i) the assigned Affected Claim is a Voting Claim or Disputed Claim, or a combination thereof, and (ii) satisfactory notice of and proof of transfer or assignment has been delivered to the Monitor in accordance with the Claims Procedure Order no later than seven (7) days prior to the date of the applicable Meeting.

39.   **THIS COURT ORDERS** that nothing in this Order shall restrict the Secured Noteholders who have beneficial ownership of a Claim in respect of the Secured Notes from transferring or assigning such Claim, in whole or in part, and any such transfer or assignment shall be governed by the provisions of the Plan and the Claims Procedure Order, provided that nothing in this paragraph 39 shall limit or restrict the application of the Secured Noteholder Voting Record Date and paragraphs 13 to 15 hereof.

## DISPUTED VOTING CLAIMS

40.   **THIS COURT ORDERS** that, in the event that an Affected Unsecured Creditor, a WARN Act Plaintiff or a Secured Noteholder holds a Claim that is a Disputed Voting Claim as at the date of the Unsecured Creditors Meeting, the WARN Act Plaintiffs

Meeting or the Secured Noteholders Meeting, as applicable, such Creditor may attend the Unsecured Creditors Meeting, the WARN Act Plaintiffs Meeting or the Secured Noteholders Meeting, as applicable, and such Disputed Voting Claim may be voted at such Meeting by such Creditor (or its duly appointed proxyholder) in accordance with the provisions of this Order, without prejudice to the rights of the Applicants, the Monitor or the holder of the Disputed Voting Claim with respect to the final determination of the Disputed Claim for distribution purposes, and such vote shall be separately tabulated as provided herein, provided that votes cast in respect of any Disputed Voting Claim shall not be counted for any purpose, unless, until and only to the extent that such Disputed Voting Claim is finally determined to be a Voting Claim.

## ENTITLEMENT TO VOTE AT THE MEETINGS

41.    **THIS COURT ORDERS** that, for greater certainty, and without limiting the generality of anything in this Order, a Person holding an Unaffected Claim is not entitled to vote on the Plan in respect of such Unaffected Claim at any Meeting and, except as otherwise permitted herein, shall not be entitled to attend a Meeting.

42.    **THIS COURT ORDERS** that, subject to paragraphs 38 and 39, the only Persons entitled to vote at the Unsecured Creditors Meeting in person or by proxy are Affected Unsecured Creditors with Voting Claims or Disputed Voting Claims, the only Persons entitled to vote at the WARN Act Plaintiffs Meeting in person or by proxy are WARN Act Plaintiffs with Voting Claims or Disputed Voting Claims, and the only Persons entitled to vote at the Secured Noteholders Meeting in person or by proxy are Secured Noteholders with Voting Claims or Disputed Voting Claims.

43.    **THIS COURT ORDERS** that, notwithstanding anything to the contrary herein, any Person with a Claim that meets the definition of "equity claim" under section 2(1) of the CCAA shall have no right to, and shall not, vote at the Meetings in respect of such Claim.

## PROCEDURE AT THE MEETINGS

44.    **THIS COURT ORDERS** that Paul Bishop, or another representative of the Monitor, designated by the Monitor, shall preside as the chair of the Meetings (the **"Chair"**) and,

- 14 -

subject to this Meetings Order or any further Order of the Court, shall decide all matters relating to the conduct of the Meetings.

45.    **THIS COURT ORDERS** that a person designated by the Monitor shall act as secretary at each Meeting (the "**Secretary**") and the Monitor may appoint scrutineers for the supervision and tabulation of the attendance, quorum and votes cast at each Meeting (the "**Scrutineers**").  The Scrutineers shall tabulate the votes in respect of all Voting Claims and Disputed Claims, if any, at each Meeting.

46.    **THIS COURT ORDERS** an Eligible Voting Creditor that is not an individual may only attend and vote at a Meeting if it has appointed a proxyholder to attend and act on its behalf at such Meeting.

47.    **THIS COURT ORDERS** that the quorum required at each Meeting shall be one Creditor with a Voting Claim present at such Meeting in person or by proxy. If the requisite quorum is not present at a Meeting, then such Meeting shall be adjourned by the Chair to such time and place as the Chair deems necessary or desirable.

48.    **THIS COURT ORDERS** that, subject to 47, a Meeting shall be adjourned to such date, time and place as may be designated by the Chair or the Monitor, if:

    (a)    the requisite quorum is not present at such Meeting; or

    (b)    prior to or during the Meeting, the Chair or the Monitor, in consultation with the Applicants, otherwise decides to adjourn such Meeting.

The announcement of the adjournment by the Chair at such Meeting (if the adjournment is during a Meeting) and written notice to the Service List with respect to such adjournment shall constitute sufficient notice of the adjournment and neither the Applicants nor the Monitor shall have any obligation to give any other or further notice to any Person of the adjourned Meeting. Notwithstanding anything to the contrary herein or in the Plan, if the requisite quorum is not present at the WARN Act Plaintiffs Meeting or if it is determined in accordance with the Claims Procedure Order that there are no Voting Claims in the WARN Act Plaintiffs Class, the Applicants shall be entitled, but not

- 15 -

required, to amend the Plan without further Order of the Court to combine the WARN Act Plaintiffs Class with the Affected Unsecured Creditors Class on such terms as may be set forth in such amended Plan (including on the basis that the WARN Act Plan Entitlement shall not be payable under the Plan), in which case the Applicants shall have no further obligation to hold the WARN Act Plaintiffs Meeting or otherwise seek a vote of the WARN Act Plaintiffs Class with respect to the resolution to approve the Plan or any other matter.

49.   **THIS COURT ORDERS** every question submitted to a Meeting, except to approve the Plan resolution, shall be decided by a vote of a majority in value of the Creditors with Voting Claims present in person or by proxy at such Meeting.

50.   **THIS COURT ORDERS** that the Chair be and is hereby authorized to direct a vote at each Meeting, by such means as the Chair may consider appropriate, with respect to: (i) a resolution to approve the Plan and any amendments thereto; and (ii) any other resolutions as the Chair may consider appropriate in consultation with the Applicants.

51.   **THIS COURT ORDERS** that the Monitor shall keep separate tabulations of votes cast at each Meeting in respect of:

   (a)   Voting Claims; and

   (b)   Disputed Voting Claims, if applicable.

52.   **THIS COURT ORDERS** that following the votes at the Meetings, the Scrutineers shall tabulate the votes in each Voting Class and the Monitor shall determine whether the Plan has been accepted by the majorities of that Voting Class required pursuant to section 6 of the CCAA (the "**Required Majorities**").

53.   **THIS COURT ORDERS** that the Monitor shall file a report with this Court after the Meetings or any adjournment thereof, as applicable, with respect to the results of the votes, including:

   (a)   whether the Plan has been accepted by the Required Majorities in each Voting Class;

- 16 -

(b) whether the votes cast in respect of Disputed Voting Claims, if applicable, would affect the result of that vote; and

(c) for reporting purposes only, the impact of the votes cast in respect of the Secured Noteholders Allowed Unsecured Claim on the vote of the Affected Unsecured Creditors Class.

54. **THIS COURT ORDERS** that if (i) the Plan is not accepted by the Required Majorities of the Affected Unsecured Creditors Class or the WARN Act Plaintiffs Class or (ii) the Applicants determine, in their discretion, that the Plan may not be accepted by the Required Majorities of the Affected Unsecured Creditors Class or the WARN Act Plaintiffs Class or is otherwise unlikely to succeed for any reason whatsoever, then the Applicants are permitted, without further Order of this Court, to file an amended and restated plan (the "**Alternate Plan**") with the attributes described on Schedule "B" to the Plan and to proceed with a meeting of the Secured Noteholders Class for the purpose of considering and voting on the resolution to approve the Alternate Plan, in which case the Applicants and the Monitor will have no obligation whatsoever to proceed with the Unsecured Creditors Meeting or the WARN Act Plaintiffs Meeting. The procedures to be followed in respect of the Secured Noteholders Meeting and the Sanction Hearing in respect of the Alternate Plan and the entitlement of Secured Noteholders to vote at such Secured Noteholders Meeting shall be governed, with any necessary modifications, in accordance with the provisions of this Order. Notwithstanding the foregoing, if agreed by the Applicants, Marret and the Monitor, the Secured Noteholders Meeting and the Sanction Hearing may proceed on the originally scheduled dates set forth in this Order, and the Monitor may rely on any duly completed Master Voting List and any Secured Noteholder Proxy previously received from or on behalf of the Secured Noteholders in respect of the Plan, without the Applicants or the Monitor being required to distribute the Alternate Plan and solicit votes on the Alternate Plan to all beneficial Secured Noteholders in the manner described in this Order.

55. **THIS COURT ORDERS** that a copy of the Monitor's Report regarding the Meetings and the Plan shall be posted on the Monitor's Website prior to the Sanction Hearing.

- 17 -

56.     **THIS COURT ORDERS** that if the votes cast by the holders of Disputed Voting Claims would affect whether the Plan has been approved by the Required Majorities, the Monitor shall report this to the Court in accordance with paragraph 53 of this Order, in which case (i) the Applicants may proceed with an Alternate Plan in the manner described in paragraph 54; (ii) the Applicants or the Monitor may request this Court to direct an expedited determination of any material Disputed Voting Claims, as applicable, (iii) the Applicants may request that this Court defer the date of the Sanction Hearing, (iv) the Applicants may request that this Court defer or extend any other time periods in this Order or the Plan, and/or (v) the Applicants or the Monitor may seek such further advice and direction as may be considered appropriate.

57.     **THIS COURT ORDERS** that the result of any vote conducted at a Meeting of a Voting Class shall be binding upon all Creditors of that Voting Class, whether or not any such Creditor was present or voted at the Meeting.

## SANCTION HEARING AND ORDER

58.     **THIS COURT ORDERS** that if the Plan has been accepted by the Required Majorities in each Voting Class, or if the Alternate Plan has been accepted by the Required Majorities in the   Secured Noteholders Class, the Applicants are authorized to bring a motion seeking the Sanction Order on January 2̶8̶, 2015, or as soon thereafter as the matter can be heard (the "**Sanction Hearing**"). 27 AS

59.     **THIS COURT ORDERS** that service of the Notice of Meetings and the posting of this Order to the Monitor's Website pursuant to paragraphs 9 to 12 hereof shall constitute good and sufficient service of notice of the Sanction Hearing upon all Persons who may be entitled to receive such service and no other form of service or notice need be made on such Persons and no other materials need be served on such Persons in respect of the Sanction Hearing unless they have served and filed a Notice of Appearance in these proceedings.

60.     **THIS COURT ORDERS** that any Person (other than the Applicants, the Monitor and Marret) wishing to receive materials and appear at the Sanction Hearing shall serve upon

- 18 -

the lawyers for each of the Applicants, the Monitor and all other parties on the Service List and file with this Court a Notice of Appearance by no later than 5:00 p.m. (Toronto time) on the date that is seven (7) days prior to the Sanction Hearing.

61.   **THIS COURT ORDERS** that any Person who wishes to oppose the motion for the Sanction Order shall serve upon the lawyers for each of the Applicants and the Monitor and upon all other parties on the Service List, and file with this Court, a copy of the materials to be used to oppose the motion for the Sanction Order by no later than 5:00 p.m. (Toronto time) on the date that is seven (7) days prior to the Sanction Hearing.

62.   **THIS COURT ORDERS** that the Applicants are authorized to adjourn the Sanction Hearing with the prior consent of the Monitor, and if the Sanction Hearing is adjourned, only those Persons who are listed on the Service List (including those Persons who have complied with paragraph 60 of this Order) shall be served with notice of the adjourned date of the Sanction Hearing.

## GENERAL

63.   **THIS COURT ORDERS** that the Applicants and the Monitor may, in their discretion, generally or in individual circumstances, waive in writing the time limits imposed on any Creditor under this Order if each of the Applicants and the Monitor deem it advisable to do so, without prejudice to the requirement that all other Creditors must comply with the terms of this Order.

64.   **THIS COURT ORDERS** that any notice or other communication to be given pursuant to this Order by or on behalf of any Person to the Monitor shall be in writing and will be sufficiently given only if by mail, courier, e-mail, fax or hand-delivery addressed to:

> FTI Consulting Canada Inc., Court-appointed Monitor of Cline Mining Corporation, New Elk Coal Company LLC and North Central Energy Company Claims Process
>
> 79 Wellington Street West
> TD South Tower
> Suite 2010, P.O. Box 104

- 19 -

Toronto, ON  M5K 1G8
Attention:     Pamela Luthra

Fax:     (416) 649.8101
Email   cline@fticonsulting.com

65.  **THIS COURT ORDERS** that notwithstanding any provision herein to the contrary, the Monitor shall be entitled to rely upon any communication given pursuant to this Meetings Order (including any delivery of Creditor Proxies, Secured Noteholder Proxies and Master Voting List).

66.  **THIS COURT ORDERS** that if any deadline set out in this Order falls on a day other than a Business Day, the deadline shall be extended to the next Business Day.

67.  **THIS COURT ORDERS** that the Applicants or the Monitor may from time to time apply to this Court to amend, vary, supplement or replace this Order or for advice and directions concerning the discharge of their respective powers and duties under this Order or the interpretation or application of this Order.

68.  **THIS COURT ORDERS** that any interested party, other than the Applicants or the Monitor, that wishes to amend or vary this Order shall be entitled to appear or bring a motion before this Court on a date to be set by this Court upon the granting of this Order (the **"Comeback Date"**), and any such interested party shall give notice to any other party or parties likely to be affected by the order sought in advance of the Comeback Date.

69.  **THIS COURT ORDERS** that subject to any further Order of this Court, in the event of any conflict, inconsistency, ambiguity or difference between the provisions of the Plan and this Order, the terms, conditions and provisions of the Plan shall govern and be paramount, and any such provision of this Order shall be deemed to be amended to the extent necessary to eliminate any such conflict, inconsistency, ambiguity or difference.

- 20 -

## EFFECT, RECOGNITION AND ASSISTANCE

70.     **THIS COURT ORDERS** that this Order shall have full force and effect in all provinces and territories in Canada, outside Canada and against all Persons against whom it may be enforceable.

71.     **THIS COURT REQUESTS** the aid and recognition of other Canadian and foreign Courts, tribunal, regulatory or administrative bodies, including any Court or administrative tribunal of any Federal or State Court or administrative body in the United States of America, to act in aid of and to be complementary to this Court in carrying out the terms of this Order where required.   All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

SCHEDULE "A"

Information Statement

[See attached]

# NOTICE OF MEETING

and

# INFORMATION STATEMENT

with respect to the

## PLAN OF COMPROMISE AND ARRANGEMENT

under the

## COMPANIES' CREDITORS ARRANGEMENT ACT

concerning, affecting and involving

## CLINE MINING CORPORATION, NEW ELK COAL COMPANY LLC AND NORTH CENTRAL ENERGY COMPANY

### December 3, 2014

*This Information Statement is being distributed to creditors of Cline Mining Corporation, New Elk Coal Company LLC and North Central Energy Company in respect of meetings called to consider the proposed plan of compromise and arrangement that are scheduled to be held on January 21, 2015, at the offices of Goodmans LLP, located at 333 Bay Street, Suite 3400, Toronto, Ontario.*

***These materials require your immediate attention.  You should consult your legal, financial, tax and other professional advisors in connection with the contents of these documents.***  *If you have any questions regarding voting procedures or other matters or if you wish to obtain additional copies of these materials, you may contact the court-appointed monitor, FTI Consulting Canada Inc., by telephone at (416) 649.8099 (Toronto local) or (855) 398-7390 (toll-free) or by email at cline@fticonsulting.com. Copies of these materials and other materials in the within proceedings are also posted on the following website:http://cfcanada.fticonsulting.com/cline.*

**IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE AND ARRANGEMENT
OF CLINE MINING CORPORATION, NEW ELK COAL COMPANY LLC AND
NORTH CENTRAL ENERGY COMPANY**

**NOTICE OF MEETINGS OF CREDITORS OF
CLINE MINING CORPORATION, NEW ELK COAL COMPANY LLC AND NORTH
CENTRAL ENERGY COMPANY**

**NOTICE IS HEREBY GIVEN** that meetings (the "**Meetings**") of creditors of Cline Mining Corporation ("**Cline**"), New Elk Coal Company LLC ("**New Elk**") and North Central Energy Company ("**North Central**" and, together with Cline and New Elk, the "**Applicants**") entitled to vote on a plan of compromise and arrangement proposed by the Applicants (the "**Plan**") under the *Companies' Creditors Arrangement Act* (the "**CCAA**") will be held for the following purposes:

(1)     to consider and, if deemed advisable, to pass, with or without variation, a resolution to approve the Plan; and

(2)     to transact such other business as may properly come before the Meetings or any adjournment thereof.

The Meetings are being held pursuant to an order of the Ontario Superior Court of Justice (Commercial List) (the "**Court**") dated December 3, 2014 (the "**Meetings Order**"). Capitalized terms used but not defined herein have the meanings ascribed in the Meetings Order.

**NOTICE IS ALSO HEREBY GIVEN** that the Meetings Order established the procedures for the Applicants to call, hold and conduct Meetings of the holders of Claims against the Applicants to consider and pass resolutions, if thought advisable, approving the Plan and to transact such other business as may be properly brought before the Meetings.  For the purpose of voting on and receiving distributions pursuant to the Plan, the holders of Claims against the Applicants will be grouped into three classes, being the Affected Unsecured Creditors Class, the WARN Act Plaintiffs Class and the Secured Noteholders Class.

**NOTICE IS ALSO HEREBY GIVEN** that the Meetings will be held at the following dates, times and location:

Date:        January 21, 2015

Time         10:00 a.m. – WARN Act Plaintiffs Class

             11:00 a.m. – Affected Unsecured Creditors Class

             12:00 p.m. – Secured Noteholders Class

- 2 -

Location:        Goodmans LLP, 333 Bay Street, Suite 3400, Toronto, Ontario

Subject to the Meetings Order, only those creditors with Voting Claims or Disputed Voting Claims (each such creditor an "**Eligible Voting Creditor**") will be eligible to attend the applicable Meetings and to vote on a resolution to approve the Plan. Eligible Voting Creditors are those Creditors: (1) who have received a Notice of Claim from the Monitor in accordance with the Claims Procedure Order dated December 3, 2014 (the "**Claims Procedure Order**"); (2) who have submitted a Proof of Claim in respect of a claim against the Applicants in accordance with the Claims Procedure Order, which claim has not been disallowed in accordance with the Claims Procedure Order; or (3) are holders of the Secured Notes issued by Cline. Secured Noteholders, as defined in the Meetings Order, cannot vote in person and must instead provide voting instructions to Marret Asset Management Inc. ("**Marret**") in accordance with the Meetings Order. The votes of Affected Creditors holding Disputed Voting Claims will be separately tabulated and Disputed Voting Claims will not be counted unless, until and only to the extent that such Disputed Voting Claim is finally determined to be a Voting Claim. A holder of an Unaffected Claim, as defined in the Plan, shall not be entitled to attend or vote at the Meetings in respect of such Unaffected Claim. December 3, 2014 has been set as the record date for holders of Secured Notes to determine entitlement to vote at the Meetings.

An Eligible Voting Creditor who is unable to attend the applicable Meeting may be entitled to vote by proxy, subject to the terms of the Meetings Order. Further, any Eligible Voting Creditor who is not an individual may only attend and vote at the applicable Meeting if a proxyholder has been appointed to act on its behalf at such Meeting. Secured Noteholders must vote by providing instructions to the Marret in accordance with the terms of the Meetings Order.

**NOTICE IS ALSO HEREBY GIVEN** that if the Plan is approved at the Meetings by the required majorities of Creditors and other necessary conditions are met, the Applicants intend to make an application to the Court on January 28, 2015 (the "**Sanction Hearing**") seeking an order sanctioning the Plan pursuant to the CCAA (the "**Sanction Order**"). Any person wishing to oppose the application for the Sanction Order must serve a copy of the materials to be used to oppose the application and setting out the basis for such opposition upon the lawyers for the Applicants, the Monitor, and Marret, as well as those parties listed on the Service List posted on the Monitor's website. Such materials must be served by not later than 5:00pm (Toronto time) on the date that is seven (7) days prior to the Sanction Hearing.

**NOTICE IS ALSO HEREBY GIVEN** that in order for the Plan to become effective:

1. the Plan must be approved by the required majorities of Creditors present and voting on the Plan as required under the CCAA and in accordance with the terms of the Meetings Order and the Plan;

2. the Plan must be sanctioned by the Court; and

3. the conditions to implementation and effectiveness of the Plan as set out in the Plan must be satisfied or waived.

Additional copies of the Information Package, including the Information Statement and the Plan, may be obtained from the Monitor's Website at http://cfcanada.fticonsulting.com/cline or by

- 3 -

contacting the Monitor by telephone at (416) 649-8099 (Toronto local) or (855) 398-7390 (toll free) or by email at cline@fticonsulting.com.

**DATED** at Toronto, Ontario, this 3rd day of December, 2014.

## INFORMATION STATEMENT

### SUMMARY OF PLAN

*This information statement (the "**Information Statement**") provides a summary of certain information contained in the schedules hereto (collectively, the "**Schedules**"), and is provided for the assistance of creditors only. The governing documents are the Plan, which is attached as Schedule "B" to this Information Statement, and the Meetings Order granted by the Court on December 3, 2014 (the "**Meetings Order**"), which is attached as Schedule "C" to this Information Statement.* **This summary is qualified in its entirety by the more detailed information appearing in the Plan, the Meetings Order or that is referred to elsewhere in the Information Statement.** <u>**Creditors should carefully read the Plan and the Meetings Order, and not only this Information Statement.**</u> **In the event of any conflict between the contents of this Information Statement and the provisions of the Plan, the provisions of the Plan govern.**

*Capitalized words and terms not otherwise defined in this Information Statement have the meaning given to those words and terms in the Plan and the Meetings Order.*

**Insolvency Proceedings:**   On December 3, 2014, the Applicants sought and obtained protection from their creditors under the CCAA upon the granting by the Court of the Initial Order. The Monitor, as Court-appointed foreign representative, intends to or has commenced ancillary proceedings under Chapter 15, Title 11 of the United States Code ("**Chapter 15**").

**Claims Procedure:**   On December 3, 2014, the Court granted the Claims Procedures Order, which established the procedure for the calling of Claims and a procedure for the adjudication and resolution of Claims.

A notice to creditors of the call for Claims and the Claims Bar Date will be published in *The Globe and Mail* (National Edition), the *Denver Post* and the *Pueblo Chieftain* following the date of the Claims Procedure Order, and the Monitor will send claims packages to all Known Creditors of the Applicants within five (5) business days of the date of the Claims Procedure Order, all in accordance with the procedures established in the Claims Procedure Order.

The claims resolution process set out in the Claims Procedure Order provides for, *inter alia*: (a) the allowance of the Secured Noteholders Allowed Claim for both voting and distribution purposes; (b) a process for the delivery by the Monitor of Notices of Claims to Known Creditors; (c) a process for the review of Proofs of Claim filed with the Monitor by Unknown Creditors; and (d) a process for the acceptance, revision or dispute, in whole or in part, by the Monitor, of Claims for the purposes of voting and/or distribution under the Plan.

The procedure for determining the validity and quantum of the

- 2 -

Affected Claims for voting and distribution purposes under the Plan will be governed by the Claims Procedure Order, the Meetings Order, the CCAA, the Plan and any further Order of the Court.

**Classification of Creditors:**

The Plan provides for three classes of creditors for the purposes of considering and voting on the Plan: (i) the Affected Unsecured Creditors Class; (ii) the WARN Act Plaintiffs Class; and (ii) the Secured Noteholders Class.

**Meetings:**

Pursuant to the Meetings Order granted by the Court on December 3, 2014, the Meetings have been called for the purposes of having Eligible Voting Creditors consider and vote on the resolution to approve the Plan and transact such other business as may be properly brought before the applicable Meeting.

The WARN Act Plaintiffs Meeting is scheduled to be held at 10:00 a.m. (Toronto time) on January 21, 2015 at Goodmans LLP, 333 Bay Street, Suite 3400, Toronto, Ontario.

The Unsecured Creditors Meeting is scheduled to be held at 11:00 a.m. (Toronto time) on January 21, 2015 at Goodmans LLP, 333 Bay Street, Suite 3400, Toronto, Ontario.

The Secured Noteholders Meeting is scheduled to be held at 12:00 p.m. (Toronto time) on January 21, 2015 at Goodmans LLP, 333 Bay Street, Suite 3400, Toronto, Ontario.

The Meetings will be held in accordance with the Meetings Order and any further Order of the Court. The only Persons entitled to attend each of the Meetings are those specified in the Meetings Order.

Paul Bishop or another representative of the Monitor as designated by the Monitor, will preside as the chair of the Meetings (the "**Chair**") and, subject to the Meetings Order or any further Order of the Court, will decide all matters relating to the conduct of the Meetings. The Chair will direct a vote at each Meeting with respect to: (i) a resolution to approve the Plan and any amendments thereto; and (ii) any other resolutions as the Applicants may consider appropriate. The form of resolution to approve the Plan is attached as Schedule "A" to this Information Statement.

The quorum required at each Meeting has been set by the Meetings Order as one Creditor with a Voting Claim present at such Meeting in person or by proxy. If the requisite quorum is not present at a Meeting, then such Meeting will be adjourned by the Chair to such time and place as the Chair deems necessary or desirable. Notwithstanding the foregoing, if the requisite quorum is not present

- 3 -

at the WARN Act Plaintiffs Meeting or it is determined that there are no Voting Claims in the WARN Act Plaintiffs Class, then the Applicants are permitted, without further Order of the Court, to amend the Plan to combine the WARN Act Plaintiffs Class with the Affected Unsecured Creditors Class on such terms as may be set forth in such amended Plan, in which case the Applicants shall have no further obligation to hold the WARN Act Plaintiffs meeting or otherwise seek a vote of the WARN Act Plaintiffs Class with respect to the resolution to approve the Plan or any other matter.

**Entitlement to Vote:**  The only Persons entitled to vote at the Unsecured Creditors Meeting in person or by proxy are Affected Unsecured Creditors; the only Persons entitled to vote at the WARN Act Plaintiffs Meeting in person or by proxy are WARN Act Plaintiffs; and the only Persons entitled to vote at the Secured Noteholders Meeting in person or by proxy are Secured Noteholders.

With respect to votes to be cast at any Meetings by a Secured Noteholder, it is the beneficial holder of the Secured Notes who is entitled to cast such votes as an Eligible Voting Creditor. Each beneficial Secured Noteholder that casts a vote at the Meetings in accordance with the Meetings Order will be counted as an individual Creditor for each Voting Class in which it casts such vote.

*Unsecured Creditors Meeting*  For the purposes of voting at the Unsecured Creditors Meeting, (i) each Affected Unsecured Creditor (including a beneficial Secured Noteholder with respect to its Secured Noteholder's Pro-Rata Share of the Secured Noteholders Allowed Unsecured Claim) will be entitled to one vote as a member of the Affected Unsecured Creditors Class; (ii) the Voting Claim of any Affected Unsecured Creditor (not including a Secured Noteholder) will be deemed equal to the extent of his, her or its Voting Claim; (iii) the unsecured Voting Claim of any Secured Noteholder will be deemed to be equal to its Secured Noteholder's Share of the Secured Noteholders Allowed Unsecured Claim (as defined and determined in accordance with the Claims Procedure Order and the Plan); and (iv) certain Affected Unsecured Creditors with Claims of $10,000 or less will be deemed to vote in favour of the Plan unless they notify the Monitor in writing that they wish to vote against the Plan and do vote against the Plan at the Unsecured Creditors Meeting.

*WARN Act Plaintiffs Meeting*  For the purposes of voting at the WARN Act Plaintiffs Meeting, (i) each WARN Act Plaintiff will be entitled to one vote as a member of the WARN Act Plaintiffs Class; and (ii) each vote of a WARN Act Plaintiff will be deemed equal to such WARN Act Plaintiff's Voting Claim.

- 4 -

| | |
|---|---|
| *Secured Noteholders Meeting* | For purposes of voting at the Secured Noteholders Meeting, (i) each Secured Noteholder (including a beneficial Secured Noteholder with respect to its Secured Noteholder's Allowed Secured Claim) will be entitled to one vote as a member of the Secured Noteholders Class; (ii) the secured Voting Claim of any Secured Noteholder (not including a Secured Noteholder with respect to its Secured Noteholder's Allowed Unsecured Claim) will be deemed equal to the extent of its Secured Noteholder's Pro-Rata Share of the Secured Noteholders Allowed Secured Claim (as defined determined in accordance with the Claims Procedure Order and the Plan). |
| *Disputed Voting Claims* | Each Affected Unsecured Creditor, WARN Act Plaintiff or Secured Noteholder that holds a Disputed Voting Claim as at the date of the Unsecured Creditors Meeting, the WARN Act Plaintiffs Meeting or the Secured Noteholders Meeting, as applicable, may attend the Unsecured Creditors Meeting, the WARN Act Plaintiffs Meeting or the Secured Noteholders Meeting, as applicable, and such Disputed Voting Claim may be voted at such Meeting by such Creditor (or its duly appointed proxyholder) in accordance with the provisions of the Meetings Order, without prejudice to the rights of the Applicants, the Monitor or the holder of the Disputed Voting Claim with respect to the final determination of the Disputed Claim for distribution purposes. Any vote cast in respect of any Disputed Voting Claim will be separately tabulated as provided in the Meetings Order, provided that any such vote cast in respect of any Disputed Voting Claim will not be counted for any purpose, unless, until and only to the extent that such Disputed Voting Claim is finally determined to be a Voting Claim. |
| | The Monitor will keep a separate tabulation of votes cast in respect of Voting Claims and Disputed Voting Claims, if applicable. |
| *Unaffected Claims and Equity Claims* | Persons holding Unaffected Claims are not entitled to vote on the Plan at a Meeting in respect of such Unaffected Claim and, except as otherwise permitted in the Meetings Order, will not be entitled to attend a Meeting. |
| | Any Person with a Claim that meets the definition of "equity claim" under section 2(1) of the CCAA will have no right to, and will not, vote at the Meetings. |
| **Appointment of Proxyholders and Voting:** | An Eligible Voting Creditor that is not an individual may only attend and vote at a Meeting if it has appointed a proxyholder to attend and act on its behalf at such Meeting. |
| | All proxies submitted in respect of the Unsecured Creditors Meeting or the WARN Act Plaintiffs Meeting must be: (i) submitted by 5:00 pm at least one (1) Business Day prior to the Unsecured Creditors |

- 5 -

Meeting or the WARN Act Plaintiffs Meeting, as applicable; and (ii) in substantially the form of the Creditors Proxy attached to the Meetings Order, or in such other form acceptable to the Monitor or the Chair.

Class Action Counsel in respect of the WARN Act Class Action shall be permitted to cast votes at the WARN Act Plaintiffs Meeting only on behalf of those WARN Act Plaintiffs who have duly appointed Class Action Counsel as their proxy in accordance with the Meetings Order.

Secured Noteholders who wish to vote at the Secured Noteholders Meeting and/or the Unsecured Creditors Meeting must provide instructions to Marret with respect to their position with respect to such votes, and Marret must submit to the Monitor, to be received by the Monitor no later than the Business Day before the Meetings, a Master Voting List setting out the voting position of the beneficial Secured Noteholders and other prescribed information, in accordance with the Meetings Order. Once the Monitor has received the Master Voting List from Marret, the Monitor will record the votes for each applicable beneficial Secured Noteholder in accordance with the Master Voting List.

**Purpose of the Plan:**   The purpose of the Plan is: (i) to implement a recapitalization of the Applicants, which will significantly reduce their indebtedness; (ii) to provide for a settlement of, and consideration for, all Allowed Affected Claims; (iii) to effect a release and discharge of all Affected Claims and Released Claims; and (iv) to ensure the continuation of the Applicants, in the expectation that the Persons with an economic interest in the Applicants, when considered as a whole, will derive a greater benefit from the implementation of the Plan than would result from a bankruptcy of the Applicants.

**Treatment of Affected Claims:**   The Plan provides for a full and final release and discharge of the Affected Claims and Released Claims, a settlement of, and consideration for, all Allowed Affected Claims and a recapitalization of the Applicants. Generally, the Plan provides for treatment of Affected Claims as follows:

*Secured Noteholders Class*   The aggregate of all amounts owing directly by Cline under the 2011 Indenture and the 2013 Indenture and the guarantees executed by New Elk and North Central in respect of the Secured Notes (including, in each case, principal and accrued interest thereon) up to the Filing Date have been determined to be $110,173,897 (the **"Secured Noteholders Allowed Claim"**). For both voting and distribution purposes, the Secured Noteholders Allowed Claim will be apportioned as follows: (i) $92,673,897 will be treated as secured

- 6 -

Claims against the Applicants (collectively the "**Secured Noteholders Allowed Secured Claim**"); and (ii) the balance of the Secured Noteholders Allowed Claim, being $17,500,000, will be treated as unsecured Claims against the Applicants (collectively the "**Secured Noteholders Allowed Unsecured Claim**"). The Claims comprising the Secured Noteholders Allowed Secured Claim and the Secured Noteholders Allowed Unsecured Claim will constitute Voting Claims and Distribution Claims for the purpose of voting on and receiving distributions, if applicable, pursuant to the Plan.

Each Secured Noteholder will receive its Secured Noteholder's Share of the New Cline Common Shares issued and outstanding on the Plan Implementation Date and the New Secured Debt (the terms of which are summarized in the Plan). The Claims comprising the Secured Noteholders Allowed Claim and the Secured Note Obligations will be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred on the Plan Implementation Date.

*Affected Unsecured Creditors Class*

Each Affected Unsecured Creditor with an Allowed Affected Unsecured Claim, with the exception of those Affected Unsecured Creditors with Allowed Affected Unsecured Claims of not more than $10,000, will receive its Individual Unsecured Plan Entitlement, being its pro rata portion of the $225,000 in Unsecured Plan Entitlement Proceeds payable on the Unsecured Plan Entitlement Date. All Affected Unsecured Claims will be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred on the Plan Implementation Date. The Secured Noteholders will be deemed to waive any entitlement to the Unsecured Plan Entitlement Proceeds, and the amount of such proceeds that would otherwise be payable to them will be available for distribution to all other Affected Unsecured Creditors with Allowed Affected Unsecured Claims.

Affected Unsecured Creditors with Allowed Affected Unsecured Claims of not more than $10,000 will be paid in cash for the full value of their Allowed Affected Unsecured Claim and such Affected Unsecured Creditors will be deemed to vote in favour of the Plan unless they indicate to the Monitor in writing that they intend to vote against the Plan and do vote against the Plan at the Unsecured Creditors Meeting.

*WARN Act Plaintiffs Class*

Each WARN Act Plaintiff with an Allowed WARN Act Claim will receive its Individual WARN Act Plan Entitlement, being its pro rata portion of the $100,000 in WARN Act Plan Entitlement Proceeds payable on the WARN Act Plan Entitlement Date. All WARN Act Claims will be fully, finally, irrevocably and forever compromised,

- 7 -

released, discharged, cancelled and barred on the Plan Implementation Date.

| | |
|---|---|
| *Equity Claimants* | Equity Claimants will not receive any consideration or distributions under the Plan in respect of their Equity Claims. All Equity Claims will be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred on the Plan Implementation Date. All Equity Interests will be cancelled and extinguished on the Plan Implementation Date (provided that the New Elk Shares will not be cancelled and will remain the property of Cline and the North Central Shares will not be cancelled and will remain the property of New Elk). |
| *Disputed Distribution Claims* | Any Affected Creditor with a Disputed Distribution Claim will not be entitled to receive any distribution under the Plan with respect to such Disputed Distribution Claim unless and until such Claim becomes an Allowed Affected Claim. A Disputed Distribution Claim will be resolved in the manner set out in the Claims Procedure Order. Distributions pursuant to the Plan will be paid in respect of any Disputed Distribution Claim that is finally determined to be an Allowed Affected Claim in accordance with the Claims Procedure Order. |
| **Treatment of Unaffected Claims:** | The Plan does not affect the Unaffected Creditors and Unaffected Creditors will not receive any consideration or distributions under the Plan in respect of their Unaffected Claims (except to the extent their Unaffected Claims are paid in full on the Plan Implementation Date in accordance with the express terms of the Plan). |
| | Unaffected Claims are any (i) Claims secured by any of the Charges; (ii) Insured Claims; (iii) Intercompany Claims; (iv) Post-Filing Trade Payables; (v) Unaffected Secured Claims; (vi) Claims by Unaffected Trade Creditors arising from Unaffected Trade Claims; (vii) Claims that are not permitted to be compromised pursuant to Section 19(2) of the CCAA; (viii) Employee Priority Claims; and (ix) Government Priority Claims. |
| | Insured Claims shall not be compromised, released, discharged, cancelled or barred by the Plan, provided that from and after the Plan Implementation Date, any Person having an Insured Claim shall be irrevocably limited to recovery in respect of such Insured Claim solely from the proceeds of the applicable Insurance Policies, and Persons with any Insured Claims shall have no right to, and shall not, make any claim or seek any recoveries from any of the Applicants or any Released Party, other than enforcing such Person's rights to be paid by the applicable insurer(s) from the proceeds of the |

- 8 -

applicable Insurance Policies.

The Applicants may satisfy any Unaffected Secured Claims by returning the applicable property of the Applicants that is secured as collateral for such Claims, in which case the Unaffected Secured Claim shall be deemed to be fully satisfied, provided that if the applicable Unaffected Secured Creditor asserts that there is a deficiency in the value of the applicable collateral relative the value of the Unaffected Secured Claim, such Creditor shall be permitted to file a Proof of Claim in respect of such unsecured deficiency Claim and such unsecured deficiency Claim shall be treated as an Affected Unsecured Claim for the purpose of the Plan, the Meetings Order and all related matters.

Nothing in the Plan will affect the Applicants' rights and defences, both legal and equitable, with respect to any Unaffected Claims including all rights with respect to legal and equitable defences or entitlements to set-offs or recoupments against such Unaffected Claims.

**Treatment of Director/Officer Claims:**

All Released Director/Officer Claims will be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred without consideration on the Plan Implementation Date. Any Director/Officer Claim that is not a Released Director/Officer Claim will not be compromised, released, discharged, cancelled and barred. For greater certainty, any Claim of a Director or Officer for indemnification from the Applicants in respect of any Director/Officer Claim that is not otherwise covered by the Directors' Charge shall be treated for all purposes under this Plan as an Affected Unsecured Claim.

**Releases:**

On the Plan Implementation Date, (i) the Applicants, the Applicants' employees and contractors, the Directors and Officers, the Cline Companies and (ii) the Monitor, the Monitor's counsel, the Indenture Trustee, Marret (on behalf of the Secured Noteholders and in its individual corporate capacity), the Secured Noteholders, the Company Advisors, the Noteholder Advisors and each and every present and former shareholder, affiliate, subsidiary, director, officer, member, partner, employee, auditor, financial advisor, legal counsel and agent of any of the foregoing Persons (the Persons named in (i) or (ii) being the "**Released Parties**") shall be released and discharged from any and all claims based in whole or in part on any act, omission, transaction, duty, responsibility, indebtedness, liability, obligation, dealing or other occurrence existing or taking place on or prior to the later of the Plan Implementation Date and the date on which actions are taken to implement the Plan, that constitute or are in any way relating to, arising out of or in

- 9 -

connection with any Claims, any Director/Officer Claims and any indemnification obligations with respect thereto, the Secured Notes and related guarantees, the Secured Note Indentures, the Secured Note Obligations, the Equity Interests, the Stock Option Plans, the New Cline Common Shares, the New Secured Debt, the New Credit Agreement, the Unsecured Plan Entitlement, the WARN Act Plan Entitlement, any payments to Convenience Creditors, the business and affairs of the Applicants, the administration and/or management of the Applicants, the Recapitalization, the Plan, the CCAA Proceeding, the Chapter 15 Proceeding or any document, instrument, matter or transaction involving any of the Applicants or the Cline Companies taking place in connection with the Recapitalization or the Plan (referred to collectively as the "**Released Claims**"), and all Released Claims shall be fully, finally, irrevocably and forever waived, discharged, released, cancelled and barred as against the Released Parties, all to the fullest extent permitted by Applicable Law; provided that nothing in the Plan will waive, discharge, release, cancel or bar (x) the right to enforce the Applicants' obligations under the Plan, (y) the Applicants from or in respect of any Unaffected Claim or any Claim that is not permitted to be released pursuant to section 19(2) of the CCAA, or (z) any Director or Officer from any Director/Officer Claim that is not permitted to be released pursuant to section 5.1(2) of the CCAA.

*(The foregoing is an abridged summary of the releases contained in the Plan. Creditors should refer to the specific provisions of the Plan for the full scope of the releases provided for therein.)*

**Creditor Approval of Plan:**

In order for the Plan to be approved pursuant to the CCAA, the Plan must be approved by a majority in number of Affected Creditors representing at least two thirds in value of the Voting Claims of Affected Creditors, in each case present and voting in person or by proxy on the resolution approving the Plan at the applicable Meeting in each Voting Class. If such approvals are obtained, in order to make the Plan effective, the Sanction Order must be obtained.

**Court Approval of Plan:**

If the Plan is accepted by the Required Majorities, the Applicants will apply for the Sanction Order on January 28, 2015, or as soon thereafter as the matter can be heard (the "**Sanction Hearing**") at the Court at 330 University Avenue, Toronto, Ontario, Canada.

Any Person who wishes to oppose the motion for the Sanction Order must serve upon the lawyers for each of the Applicants, the Monitor, Marret and upon all parties on the Service List, and file with the Court, a copy of the materials to be used to oppose the motion for the Sanction Order by no later than 5:00 p.m. (Toronto time) on the date that is seven (7) days prior to the Sanction Hearing. ***Creditors***

- 10 -

*should consult with their legal advisors with respect to the legal rights available to them in relation to the Plan and the Sanction Hearing.* In the event that the Sanction Hearing is adjourned, only those Persons who are listed on the Service List will be served with notice of the adjourned date of the Sanction Hearing.

**Conditions to Implementation of the Plan:**

The implementation of the Plan is conditional upon satisfaction of, among others, the following conditions prior to or at the Effective Time:

    (a)    all definitive agreements in respect of the Recapitalization shall be in a form satisfactory to the Applicants and Marret (on behalf of the Secured Noteholders);

    (b)    the Plan shall have been approved by the Required Majorities of each Voting Class;

    (c)    all orders made and judgments rendered by any competent court of law, and all rulings and decrees of any competent regulatory body, agent or official in relation to the CCAA Proceeding, the Chapter 15 Proceeding, the Recapitalization or the Plan shall be satisfactory to the Applicants, including all court orders made in relation to the Recapitalization;

    (d)    all Material filings under Applicable Laws shall have been made and any material regulatory consents or approvals that are required in connection with the Recapitalization shall have been obtained and, in the case of waiting or suspensory periods, such waiting or suspensory periods shall have expired or been terminated;

    (e)    all securities of the Applicants, when issued and delivered, shall be duly authorized, validly issued and fully paid and non-assessable and the issuance thereof shall be exempt from all prospectus and registration requirements of Applicable Laws;

    (f)    the Sanction Order shall have been made on terms acceptable to the Applicants, and it shall have become a Final Order;

    (g)    the Sanction Order shall have been recognized and deemed binding and enforceable in the United States pursuant to an Order of the US Court in the Chapter 15 Proceeding on terms acceptable to the Applicants,

- 11 -

and such Order shall have become a Final Order; and

(h)    any other Order deemed necessary by the Applicants for the purpose of implementing the Recapitalization shall have been made on terms acceptable to the Applicants, and any such Order shall have become a Final Order.

*(The foregoing is an abridged summary of certain of the conditions precedent to the implementation of the Plan. A comprehensive list of conditions precedent is provided in Section 9.1 of the Plan.)*

**Plan Amendment:**    The Plan provides that, if the Plan is not approved by the Required Majorities of the Affected Unsecured Creditors Class or the WARN Act Plaintiffs Class, or the Applicants determine that the approval of either of such classes is not forthcoming, the Applicants are permitted, without any further Court order, to file an amended and restated Plan (the "**Alternate Plan**") with the attributes listed on Schedule "B" to the Plan. The Alternate Plan would thereafter be considered and voted on only by the Secured Noteholders Class and the Applicants would have no obligation to proceed with the Affected Unsecured Creditors Meeting or the WARN Act Plaintiffs Meeting. In addition, if the requisite quorum is not present at the WARN Act Plaintiffs Meeting or if it is determined in accordance with the Claims Procedure Order that there are no Voting Claims in the WARN Act Plaintiffs Class, the Applicants shall be entitled, but not required, to amend the Plan without further Order of the Court to combine the WARN Act Plaintiffs Class with the Affected Unsecured Creditors Class on such terms as may be set forth in such amended Plan, in which case the Applicants shall have no further obligation to hold the WARN Act Plaintiffs Meeting and the WARN Act Plan Entitlement shall not be payable pursuant to the Plan.

**Timing of Plan Implementation:**    It is anticipated that the Plan will be implemented in accordance with the following timetable:

| | |
|---|---|
| January 21, 2015 | Meetings to vote on the Plan |
| January 28, 2015 | Sanction Order |
| Within approximately 30 days of the Sanction Order | Plan Implementation |

- 12 -

| | |
|---|---|
| **Monitor:** | The Monitor supports the Applicants' request to convene the Meetings to consider and vote on the Plan. |
| **Recommendations of the Board of Directors:** | The Boards of Directors of the Applicants recommend that the Affected Creditors vote for the resolution to approve the Plan. |
| **Support of Secured Noteholders:** | Marret, which exercises sole investment discretion and authority over the Secured Noteholders, has entered into a Support Agreement with Cline, pursuant to which it has agreed to support the Recapitalization and to vote in favour of the Plan on behalf of the Secured Noteholders. |

**SCHEDULE "A"**
**TO THE INFORMATION STATEMENT**

**FORM OF PLAN RESOLUTION**

**CLINE MINING CORPORATION, NEW ELK COAL COMPANY LLC AND NORTH CENTRAL ENERGY COMPANY**

**Plan of Compromise and Arrangement**
**pursuant to the *Companies' Creditors Arrangement Act***

**BE IT RESOLVED THAT:**

1.   the Plan of Compromise and Arrangement of Cline Mining Corporation, New Elk Coal Company LLC and North Central Energy Company pursuant to the *Companies' Creditors Arrangement Act* (Canada) is hereby authorized and approved.

SCHEDULE "B"
TO THE INFORMATION STATEMENT

PLAN OF COMPROMISE AND ARRANGEMENT

Court File No. CV-14-10781-00CL

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
CLINE MINING CORPORATION, NEW ELK COAL COMPANY LLC AND
NORTH CENTRAL ENERGY COMPANY

APPLICANTS

PLAN OF COMPROMISE AND ARRANGEMENT
pursuant to the *Companies' Creditors Arrangement Act*
concerning, affecting and involving

CLINE MINING CORPORATION,
NEW ELK COAL COMPANY LLC and
NORTH CENTRAL ENERGY COMPANY

December 3, 2014

# TABLE OF CONTENTS

ARTICLE 1 INTERPRETATION ................................................................................................1
1.1     Definitions ...........................................................................................................1
1.2     Certain Rules of Interpretation ..........................................................................15
1.3     Successors and Assigns ......................................................................................16
1.4     Governing Law ...................................................................................................16
1.5     Schedules ............................................................................................................16

ARTICLE 2 PURPOSE AND EFFECT OF THE PLAN .........................................................17
2.1     Purpose ................................................................................................................17
2.2     Persons Affected .................................................................................................17
2.3     Persons Not Affected ..........................................................................................17

ARTICLE 3 CLASSIFICATION AND TREATMENT OF CREDITORS AND RELATED
MATTERS .................................................................................................................................17
3.1     Claims Procedure ................................................................................................17
3.2     Classification of Creditors ..................................................................................18
3.3     Creditors' Meetings ............................................................................................18
3.4     Treatment of Affected Claims ............................................................................18
3.5     Unaffected Claims ..............................................................................................19
3.6     Disputed Distribution Claims .............................................................................20
3.7     Director/Officer Claims ......................................................................................21
3.8     Extinguishment of Claims ...................................................................................21
3.9     Guarantees and Similar Covenants ....................................................................21
3.10    Set-Off 21

ARTICLE 4 PROVISIONS REGARDING DISTRIBUTIONS AND PAYMENTS ..................22
4.1     Distributions of New Cline Common Shares and New Secured Debt ................22
4.2     Distribution Mechanics with respect to the Unsecured Plan Entitlement ..........22
4.3     Distribution Mechanics with respect to Convenience Claims ............................23
4.4     Distribution Mechanics with respect to the WARN Act Plan Entitlement ........23
4.5     Modifications to Distribution Mechanics ...........................................................24
4.6     Cancellation of Certificates and Notes ...............................................................24
4.7     Currency ..............................................................................................................24
4.8     Interest 25
4.9     Allocation of Distributions .................................................................................25
4.10    Treatment of Undeliverable Distributions ..........................................................25
4.11    Withholding Rights .............................................................................................25
4.12    Fractional Interests ..............................................................................................26
4.13    Calculations ........................................................................................................26

ARTICLE 5 RECAPITALIZATION ........................................................................................26
5.1     Corporate Actions ...............................................................................................26
5.2     Issuance of Plan Consideration ..........................................................................26
5.3     Sequence of Plan Implementation Date Transactions ........................................27
5.4     Issuances Free and Clear .....................................................................................29
5.5     Stated Capital ......................................................................................................29

ARTICLE 6 PROCEDURE FOR DISTRIBUTIONS REGARDING DISPUTED
DISTRIBUTION CLAIMS ................................................................................29
6.1    No Distribution Pending Allowance...........................................................29
6.2    Disputed Distribution Claims ....................................................................29

ARTICLE 7 RELEASES .................................................................................31
7.1    Plan Releases .............................................................................................31
7.2    Limitation on Insured Claims .....................................................................32
7.3    Injunctions..................................................................................................32

ARTICLE 8 COURT SANCTION....................................................................33
8.1    Application for Sanction Order...................................................................33
8.2    Sanction Order ...........................................................................................33

ARTICLE 9 CONDITIONS PRECEDENT AND IMPLEMENTATION...............35
9.1    Conditions Precedent to Implementation of the Plan ................................35
9.2    Monitor's Certificate...................................................................................36

ARTICLE 10 GENERAL ................................................................................37
10.1   Binding Effect .............................................................................................37
10.2   Waiver of Defaults ......................................................................................37
10.3   Deeming Provisions ...................................................................................37
10.4   Non-Consummation....................................................................................38
10.5   Modification of the Plan .............................................................................38
10.6   Marret and the Secured Noteholders.........................................................39
10.7   Paramountcy ..............................................................................................39
10.8   Severability of Plan Provisions..................................................................40
10.9   Responsibilities of the Monitor..................................................................40
10.10  Different Capacities ...................................................................................40
10.11  Notices .......................................................................................................40
10.12  Further Assurances....................................................................................42

PLAN OF
COMPROMISE AND ARRANGEMENT

**WHEREAS** Cline Mining Corporation ("**Cline**"), New Elk Coal Company LLC ("**New Elk**") and North Central Energy Company ("**North Central**" and together with Cline and New Elk, the "**Applicants**") are debtor companies under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**");

**AND WHEREAS** the Applicants have obtained an order (as may be amended, restated or varied from time to time, the "**Initial Order**") of the Ontario Superior Court of Justice (the "**Court**") under the CCAA (the date of such Initial Order being the "**Filing Date**");

**AND WHEREAS** Marret Asset Management Inc. ("**Marret**") exercises sole investment discretion and control over all of the beneficial holders of (i) the $71,381,900 million aggregate principal amount of 10% senior secured notes due June 15, 2014 issued by Cline pursuant to the indenture dated December 13, 2011, as amended (the "**2011 Notes**") and (ii) the $12,340,998 aggregate principal amount of 10% senior secured notes due June 15, 2014 issued by Cline pursuant to the indenture dated July 8, 2013, as amended (the "**2013 Notes**", and collectively with the 2011 Notes, the "**Secured Notes**");

**AND WHEREAS** the Applicants have developed a recapitalization transaction (the "**Recapitalization**") as set forth herein, and Marret (on behalf of all of the beneficial holders of the Secured Notes) has agreed to support the terms of the Recapitalization;

**AND WHEREAS** the Applicants file this consolidated plan of compromise and arrangement with the Court pursuant to the CCAA and hereby propose and present the plan of compromise and arrangement to the Secured Noteholders Class, the Affected Unsecured Creditors Class and the WARN Act Plaintiffs Class (each as defined below) under and pursuant to the CCAA.

## ARTICLE 1
## INTERPRETATION

### 1.1    Definitions

In the Plan, unless otherwise stated or unless the subject matter or context otherwise requires:

"**2011 Indenture**" means the note indenture dated December 13, 2011 that was entered into between Cline, Marret and the 2011 Trustee in connection with the issuance of the 2011 Notes, as amended from time to time.

"**2011 Noteholders**" means the holders of the 2011 Notes, and "**2011 Noteholder**" means any one of them.

"**2011 Trustee**" means the Indenture Trustee, Computershare Trust Company of Canada, specifically in its capacity as trustee in respect of the 2011 Secured Notes under the 2011 Indenture.

- 2 -

"**2013 Indenture**" means the note indenture dated July 8, 2013 that was entered into between Cline, Marret and the 2013 Trustee in connection with the issuance of the 2013 Notes, as amended from time to time.

"**2013 Noteholders**" means the holders of the 2013 Notes, and "**2013 Noteholder**" means any one of them.

"**2013 Trustee**" means the Indenture Trustee, Computershare Trust Company of Canada, specifically in its capacity as trustee in respect of the 2013 Secured Notes under the 2013 Indenture.

"**Affected Claim**" means any Claim that is not an Unaffected Claim, and, for greater certainty, includes any Secured Noteholder Claim, Affected Unsecured Claim, WARN Act Claim and Equity Claim.

"**Affected Creditor**" means any Creditor with an Affected Claim, but only with respect to and to the extent of such Affected Claim.

"**Affected Unsecured Claims**" means all Claims against one or more of the Applicants that are not secured by a valid security interest over assets or property of the Applicants and that are not (i) Unaffected Claims, (ii) the Claims comprising the Secured Noteholders Allowed Secured Claim, (iii) WARN Act Claims or (iv) Equity Claims; and, for greater certainty, the Affected Unsecured Claims shall include the Secured Noteholders Allowed Unsecured Claim, the Marret Unsecured Claim and any portion of any other Affected Claim that is secured but in respect of which there is a deficiency in the realizable value of the security held in respect of such Claim relative to the amount of such Claim.

"**Affected Unsecured Creditor**" means any holder of an Affected Unsecured Claim, but only with respect to and to the extent of such Affected Unsecured Claim.

"**Affected Unsecured Creditors Class**" means the class of Affected Unsecured Creditors entitled to vote on the Plan at the Unsecured Creditors Meeting in accordance with the terms of the Meetings Order.

"**Agreed Number**" means, with respect to the New Cline Common Shares, that number of New Cline Common Shares to be issued on the Plan Implementation Date pursuant to the Plan as agreed to by the Applicants, the Monitor and Marret (on behalf of the Secured Noteholders).

"**Allowed**" means, with respect to a Claim, any Claim or any portion thereof that has been finally allowed as a Distribution Claim (as defined in the Claims Procedure Order) for purposes of receiving distributions under the Plan in accordance with the Claims Procedure Order or a Final Order of the Court.

"**Applicable Law**" means any law, statute, order, decree, judgment, rule regulation, ordinance or other pronouncement having the effect of law whether in Canada, the United States or any other country, or any domestic or foreign state, county, province, city or other political subdivision of any Governmental Entity.

"**Articles**" means the articles and/or the notice of articles of Cline, as applicable.

- 3 -

"**Assessments**" has the meaning ascribed thereto in the Claims Procedure Order.

"**BCBCA**" means the *Business Corporations Act* (British Columbia), as amended.

"**Business Day**" means a day, other than Saturday, Sunday or a statutory holiday, on which banks are generally open for business in Toronto, Ontario and New York, New York.

"**Canadian Tax Act**" means the *Income Tax Act* (Canada), as amended.

"**CCAA**" has the meaning ascribed thereto in the recitals.

"**CCAA Proceeding**" means the proceeding commenced by the Applicants pursuant to the CCAA.

"**CDS**" means CDS Clearing and Depositary Services Inc. or any successor thereof.

"**CDS Participants**" means CDS participant holders of the 2011 Notes and the 2013 Notes.

"**Chapter 15**" means Chapter 15, Title 11 of the United States Code.

"**Chapter 15 Proceeding**" means the proceeding to be commenced by the foreign representative of the Applicants pursuant to Chapter 15.

"**Charges**" means the Administration Charge and the Directors' Charge, each as defined in the Initial Order.

"**Claim**" means:

> (a)     any right or claim of any Person against any of the Applicants, whether or not asserted, in connection with any indebtedness, liability or obligation of any kind whatsoever of any such Applicant in existence on the Filing Date, and costs payable in respect thereof to and including the Filing Date, whether or not such right or claim is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, perfected, unperfected, present, future, known, or unknown, by guarantee, surety or otherwise, and whether or not such right is executory or anticipatory in nature, including any Assessment and any right or ability of any Person to advance a claim for contribution or indemnity or otherwise with respect to any matter, action, cause or chose in action, whether existing at present or commenced in the future, which indebtedness, liability or obligation is based in whole or in part on facts which existed prior to the Filing Date and any other claims that would have been claims provable in bankruptcy had such Applicant become bankrupt on the Filing Date, including for greater certainty any Equity Claim and any claim against any of the Applicants for indemnification by any Director or Officer in respect of a Director/Officer Claim (but excluding any such claim for indemnification that is covered by the Directors' Charge (as defined in the Initial Order)); and

- 4 -

(b)    any right or claim of any Person against any of the Applicants in connection with any indebtedness, liability or obligation of any kind whatsoever owed by any such Applicant to such Person arising out of the restructuring, disclaimer, resiliation, termination or breach by such Applicant on or after the Filing Date of any contract, lease or other agreement whether written or oral and includes any other right or claim that is to be treated as a Restructuring Period Claim under the Plan,

provided that, for greater certainty, the definition of "Claim" herein shall not include any Director/Officer Claim.

"**Claims Bar Date**" has the meaning ascribed thereto in the Claims Procedure Order.

"**Claims Procedure Order**" means the Order under the CCAA establishing a claims procedure in respect of the Applicants, as same may be further amended, restated or varied from time to time.

"**Cline Common Shares**" means the common shares in the capital of Cline designated as Common Shares in the Notice of Articles of Cline.

"**Cline Companies**" means Cline, New Elk, North Central Energy Company, Raton Basin Analytical, LLC.

"**Company Advisors**" means Goodmans LLP, Moelis & Company and Aab & Botts, LLC.

"**Consolidation Ratio**" means, with respect to the Cline Common Shares, the ratio by which Cline Common Shares outstanding on the Plan Implementation Date at the relevant time (including, for the avoidance of doubt, any Cline Common Shares that are Existing Cline Shares and any Cline Common Shares that are New Cline Common Shares issued pursuant to the Plan) are consolidated pursuant to the Plan, as agreed by the Applicants, the Monitor and Marret (on behalf of the Secured Noteholders).

"**Convenience Claim**" means any Affected Unsecured Claim that is not more than $10,000, provided that (i) no Claims of the Secured Noteholders shall constitute Convenience Claims; (ii) Creditors shall not be entitled to divide a Claim for the purpose of qualifying such Claim as a Convenience Claim; (iii) no Restructuring Period Claim referred to in section 3.5(d)(i) shall constitute a Convenience Claim, and (iv) for greater certainty, none of the WARN Act Claims shall constitute Convenience Claims.

"**Convenience Creditor**" means an Affected Unsecured Creditor having a Convenience Claim.

"**Court**" has the meaning ascribed thereto in the recitals.

"**Creditor**" means any Person having a Claim, but only with respect to and to the extent of such Claim, including the transferee or assignee of a transferred Claim that is recognized as a Creditor in accordance with the Claims Procedure Order or a trustee, executor, liquidator, receiver, receiver and manager, or other Person acting on behalf of or through such Person.

"**Directors**" means all current and former directors (or their estates) of the Applicants, in such capacity, and "**Director**" means any one of them.

- 5 -

"**Director/Officer Claim**" means any right or claim of any Person against one or more of the Directors and/or Officers howsoever arising, whether or not such right or claim is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, perfected, unperfected, present, future, known, or unknown, by guarantee, surety or otherwise, and whether or not such right is executory or anticipatory in nature, including the right or ability of any Person to advance a claim for contribution or indemnity or otherwise with respect to any matter, action, cause or chose in action, whether existing at present or commenced in the future, including any right of contribution or indemnity, for which any Director or Officer is alleged to be, by statute or otherwise by law or equity, liable to pay in his or her capacity as a Director or Officer.

"**Disputed Distribution Claim**" means an Affected Unsecured Claim or a WARN Act Claim (including a contingent Affected Unsecured Claim or WARN Act Claim that crystallizes upon the occurrence of an event or events occurring after the Filing Date) or such portion thereof that has not been Allowed, which is validly disputed for distribution purposes in accordance with the Claims Procedure Order and that remains subject to adjudication for distribution purposes in accordance with the Claims Procedure Order.

"**Disputed Distribution Claims Reserve**" means the reserve, if any, to be established by Cline, which shall be comprised of the following:

    (a)    in respect of Affected Unsecured Claims that are Disputed Distribution Claims and are not Convenience Claims, an amount reserved on the Unsecured Plan Entitlement Date equal to the Unsecured Plan Entitlement Proceeds that would have been paid in respect of such Disputed Distribution Claims on the Unsecured Plan Entitlement Date if such Disputed Distribution Claims had been Allowed Claims as of the Promissory Note Maturity Date

    (b)    in respect of Affected Unsecured Claims that are Disputed Distribution Claims and that are Convenience Claims, an amount reserved on the Plan Implementation Date equal to the amount that would have been paid in respect of such Disputed Distribution Claims on the Plan Implementation Date if such Disputed Distribution Claims had been Allowed Claims as of the Plan Implementation Date, and

    (c)    in respect of WARN Act Claims that are Disputed Distribution Claims, an amount reserved on the WARN Act Plan Entitlement Date equal to the WARN Act Plan Entitlement Proceeds that would have been paid in respect of such Disputed Distribution Claims on the WARN Act Plan Entitlement Date if such Disputed Distribution Claims had been Allowed Claims as of the WARN Act Plan Entitlement Date.

"**Distribution Date**" means the date or dates from time to time set in accordance with the provisions of the Plan to effect distributions in respect of the Allowed Claims, excluding the Initial Distribution Date, and (i) in the case of distributions of Unsecured Plan Entitlement Proceeds, means the Unsecured Plan Entitlement Date or such later date from time to time established in accordance with the provisions of the Plan if any Affected Unsecured Claim is a Disputed Distribution Claim on the Unsecured Plan Entitlement Date; and (ii) in the case of

- 6 -

distributions of WARN Act Plan Entitlement Proceeds, means the WARN Act Plan Entitlement Date or such later date from time to time established in accordance with the provisions of the Plan if any WARN Act Claim is a Disputed Distribution Claim on the WARN Act Plan Entitlement Date.

"**Effective Time**" means 12:01 a.m. (Toronto time) on the Plan Implementation Date or such other time on such date as the Applicants may determine.

"**Employee Priority Claims**" means the following Claims of Employees and former employees of the Applicants:

(a) Claims equal to the amounts that such Employees and former employees would have been entitled to receive under paragraph 136(l)(d) of the *Bankruptcy and Insolvency Act* (Canada) if the applicable Applicant had become bankrupt on the Filing Date; and

(b) Claims for wages, salaries, commissions or compensation for services rendered by such Employees and former employees after the Filing Date and on or before the Plan Implementation Date together with, in the case of travelling salespersons, disbursements properly incurred by them in and about the Applicants' business during the same period.

"**Employees**" means any and all (a) employees of the Applicants who are actively at work (including full-time, part-time or temporary employees) and (b) employees of the Applicants who are on approved leaves of absence (including maternity leave, parental leave, short-term disability leave, workers' compensation and other statutory leaves), and who have not tendered notice of resignation as of the Filing Date, in each case.

"**Encumbrance**" means any charge, mortgage, lien, pledge, claim, restriction, hypothec, adverse interest, security interest or other encumbrance whether created or arising by agreement, statute or otherwise at law, attaching to property, interests or rights and shall be construed in the widest possible terms and principles known under the law applicable to such property, interests or rights and whether or not they constitute specific or floating charges as those terms are understood under the laws of the Province of Ontario.

"**Equity Claim**" means a Claim that meets the definition of "equity claim" in section 2(1) of the CCAA.

"**Equity Claimants**" means any Person with an Equity Claim or holding an Equity Interest, but only in such capacity, and for greater certainty includes the Existing Cline Shareholders in their capacity as such.

"**Equity Interests**" has the meaning ascribed thereto in section 2(1) of the CCAA and, for greater certainty, includes the Existing Cline Shares, the Existing New Elk Units, the Existing North Central Shares, the Existing Options and any other interest in or entitlement to shares or units in the capital of the Applicants but, for greater certainty, does not include the New Cline Common Shares issued on the Plan Implementation Date in accordance with the Plan.

- 7 -

"**Existing Cline Shareholder**" means any Person who holds, is entitled to or has any rights in or to the Existing Cline Shares or any shares in the authorized capital of Cline immediately prior to the Effective Time, but only in such capacity, and for greater certainty does not include any Person that is issued New Cline Common Shares on the Plan Implementation Date.

"**Existing Cline Shares**" means all shares in the capital of Cline that are issued and outstanding immediately prior to the Effective Time.

"**Existing New Elk Units**" means all units in the capital of New Elk that are issued and outstanding immediately prior to the Effective Time.

"**Existing North Central Shares**" means all shares in the capital of North Central that are issued and outstanding immediately prior to the Effective Time.

"**Existing Options**" means any options, warrants (including the Warrants), conversion privileges, puts, calls, subscriptions, exchangeable securities, or other rights, entitlements, agreements, arrangements or commitments (pre-emptive, contingent or otherwise) obligating any of the Applicants to issue, acquire or sell shares or units in the capital of the Applicants or to purchase any shares, units, securities, options or warrants, or any securities or obligations of any kind convertible into or exchangeable for shares or units in the capital of the Applicants, in each case that are existing or issued and outstanding immediately prior to the Effective Time, including any options to acquire shares, units or other equity securities of the Applicants issued under the Stock Option Plans, any warrants exercisable for common shares, units or other equity securities of the Applicants (including the Warrants), any put rights exercisable against the Applicants in respect of any shares, units, options, warrants or other securities, and any rights, entitlements or other claims of any kind to receive any other form of consideration in respect of any prior or future exercise of any of the foregoing.

"**Filing Date**" has the meaning ascribed thereto in the recitals.

"**Final Order**" means any order, ruling or judgment of the Court, or any other court of competent jurisdiction, (i) that is in full force and effect; (ii) that has not been reversed, modified or vacated and is not subject to any stay and (iii) in respect of which all applicable appeal periods have expired and any appeals therefrom have been finally disposed of, leaving such order, ruling or judgment wholly operable.

"**Fractional Interests**" has the meaning given in section 4.12 hereof.

"**Government Priority Claims**" means all Claims of Governmental Entities against any of the Applicants in respect of amounts that are outstanding and that are of a kind that could be subject to a demand under:

(a)    subsections 224(1.2) of the Canadian Tax Act;

(b)    any provision of the Canada Pension Plan or the *Employment Insurance Act* (Canada) that refers to subsection 224(1.2) of the Canadian Tax Act and provides for the collection of a contribution, as defined in the Canada Pension Plan, or employee's premium or employer's premium as defined in the *Employment*

- 8 -

*Insurance Act* (Canada), or a premium under Part VII. I of that Act, and of any related interest, penalties or other amounts; or

(c)    any provision of provincial legislation that has a similar purpose to subsection 224(1.2) of the Canadian Tax Act, or that refers to that subsection, to the extent that it provides for the collection of a sum, and of any related interest, penalties or other amounts, where the sum:

        (i)    has been withheld or deducted by a person from a payment to another person and is in respect of a tax similar in nature to the income tax imposed on individuals under the Canadian Tax Act; or

        (ii)    is of the same nature as a contribution under the Canada Pension Plan if the province is a "province providing a comprehensive pension plan" as defined in subsection 3(1) of the Canada Pension Plan and the provincial legislation establishes a "provincial pension plan" as defined in that subsection.

"**Governmental Entity**" means any government, regulatory authority, governmental department, agency, commission, bureau, official, minister, Crown corporation, court, board, tribunal or dispute settlement panel or other law, rule or regulation-making organization or entity: (a) having or purporting to have jurisdiction on behalf of any nation, province, territory or state or any other geographic or political subdivision of any of them; or (b) exercising, or entitled or purporting to exercise any administrative, executive, judicial, legislative, policy, regulatory or taxing authority or power.

"**Indentures**" means, collectively, the 2011 Indenture and the 2013 Indenture.

"**Indenture Trustee**" means Computershare Trust Company of Canada, as trustee in respect of the Secured Notes under the Indentures.

"**Individual Unsecured Plan Entitlement**" means, with respect to each Affected Unsecured Creditor with an Allowed Affected Unsecured Claim that is not a Convenience Creditor and that is not a Secured Noteholder, its entitlement to receive its respective individual portion of the Unsecured Plan Entitlement Proceeds payable on the Unsecured Plan Entitlement Date, the quantum of which entitlement shall be calculated as follows at the relevant time:

(A)    the Allowed Affected Unsecured Claim of such Affected Unsecured Creditor

divided by

(B)    the total amount of all Allowed Affected Unsecured Claims and Disputed Distribution Claims of Affected Unsecured Creditors less the Secured Noteholders Allowed Unsecured Claim less the Marret Unsecured Claim less the amount of all Convenience Claims

multiplied by

(C)    $225,000.

- 9 -

"**Individual WARN Act Plan Entitlement**" means with respect to each WARN Act Plaintiff with an Allowed WARN Act Claim, its entitlement to receive its individual WARN Act Plaintiff's Pro-Rata Share of the WARN Act Plan Entitlement Proceeds payable on the WARN Act Plan Entitlement Date.

"**Information Statement**" means the information statement to be distributed by the Applicants concerning the Plan, the Meetings and the hearing in respect of the Sanction Order, as contemplated in the Meetings Order.

"**Initial Distribution Date**" means a date no more than two (2) Business Days after the Plan Implementation Date or such other date as the Applicants and the Monitor may agree.

"**Initial Order**" has the meaning ascribed thereto in the recitals.

"**Insurance Policy**" means any insurance policy maintained by any of the Applicants pursuant to which any of the Applicants or any Director or Officer is insured.

"**Insured Claim**" means all or that portion of a Claim arising from a cause of action for which the applicable insurer or a court of competent jurisdiction has definitively and unconditionally confirmed that the applicable Applicant is insured under an Insurance Policy, to the extent that such Claim, or portion thereof, is so insured.

"**Intercompany Claim**" means any Claim by any Applicant against another Applicant.

"**Marret**" has the meaning ascribed to it in the recitals.

"**Marret Unsecured Claim**" means all Claims of Marret, in its individual corporate capacity and not on behalf of the Secured Noteholders, against one or more of the Applicants, if any, including any secured Claims of Marret, in such capacity, in respect of which there is a deficiency in the realizable value of the security held by Marret relative to the amount of such secured Claim.

"**Material**" means a fact, circumstance, change, effect, matter, action, condition, event, occurrence or development that, individually or in the aggregate, is, or would reasonably be expected to be, material to the business, affairs, results of operations or financial condition of the Applicants (taken as a whole).

"**Meeting Date**" means the date on which the Meetings are held in accordance with the Meetings Order.

"**Meetings**" means, collectively, the Secured Noteholders Meeting, the Unsecured Creditors Meeting and the WARN Act Plaintiffs Meeting.

"**Meetings Order**" means the Order under the CCAA that, among other things, sets the date for the Meetings, as same may be amended, restated or varied from time to time.

"**Monitor**" means FTI Consulting Canada Inc., as Court-appointed Monitor of the Applicants in the CCAA Proceeding.

- 10 -

"**Monitor's Website**" means http://cfcanada.fticonsulting.com/cline

"**New Cline Common Shares**" means the new Cline Common Shares to be issued pursuant to section 5.2(1) hereof.

"**New Credit Agreement**" means the credit agreement in respect of the New Secured Debt dated as of the Plan Implementation Date among Cline, as borrower, New Elk and North Central, as guarantors, and the New Secured Debt Agent.

"**New Secured Debt**" means the new secured indebtedness of Cline, which is to be guaranteed by New Elk and North Central, to be established on the Plan Implementation Date pursuant to section 5.2(2) hereof, the terms of which shall be consistent with the summary of terms set forth in Schedule "A" and which shall be governed by the New Credit Agreement.

"**New Secured Debt Agent**" means Marret Asset Management Inc., in its capacity as administrative and collateral agent under the New Credit Agreement.

"**Noteholder Advisors**" means Davies Ward Phillips & Vineberg LLP.

"**Notice of Claim**" has the meaning ascribed thereto in the Claims Procedure Order.

"**Officers**" means all current and former officers (or their estates) of the Applicants, in such capacity, and "**Officer**" means any one of them.

"**Order**" means any order of the Court made in connection with the CCAA Proceeding and any order of the U.S. Court made in connection with the Chapter 15 Proceeding.

"**Person**" means any individual, firm, corporation, limited or unlimited liability company, general or limited partnership, association, trust, unincorporated organization, joint venture, government or any agency, officer or instrumentality thereof or any other entity.

"**Plan**" means the Plan of Compromise and Arrangement filed by the Applicants pursuant to the CCAA, as it may be amended, supplemented or restated from time to time in accordance with the terms hereof.

"**Plan Implementation Date**" means the Business Day on which the Plan becomes effective, which shall be the Business Day on which, pursuant to section 9.2, the Applicants and Marret (on behalf of the Secured Noteholders) or their respective counsel deliver written notice to the Monitor (or its counsel) that the conditions set out in section 9.1 have been satisfied or waived in accordance with the terms hereof.

"**Post-Filing Trade Payables**" means trade payables that were incurred by any of the Applicants (a) after the Filing Date but before the Plan Implementation Date; and (b) in compliance with the Initial Order and other Orders issued in connection with the CCAA Proceeding and the Chapter 15 Proceeding.

"**Prior Ranking Secured Claims**" means Allowed Claims existing on both the Filing Date and the Plan Implementation Date, other than Government Priority Claims, Employee Priority Claims, and Claims secured by the Charges, that (a) are secured by a valid, perfected and

- 11 -

enforceable security interest in, mortgage, encumbrance or charge over, lien against or other similar interest in, any of the assets that any of the Applicants owns or to which any of the Applicants is entitled, but only to the extent of the realizable value of the property subject to such security; and (b) would have ranked senior in priority to the Secured Noteholders Allowed Secured Claim if the Applicants had become bankrupt on the Filing Date, but only to the extent that it would have ranked senior in priority, including any Allowed Claims relating to the security registrations listed on Schedule "A" to the Initial Order, which, for greater certainty, includes the registration in favour of Bank of Montreal/Banque de Montreal listed thereon, to the extent that such Claims satisfy the terms of this definition.

**"Proof of Claim"** has the meaning ascribed thereto in the Claims Procedure Order.

**"Recapitalization"** means the transactions contemplated by the Plan.

**"Released Claims"** has the meaning ascribed thereto in section 7.1.

**"Released Director/Officer Claim"** means any Director/Officer Claim that is released pursuant to section 7.1.

**"Released Party"** and **"Released Parties"** have the meaning ascribed thereto in section 7.1.

**"Restructuring Period Claim"** has the meaning ascribed thereto in the Claims Procedure Order.

**"Required Majorities"** means with respect to each Voting Class, a majority in number of Affected Creditors representing at least two thirds in value of the Voting Claims of Affected Creditors, in each case who are entitled to vote at the Meetings in accordance with the Meetings Order and who are present and voting in person or by proxy on the resolution approving the Plan at the applicable Meeting.

**"Sanction Order"** means the Order of the Court sanctioning and approving the Plan.

**"Secured Noteholders"** means the holders of the Secured Notes, and **"Secured Noteholder"** means any one of them.

**"Secured Noteholders Allowed Claim"** has the meaning ascribed thereto in the Claims Procedure Order, and the aggregate amount of such Claim is $110,173,897.

**"Secured Noteholders Allowed Secured Claim"** has the meaning ascribed thereto in the Claims Procedure Order, and, for the purpose of voting at the Secured Noteholders Meeting and receiving distributions under the Plan, the aggregate amount of such Claims is $92,673,897.

**"Secured Noteholders Allowed Unsecured Claim"** has the meaning ascribed thereto in the Claims Procedure Order, and, for the purpose of voting at the Unsecured Creditors Meeting, the aggregate amount of such Claims is $17,500,000.

**"Secured Noteholders Class"** means the class of Secured Noteholders collectively holding the Secured Noteholders Allowed Secured Claim entitled to vote on this Plan at the Secured Noteholders Meeting in accordance with the terms of the Meetings Order.

- 12 -

"**Secured Noteholders Meeting**" means the meeting of the Secured Noteholders Class to be held on the Meeting Date for the purpose of considering and voting on the Plan pursuant to the CCAA and includes any adjournment, postponement or other rescheduling of such meeting in accordance with the Meetings Order.

"**Secured Noteholder's Share**" means, with respect to each Secured Noteholder, either: (i) the principal amount of Secured Notes held by such Secured Noteholder as at the Filing Date divided by the total aggregate principal amount of all Secured Notes as at the Filing Date; or (ii) such other proportionate share as may be agreed by the Applicants, Marret (on behalf of the Secured Noteholders) and the Monitor and as confirmed by Marret (on behalf of the Secured Noteholders) to the Indenture Trustee in writing.

"**Secured Note Obligations**" means all obligations, liabilities and indebtedness of the Applicants or any of the Cline Companies (whether as guarantor, surety or otherwise) to the Indenture Trustee, the Secured Noteholders and/or Marret (whether on behalf of the Secured Noteholders or in its individual corporate capacity) under, arising out of or in connection with the Secured Notes, the Indentures or the guarantees granted in connection with any of the foregoing as well as any other agreements or documents relating thereto as at the Plan Implementation Date.

"**Secured Notes**" has the meaning ascribed thereto in the recitals.

"**Stock Option Plans**" means any options plans, stock-based compensation plans or other obligations of any of the Applicants in respect of shares, options or warrants for equity in any of the Cline Companies, in each case as such plans or other obligations may be amended, restated or varied from time to time in accordance with the terms thereof.

"**Tax**" or "**Taxes**" means any and all federal, provincial, state, municipal, local, Canadian, U.S. and foreign taxes, assessments, reassessments and other governmental charges, duties, impositions and liabilities including for greater certainty taxes based upon or measured by reference to income, gross receipts, profits, capital, transfer, land transfer, sales, goods and services, harmonized sales, use, value-added, excise, withholding, business, franchising, property, development, occupancy, employer health, payroll, employment, health, social services, education and social security taxes, all surtaxes, all customs duties and import and export taxes, all licence, franchise and registration fees and all employment insurance, health insurance and federal, provincial, state, municipal, local, Canadian, U.S., foreign and other government pension plan premiums or contributions, together with all interest, penalties, fines and additions with respect to such amounts.

"**Taxing Authorities**" means any one of Her Majesty the Queen, Her Majesty the Queen in right of Canada, Her Majesty the Queen in right of any province or territory of Canada, the Canada Revenue Agency, any similar revenue or taxing authority of Canada and each and every province or territory of Canada and any political subdivision thereof, the United States Internal Revenue Service, any similar revenue or taxing authority of the United States and each and every state of the United States, and any Canadian, American or other government, regulatory authority, government department, agency, commission, bureau, minister, court, tribunal or body or regulation making entity exercising taxing authority or power, and "**Taxing Authority**" means any one of the Taxing Authorities.

- 13 -

"**Unaffected Claim**" means any:

    (a)    Claim secured by any of the Charges;

    (b)    Insured Claim;

    (c)    Intercompany Claim;

    (d)    Post-Filing Trade Payable;

    (e)    Unaffected Secured Claim;

    (f)    Claim by an Unaffected Trade Creditor arising from an Unaffected Trade Claim;

    (g)    Claim that is not permitted to be compromised pursuant to section 19(2) of the CCAA;

    (h)    Employee Priority Claims; and

    (i)    Government Priority Claims.

"**Unaffected Creditor**" means a Creditor who has an Unaffected Claim, but only in respect of and to the extent of such Unaffected Claim.

"**Unaffected Secured Claims**" means: (i) the Prior Ranking Secured Claims; and (ii) all other Claims against one or more of the Applicants that (a) are secured by a valid security interest over assets or property of the Applicants and (b) the Applicants have identified to the Monitor in writing prior to the Plan Implementation Date as Unaffected Claims under the Plan.

"**Unaffected Trade Claim**" means an Allowed Claim of an Unaffected Trade Creditor that (i) is not a Post-Filing Trade Payable, (ii) arises out of or in connection with any contract, license, lease, agreement, obligation, arrangement or document with any of the Applicants related to the business of the Applicants and (iii) the Applicants have identified to the Monitor in writing prior to the Plan Implementation Date as an Unaffected Claim.

"**Unaffected Trade Creditor**" means any Person that has been designated by the Applicants, with the consent of the Monitor, as a critical supplier in accordance with the Initial Order.

"**Undeliverable Distribution**" has the meaning ascribed thereto in section 4.10 hereof.

"**Unsecured Creditors Meeting**" means a meeting of Affected Unsecured Creditors to be held on the Meeting Date called for the purpose of considering and voting on the Plan pursuant to the CCAA, and includes any adjournment, postponement or other rescheduling of such meeting in accordance with the Meetings Order.

"**Unsecured Plan Entitlement**" means an unsecured, non-interest-bearing entitlement of the Affected Unsecured Creditors, other than Convenience Creditors, with Allowed Affected Unsecured Claims to receive $225,000 in cash (collectively, and not individually) from Cline on the date that is eight years from the Plan Implementation Date, which entitlement shall be

- 14 -

subordinated to all present and future secured indebtedness and obligations of Cline and may be paid by Cline at any time without penalty.

"**Unsecured Plan Entitlement Date**" means the earlier of the date that is eight years following the Plan Implementation Date and the date on which the Unsecured Plan Entitlement is paid by Cline.

"**Unsecured Plan Entitlement Proceeds**" means the amounts payable to the beneficiaries of the Unsecured Plan Entitlement on the Unsecured Plan Entitlement Date.

"**U.S. Court**" means the United States Bankruptcy Court for the District of Colorado.

"**Voting Claims**" means any Claim or portion thereof that has been finally allowed as a Voting Claim (as defined in the Claims Procedure Order) for purposes of voting at a Meeting in accordance with the Claims Procedure Order or a Final Order of the Court.

"**Voting Classes**" means the Secured Noteholders Class, the Affected Unsecured Creditors Class and the WARN Act Plaintiffs Class.

"**WARN Act**" means the U.S. federal Worker Adjustment and Retraining Notification Act of 1988 (29 U.S.C. §§ 2101 – 2109).

"**WARN Act Claim**" means any Claim against any of the Applicants advanced by the WARN Act Plaintiffs in the WARN Act Class Action and any other Claims of individuals similarly situated to the WARN Act Plaintiffs that may be asserted against any of the Applicants pursuant to the WARN Act.

"**WARN Act Class Action**" means the class action lawsuit filed against Cline and New Elk by the WARN Act Plaintiffs in the United States District Court for the District of Colorado, Case Number 1:13-CV-00277, as amended.

"**WARN Act Plaintiffs**" means the plaintiffs in the WARN Act Class Action and all others who are alleged in the WARN Act Class Action to be similarly situated, and any other individual who is simliarly situated to the plaintiffs in the WARN Act Class Action who asserts Claims against any of the Applicants pursuant to the WARN Act.

"**WARN Act Plaintiffs Class**" means the class of WARN Act Plaintiffs entitled to vote on the Plan at the WARN Act Plaintiffs Meeting in accordance with the terms of the Meetings Order.

"**WARN Act Plaintiffs Meeting**" means a meeting of WARN Act Plaintiffs Class to be held on the Meeting Date called for the purpose of considering and voting on the Plan pursuant to the CCAA, and includes any adjournment, postponement or other rescheduling of such meeting in accordance with the Meetings Order.

"**WARN Act Plaintiff's Pro-Rata Share**" means, at the relevant time, with respect to each WARN Act Plaintiff, (x) the Allowed WARN Act Claim of such WARN Act Plaintiff divided by (y) the total amount of all Allowed WARN Act Claims and Disputed Distribution Claims of WARN Act Plaintiffs.

- 15 -

"**WARN Act Plan Entitlement**" means the unsecured, non-interest-bearing entitlement of the WARN Act Plaintiffs with Allowed WARN Act Claims to receive $100,000 in cash (collectively, and not individually) from Cline on the date that is eight years from the Plan Implementation Date, which entitlement shall be subordinated to all present and future secured indebtedness and obligations of Cline and may be paid by Cline at any time without penalty.

"**WARN Act Plan Entitlement Date**" means the earlier of the date that is eight years following the Plan Implementation Date and the date on which the WARN Act Plan Entitlement is paid by Cline.

"**WARN Act Plan Entitlement Proceeds**" means the amounts payable to the beneficiaries of the WARN Act Plan Entitlement on the WARN Act Plan Entitlement Date.

"**Warrants**" means all warrants, options, rights or entitlements for the purchase of Cline Common Shares that are issued and outstanding immediately prior to the Effective Time.

### 1.2    Certain Rules of Interpretation

For the purposes of the Plan:

(a)    any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(b)    any reference in the Plan to an Order or an existing document or exhibit filed or to be filed means such Order, document or exhibit as it may have been or may be amended, modified, or supplemented;

(c)    unless otherwise specified, all references to currency are in Canadian dollars;

(d)    the division of the Plan into "articles" and "sections" and the insertion of a table of contents are for convenience of reference only and do not affect the construction or interpretation of the Plan, nor are the descriptive headings of "articles" and "sections" intended as complete or accurate descriptions of the content thereof;

(e)    the use of words in the singular or plural, or with a particular gender, including a definition, shall not limit the scope or exclude the application of any provision of the Plan or a schedule hereto to such Person (or Persons) or circumstances as the context otherwise permits;

(f)    the words "includes" and "including" and similar terms of inclusion shall not, unless expressly modified by the words "only" or "solely", be construed as terms of limitation, but rather shall mean "includes but is not limited to" and "including but not limited to", so that references to included matters shall be regarded as illustrative without being either characterizing or exhaustive;

- 16 -

(g)    unless otherwise specified, all references to time herein and in any document issued pursuant hereto mean local time in Toronto, Ontario and any reference to an event occurring on a Business Day shall mean prior to 5:00 p.m. (Toronto time) on such Business Day;

(h)    unless otherwise specified, time periods within or following which any payment is to be made or act is to be done shall be calculated by excluding the day on which the period commences and including the day on which the period ends and by extending the period to the next succeeding Business Day if the last day of the period is not a Business Day;

(i)    unless otherwise provided, any reference to a statute or other enactment of parliament or a legislature includes all regulations made thereunder, all amendments to or re-enactments of such statute or regulations in force from time to time, and, if applicable, any statute or regulation that supplements or supersedes such statute or regulation; and

(j)    references to a specified "article" or "section" shall, unless something in the subject matter or context is inconsistent therewith, be construed as references to that specified article or section of the Plan, whereas the terms "the Plan", "hereof", "herein", "hereto", "hereunder" and similar expressions shall be deemed to refer generally to the Plan and not to any particular "article", "section" or other portion of the Plan and include any documents supplemental hereto.

### 1.3 · Successors and Assigns

The Plan shall be binding upon and shall enure to the benefit of the heirs, administrators, executors, legal personal representatives, successors and assigns of any Person or party directly or directly named or referred to in or subject to Plan.

### 1.4    Governing Law

The Plan shall be governed by and construed in accordance with the laws of the Province of Ontario and the federal laws of Canada applicable therein. All questions as to the interpretation of or application of the Plan and all proceedings taken in connection with the Plan and its provisions shall be subject to the jurisdiction of the Court, provided that the Chapter 15 Proceeding shall be subject to the jurisdiction of the U.S. Court.

### 1.5    Schedules

The following are the Schedules to the Plan, which are incorporated by reference into the Plan and form a part of it:

| | |
|---|---|
| Schedule "A" | New Secured Debt – Summary of Terms |
| Schedule "B" | Alternate Plan – Summary of Terms |

- 17 -

## ARTICLE 2
## PURPOSE AND EFFECT OF THE PLAN

### 2.1   Purpose

The purpose of the Plan is:

      (a)       to implement a recapitalization of the Applicants;

      (b)       to provide for a settlement of, and consideration for, all Allowed Affected Claims;

      (c)       to effect a release and discharge of all Affected Claims and Released Claims; and

      (d)       to ensure the continuation of the Applicants,

in the expectation that the Persons who have a valid economic interest in the Applicants will derive a greater benefit from the implementation of the Plan than they would derive from a bankruptcy of the Applicants.

### 2.2   Persons Affected

The Plan provides for a full and final release and discharge of the Affected Claims and Released Claims, a settlement of, and consideration for, all Allowed Affected Claims and a recapitalization of the Applicants. The Plan will become effective at the Effective Time in accordance with its terms and in the sequence set forth in section 5.3 and shall be binding on and enure to the benefit of the Applicants, the Affected Creditors, the Released Parties and all other Persons directly or indirectly named or referred to in or subject to Plan.

### 2.3   Persons Not Affected

The Plan does not affect the Unaffected Creditors, subject to the express provisions hereof providing for the treatment of Insured Claims and the unsecured deficiency portion of Unaffected Secured Claims. Nothing in the Plan shall affect the Applicants' rights and defences, both legal and equitable, with respect to any Unaffected Claims including all rights with respect to legal and equitable defences or entitlements to set-offs or recoupments against such Unaffected Claims.

## ARTICLE 3
## CLASSIFICATION AND TREATMENT OF CREDITORS AND RELATED MATTERS

### 3.1   Claims Procedure

The procedure for determining the validity and quantum of the Affected Claims for voting and distribution purposes under the Plan shall be governed by the Claims Procedure Order, the Meetings Order, the CCAA, the Plan and any further Order of the Court.

- 18 -

### 3.2     Classification of Creditors

In accordance with the Meetings Order and subject to section 10.5(d) hereof, the classes of creditors for the purposes of considering and voting on the Plan will be (i) the Secured Noteholders Class, (ii) the Affected Unsecured Creditors Class and (iii) the WARN Act Plaintiffs Class.  For greater certainty, Equity Claimants shall constitute a separate class but shall not be entitled to attend the Meetings, vote on the Plan or receive any distributions under or in respect of the Plan.

### 3.3     Creditors' Meetings

The Meetings shall be held in accordance with the Meetings Order and any further Order of the Court. The only Persons entitled to attend and vote at the Meetings are those specified in the Meetings Order.

### 3.4     Treatment of Affected Claims

An Affected Claim shall receive distributions as set forth below only to the extent that such Claim is an Allowed Affected Claim and has not been paid, released, or otherwise satisfied prior to the Plan Implementation Date.

### (1)     Secured Noteholders Class

In accordance with the steps and sequence set forth in section 5.3, under the supervision of the Monitor, and in full and final satisfaction of the Secured Noteholders Allowed Secured Claim, each Secured Noteholder will receive its Secured Noteholder's Share of the following consideration on the Plan Implementation Date:

(a)     the New Cline Common Shares issued on the Plan Implementation Date; and

(b)     the New Secured Debt.

The Claims comprising the Secured Noteholders Allowed Claim and the Secured Note Obligations shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred on the Plan Implementation Date.  For greater certainty, the Secured Noteholders Allowed Unsecured Claim, the Marret Unsecured Claim and any portion of any other Affected Claim that is validly secured but in respect of which there is a deficiency in the realizable value of the security held in respect of such Claim, shall be deemed to be and shall be treated as Allowed Affected Unsecured Claims notwithstanding that they are secured by a valid security interest over the assets or property of the Applicants.

### (2)     Affected Unsecured Creditors Class

In accordance with the steps and sequence set forth in section 5.3, under the supervision of the Monitor, and in full and final satisfaction of all Affected Unsecured Claims, each Affected Unsecured Creditor with an Allowed Affected Unsecured Claim will receive the following consideration:

- 19 -

(a)     with respect to Affected Unsecured Creditors with Allowed Affected Unsecured Claims that are not Convenience Creditors, each such Affected Unsecured Creditor shall become entitled on the Plan Implementation Date to its Individual Unsecured Plan Entitlement (which, for greater certainty, shall not be payable until the Unsecured Plan Entitlement Date); and

(b)     with respect to Convenience Creditors with Allowed Affected Unsecured Claims, each such Convenience Creditor shall receive a cash payment on the Plan Implementation Date equal to the lesser of (i) $10,000; and (ii) the amount of its Allowed Affected Unsecured Claim.

The Secured Noteholders and Marret (on behalf of the Secured Noteholders and in its individual corporate capacity) hereby waive, and shall not receive, any distributions in respect of the Secured Noteholders Allowed Unsecured Claim and the Marret Unsecured Claim, respectively. All Affected Unsecured Claims shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred on the Plan Implementation Date.

(3)     **WARN Act Plaintiffs Class**

In accordance with the steps and sequence set forth in section 5.3, under the supervision of the Monitor, and in full and final satisfaction of all WARN Act Claims, each WARN Act Plaintiff with an Allowed WARN Act Claim shall become entitled on the Plan Implementation Date to its Individual WARN Act Plan Entitlement (which, for greater certainty, shall not be payable until the WARN Act Plan Entitlement Date).   All WARN Act Claims shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred on the Plan Implementation Date.

(4)     **Equity Claimants**

Equity Claimants shall not receive any distributions or other consideration under the Plan or otherwise recover anything in respect of their Equity Claims or Equity Interests and shall not be entitled to attend or vote on the Plan at the Meetings.  On the Plan Implementation Date, in accordance with the steps and sequences set out in section 5.3, all Equity Interests shall be cancelled and extinguished and all Equity Claims shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred, provided that, notwithstanding anything to the contrary herein: (i) the Existing New Elk Units shall not be cancelled or extinguished and shall remain outstanding and shall remain solely owned by Cline following completion of the steps and sequences set out in section 5.3; and (ii) the Existing North Central Units shall not be cancelled or extinguished and shall remain outstanding and shall remain solely owned by New Elk following completion of the steps and sequences set out in section 5.3.

    3.5     **Unaffected Claims**

(a)     Unaffected Claims shall not be compromised, released, discharged, cancelled or barred by the Plan.

- 20 -

(b)     Unaffected Creditors will not receive any consideration or distributions under the Plan in respect of their Unaffected Claims, and they shall not be entitled to vote on the Plan at the Meetings in respect of their Unaffected Claims.

(c)     Notwithstanding anything to the contrary herein, Insured Claims shall not be compromised, released, discharged, cancelled or barred by the Plan, provided that from and after the Plan Implementation Date, any Person having an Insured Claim shall be irrevocably limited to recovery in respect of such Insured Claim solely from the proceeds of the applicable Insurance Policies, and Persons with any Insured Claims shall have no right to, and shall not, directly or indirectly, make any claim or seek any recoveries from any Person, including any of the Applicants, any of the Cline Companies or any Released Party, other than enforcing such Person's rights to be paid by the applicable insurer(s) from the proceeds of the applicable Insurance Policies.  This section 3.5(c) may be relied upon and raised or pled by any of the Applicants, any of the Cline Companies or any Released Party in defence or estoppel of or to enjoin any claim, action or proceeding brought in contravention of this section.  Nothing in the Plan shall prejudice, compromise, release or otherwise affect any right or defence of any insurer in respect of an Insurance Policy or any insured in respect of an Insured Claim.

(d)     Notwithstanding anything to the contrary herein, in the case of Unaffected Secured Claims, at the election of the Applicants:

(i)     the Applicants may satisfy any Unaffected Secured Claims by returning the applicable property of the Applicants that is secured as collateral for such Claims, in which case the Unaffected Secured Claim shall be deemed to be fully satisfied, provided that if the applicable Unaffected Secured Creditor asserts that there is a deficiency in the value of the applicable collateral relative the value of the Unaffected Secured Claim, such Creditor shall be permitted to file such unsecured deficiency Claim as a Restructuring Period Claim prior to the Restructuring Period Claims Bar Date (as defined in the Claims Procedure Order) in accordance with the Claims Procedure Order, and such unsecured deficiency Claim shall be treated as an Affected Unsecured Claim for the purpose of this Plan, the Meetings Order and all related matters; and

(ii)    if the Applicants do not elect to satisfy an Unaffected Secured Claim in the manner described in section 3.5(d)(i), then such Unaffected Secured Claim shall continue unaffected as against the applicable Applicants following the Plan Implementation Date.

### 3.6     Disputed Distribution Claims

Any Affected Creditor with a Disputed Distribution Claim shall not be entitled to receive any distribution hereunder with respect to such Disputed Distribution Claim unless and until such Claim becomes an Allowed Affected Claim.  A Disputed Distribution Claim shall be resolved in the manner set out in the Claims Procedure Order.  Distributions pursuant to section 3.4 shall be

- 21 -

made in respect of any Disputed Distribution Claim that is finally determined to be an Allowed Affected Claim in accordance with the Claims Procedure Order.

### 3.7    Director/Officer Claims

All Released Director/Officer Claims shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred without consideration on the Plan Implementation Date.  Any Director/Officer Claim that is not a Released Director/Officer Claim will not be compromised, released, discharged, cancelled and barred.  For greater certainty, any Claim of a Director or Officer against the Applicants for indemnification or contribution in respect of any Director/Officer Claim that is not otherwise covered by the Directors' Charge shall be treated for all purposes under the Plan as an Affected Unsecured Claim.

### 3.8    Extinguishment of Claims

On the Plan Implementation Date, in accordance with the terms and in the sequence set forth in section 5.3 and in accordance with the provisions of the Sanction Order, the treatment of Affected Claims and all Released Claims, in each case as set forth herein, shall be final and binding on the Applicants, all Affected Creditors  and any Person having a Released Claim (and their respective heirs, executors, administrators, legal personal representatives, successors and assigns), and all Affected Claims and all Released Claims shall be fully, finally, irrevocably and forever released, discharged, cancelled and barred, and the Applicants and the Released Parties shall thereupon have no further obligation whatsoever in respect of the Affected Claims or the Released Claims; *provided that* nothing herein releases the Applicants or any other Person from their obligations to make distributions in the manner and to the extent provided for in the Plan and *provided further* that such discharge and release of the Applicants shall be without prejudice to the right of a Creditor in respect of a Disputed Distribution Claim to prove such Disputed Distribution Claim in accordance with the Claims Procedure Order so that such Disputed Distribution Claim may become an Allowed Claim entitled to receive consideration under section 3.4 hereof.

### 3.9    Guarantees and Similar Covenants

No Person who has a Claim under any guarantee, surety, indemnity or similar covenant in respect of any Claim that is compromised and released under the Plan or who has any right to claim over in respect of or to be subrogated to the rights of any Person in respect of a Claim that is compromised under the Plan shall be entitled to any greater rights than the Person whose Claim is compromised under the Plan.

### 3.10    Set-Off

The law of set-off applies to all Claims.

- 22 -

## ARTICLE 4
## PROVISIONS REGARDING DISTRIBUTIONS AND PAYMENTS

### 4.1    Distributions of New Cline Common Shares and New Secured Debt

(a)    Upon receipt of and in accordance with written instructions from the Monitor, the Indenture Trustee shall instruct CDS to, and CDS shall, block any further trading in the Secured Notes effective as of the close of business on the Business Day immediately prior to the Plan Implementation Date, all in accordance with the customary procedures of CDS.

(b)    The distribution mechanics with respect to the New Cline Common Shares and the Secured Noteholders' respective entitlements to the New Secured Debt in accordance with section 3.4(1) shall be agreed by the Applicants, Marret (on behalf of the Secured Noteholders) and the Monitor in writing, in consultation with the Indenture Trustee, if applicable, prior to the Plan Implementation Date. If it is deemed necessary by any of the Applicants, the Monitor or Marret (on behalf of the Secured Noteholders), any such party shall be entitled to seek an Order of the Court, in the Sanction Order or otherwise, providing advice and directions with respect to such distribution mechanics.

(c)    Except as may be otherwise agreed in writing by the Applicants and the Monitor, the Applicants and the Monitor shall have no liability or obligation in respect of deliveries of consideration issued under this Plan: (i) from Marret to any Secured Noteholder; (ii) from CDS, or its nominee, to CDS Participants, if applicable; (iii) from CDS Participants to beneficial holders of the Secured Notes, if applicable; or (iv) from the Indenture Trustee to beneficial holders of the Secured Notes, if applicable.

### 4.2    Distribution Mechanics with respect to the Unsecured Plan Entitlement

(a)    Each Affected Unsecured Creditor with an Allowed Affected Unsecured Claim, other than the Secured Noteholders and the Convenience Creditors, shall become entitled to its Individual Unsecured Plan Entitlement on the Plan Implementation Date without any further steps or actions by the Applicants, such Affected Unsecured Creditor or any other Person.

(b)    From and after the Plan Implementation Date, and until all Unsecured Plan Entitlement Proceeds have been distributed in accordance with the Plan, Cline shall maintain a register of the Individual Unsecured Plan Entitlements as well as the address and notice information set forth on each applicable Affected Unsecured Creditor's Notice of Claim or Proof of Claim.   Any applicable Affected Unsecured Creditor whose address or notice information changes shall be solely responsible for notifying Cline of such change.  Cline shall also record on the register the aggregate amount of any applicable Disputed Distribution Claims.  Within ten (10) Business Days following the Plan Implementation Date, the Applicants shall notify each Affected Unsecured Creditor with an Allowed

- 23 -

Affected Unsecured Claim of such Affected Unsecured Creditor's Individual Unsecured Plan Entitlement as at the Plan Implementation Date.

(c)     On the Unsecured Plan Entitlement Date, Cline shall calculate the amount of the Unsecured Plan Entitlement Proceeds to be paid to each applicable Affected Unsecured Creditor with an Allowed Unsecured Claim. Cline shall also calculate the amount of the Unsecured Plan Entitlement Proceeds that are not to be distributed as a result of Disputed Distribution Claims that remain outstanding, if any. Cline shall then distribute the applicable amount by way of cheque sent by prepaid ordinary mail to each Affected Unsecured Creditor with an Allowed Affected Unsecured Claim (other than the Secured Noteholders and the Convenience Creditors who, for greater certainty, shall have no Individual Unsecured Plan Entitlement). With respect to any portion of the Unsecured Plan Entitlement Proceeds that are reserved in respect of Disputed Distribution Claims, Cline shall segregate such amounts to and hold such amounts in the Disputed Distribution Claims Reserve.

### 4.3     Distribution Mechanics with respect to Convenience Claims

On the Plan Implementation Date, under the supervision of the Monitor, Cline shall pay each Convenience Creditor with an Allowed Convenience Claim the amount that is required to be paid to each such Creditor under this Plan by way of cheque sent by prepaid ordinary mail to the address set forth on such Convenience Creditor's Notice of Claim or Proof of Claim. Under the supervision of the Monitor, Cline shall also calculate the aggregate amount of Convenience Claims that are Disputed Distribution Claims on the Plain Implementation Date and shall segregate such amounts and hold such amounts in the Disputed Distribution Claims Reserve.

### 4.4     Distribution Mechanics with respect to the WARN Act Plan Entitlement

(a)     Each WARN Act Plaintiff with an Allowed WARN Act Claim shall become entitled to its Individual WARN Act Plan Entitlement on the Plan Implementation Date without any further steps or actions by the Applicants, such WARN Act Plaintiffs or any other Person.

(b)     From and after the Plan Implementation Date, and until all WARN Act Plan Entitlement Proceeds have been distributed in accordance with the Plan, Cline shall maintain a register of the Individual WARN Act Plan Entitlements as well as the address and notice information set forth on each applicable WARN Act Plaintiff's Proof of Claim. Any applicable WARN Act Plaintiff whose address or notice information changes shall be solely responsible for notifying Cline of such change. Cline shall also record on the register the aggregate amount of any applicable Disputed Distribution Claims. Within ten (10) Business Days following the Plan Implementation Date, the Applicants shall notify each WARN Act Plaintiff with an Allowed WARN Act Claim of such WARN Act Plaintiff's WARN Act Plan Entitlement as at the Plan Implementation Date.

- 24 -

(c)    On the WARN Act Plan Entitlement Date, Cline shall calculate the amount of the WARN Act Plan Entitlement Proceeds to be paid to each applicable WARN Act Plaintiff with an Allowed WARN Act Claim.  Cline shall also calculate the amount of the WARN Act Plan Entitlement Proceeds that are not to be distributed as a result of Disputed Distribution Claims that remain outstanding, if any.  Cline shall then distribute the applicable amount by way of cheque sent by prepaid ordinary mail to each WARN Act Plaintiff with an Allowed WARN Act Claim. With respect to any portion of the WARN Act Plan Entitlement Proceeds that are reserved in respect of Disputed Distribution Claims, Cline shall segregate such amounts to and hold such amounts in the Disputed Distribution Claims Reserve.

### 4.5    Modifications to Distribution Mechanics

Subject to the consent of the Monitor, the Applicants shall be entitled to make such additions and modifications to the process for making distributions pursuant to the Plan (including the process for delivering and/or registering the New Cline Common Shares and/or the Secured Noteholders' respective entitlements to the New Secured Debt) as the Applicants deem necessary or desirable in order to achieve the proper distribution and allocation of consideration to be distributed pursuant to the Plan, and such additions or modifications shall not require an amendment to the Plan or any further Order of the Court.

### 4.6    Cancellation of Certificates and Notes

Following completion of the steps in the sequence set forth in section 5.3, all debentures, notes (including the Secured Notes), certificates, agreements, invoices and other instruments evidencing Affected Claims, Secured Note Obligations or Equity Interests (other than the Existing New Elk Units owned by Cline and the North Central Shares owned by New Elk, which are unaffected by the Plan and which shall remain outstanding) will not entitle any holder thereof to any compensation or participation other than as expressly provided for in the Plan and will be cancelled and will be null and void.  Notwithstanding the foregoing, if and to the extent the Indenture Trustee is required to transfer consideration issued pursuant to this Plan to the Secured Noteholders, then the Indentures shall remain in effect solely for the purpose of and to the extent necessary to: (i) allow the Indenture Trustee to make such distributions to the Secured Noteholders on the Initial Distribution Date and each subsequent Distribution Date (if applicable); and (ii) maintain all of the protections the Indenture Trustee enjoys pursuant to the Indentures, including its lien rights with respect to any distributions under the Plan, until all distributions are made to the Secured Noteholders hereunder.  For greater certainty, any and all obligations of the Applicants and the Cline Companies (as guarantor, surety or otherwise) under and with respect to the Secured Notes and the Indentures, including the Secured Note Obligations, shall be extinguished on the Plan Implementation Date and shall not continue beyond the Plan Implementation Date.

### 4.7    Currency

Unless specifically provided for in the Plan or the Sanction Order, all monetary amounts referred to in the Plan shall be denominated in Canadian dollars and, for the purposes of distributions under the Plan, Claims shall be denominated in Canadian dollars and all payments and distributions provided for in the Plan shall be made in Canadian dollars.  Any Claims

- 25 -

denominated in a foreign currency shall be converted to Canadian dollars at the Bank of Canada noon exchange rate in effect at the Filing Date.

### 4.8    Interest

Interest shall not accrue or be paid on Affected Claims on or after the Filing Date, and no holder of an Affected Claim shall be entitled to interest accruing on or after the Filing Date.

### 4.9    Allocation of Distributions

All distributions made to Creditors pursuant to the Plan shall be allocated first towards the repayment of the principal amount in respect of such Creditor's Claim and second, if any, towards the repayment of all accrued but unpaid interest in respect of such Creditor's Claim.

### 4.10    Treatment of Undeliverable Distributions

If any Creditor's distribution under this Article 4 is returned as undeliverable (an "**Undeliverable Distribution**"), no further distributions to such Creditor shall be made unless and until the Applicant is notified by such Creditor of such Creditor's current address, at which time all such distributions shall be made to such Creditor. All claims for Undeliverable Distributions must be made on or before the date that is six months following the final Distribution Date, after which date any entitlement with respect to such Undeliverable Distribution shall be forever discharged and forever barred, without any compensation therefor, notwithstanding any federal, state or provincial laws to the contrary, at which time any such Undeliverable Distributions shall be returned to Cline. Nothing contained in the Plan shall require the Applicant to attempt to locate any Person to whom a distribution is payable. No interest is payable in respect of an Undeliverable Distribution. Unless otherwise expressly agreed by the Monitor and the Applicants in writing, any distribution under the Plan on account of the Secured Notes shall be deemed made when delivered to Marret, CDS, the CDS Participants or the Indenture Trustee, as applicable.

### 4.11    Withholding Rights

The Applicants, the Monitor and, to the extent CDS or the Indenture Trustee are required to transfer consideration to Secured Noteholders pursuant to this Plan, then CDS and the Indenture Trustee, shall be entitled to deduct and withhold from any consideration payable to any Person such amounts as the Applicants, the Monitor, CDS or the Indenture Trustee, as applicable, are required to deduct and withhold with respect to such payment under the Canadian Tax Act, or other Applicable Laws, or entitled to withhold under section 116 of the Canadian Tax Act or corresponding provision of provincial or territorial law. To the extent that amounts are so withheld or deducted, such withheld or deducted amounts shall be treated for all purposes hereof as having been paid to the Person in respect of which such withholding was made, provided that such amounts are actually remitted to the appropriate Taxing Authority.  The Applicants, the Monitor CDS and/or the Indenture Trustee, as applicable, are hereby authorized to sell or otherwise dispose of such portion of any such consideration in their posssession as is necessary to provide sufficient funds to the Applicants, the Monitor, CDS and/or the Indenture Trustee, as applicable, to enable them to comply with such deduction or withholding requirement or entitlement, and the Applicants, the Monitor, CDS and/or the Indenture Trustee, as applicable,

- 26 -

shall notify the Person thereof and remit to such Person any unapplied balance of the net proceeds of such sale.

### 4.12    Fractional Interests

No fractional interests of New Cline Common Shares ("**Fractional Interests**") will be issued under the Plan. Recipients of New Cline Common Shares will have their entitlements adjusted downwards to the nearest whole number of New Cline Common Shares to eliminate any such Fractional Interests and no compensation will be given for any Fractional Interests.

### 4.13    Calculations

All amounts of consideration to be received hereunder will be calculated to the nearest cent ($0.01).  All calculations and determination made by the Monitor and/or the Applicants and agreed to by the Monitor for the purposes of and in accordance with the Plan, including, without limitation, the allocation of consideration, shall be conclusive, final and binding upon the Affected Creditors and the Applicants.

## ARTICLE 5
## RECAPITALIZATION

### 5.1    Corporate Actions

The adoption, execution, delivery, implementation and consummation of all matters contemplated under the Plan involving corporate actions of the Applicants will occur and be effective as of the Plan Implementation Date, and shall be deemed to be authorized and approved under the Plan and by the Court, where applicable, as part of the Sanction Order, in all respects and for all purposes without any requirement of further action by shareholders, directors or officers of the Applicants. All necessary approvals to take actions shall be deemed to have been obtained from the directors, officers or the shareholders of the Applicants, as applicable, including the deemed passing by any class of shareholders of any resolution or special resolution and any shareholders' agreement or agreement between a shareholder and another Person limiting in any way the right to vote shares held by such shareholder or shareholders with respect to any of the steps contemplated by the Plan shall be deemed to have no force or effect.

### 5.2    Issuance of Plan Consideration

### (1)    New Cline Common Shares

On the Plan Implementation Date, in the sequence set forth in section 5.3 and under the supervision of the Monitor, Cline shall issue the Agreed Number of New Cline Common Shares, and such New Cline Common Shares shall be allocated and distributed in the manner set forth in the Plan.

### (2)    New Secured Debt

On the Plan Implementation Date, in the sequence set forth in section 5.3 and under the supervision of the Monitor, (i) the New Credit Agreement shall become effective in accordance with its terms and the Applicants shall become bound to satisfy their obligations thereunder and

- 27 -

(ii) the entitlements to the New Secured Debt shall be allocated among the Secured Noteholders in the manner and in the amounts set forth in the Plan.

**(3)    Unsecured Plan Entitlement**

On the Plan Implementation Date, in the sequence set forth in section 5.3 and under the supervision of the Monitor, the Unsecured Plan Entitlements shall become effective and the Individual Unsecured Plan Entitlements shall be allocated in the manner and in the amounts set forth in the Plan.

**(4)    Convenience Claim Payments**

On the Plan Implementation Date, in the sequence set forth in section 5.3 and under the supervision of the Monitor, Cline shall pay the applicable amounts to the Convenience Creditors with Allowed Convenience Claims and reserve the applicable amounts into the Disputed Claims Reserve in respect of Convenience Creditors with Disputed Distribution Claims, in each case in the manner and in the amounts set forth in the Plan.

**(5)    WARN Act Plan Entitlement**

On the Plan Implementation Date, in the sequence set forth in section 5.3 and under the supervision of the Monitor, the WARN Act Plan Entitlement shall become effective and the Individual WARN Act Plan Entitlements shall be allocated in the manner and in the amounts set forth in the Plan.

**5.3    Sequence of Plan Implementation Date Transactions**

The following steps and compromises and releases to be effected in the implementation of the Plan shall occur, and be deemed to have occurred in the following order in five minute increments (unless otherwise noted), without any further act or formality on the Plan Implementation Date beginning at the Effective Time:

(a)    all Existing Options shall be cancelled and terminated without any liability, payment or other compensation in respect thereof;

(b)    the Stock Option Plans shall be terminated;

(c)    Cline shall issue to each Secured Noteholder its Secured Noteholder's Share of the New Cline Common Shares and the Applicants shall become bound to satisfy their obligations in respect of the New Secured Debt, all in accordance with section 3.4(1), in full consideration for the irrevocable, final and full compromise and satisfaction of the Secured Noteholders Allowed Claim and all Secured Noteholder Obligations;

(d)    simultaneously with step 5.3(c), and in accordance with sections 3.4(2) and 5.2(4), Cline shall pay to each Convenience Creditor with an Allowed Affected Unsecured Claim the amount in cash that it is entitled to receive pursuant to section 3.4(2)(b) in full consideration for the irrevocable, final and full

- 28 -

compromise and satisfaction of such Convenience Creditor's Affected Unsecured Claim;

(e)    simultaneously with step 5.3(c), Cline shall reserve the applicable amount of cash in respect of Convenience Claims that are Disputed Distribution Claims and shall hold such cash in the Disputed Distribution Claims Reserve;

(f)    simultaneously with step 5.3(c), and in accordance with sections 3.4(2) and 5.2(3), each Affected Unsecured Creditor with an Allowed Affected Unsecured Claim that is not a Convenience Creditor or a Secured Noteholder shall become entitled to its Individual Unsecured Plan Entitlement (as it may be adjusted based on the final determination of Disputed Distribution Claims in the manner set forth herein) in full consideration for the irrevocable, final and full compromise and satisfaction of such Affected Unsecured Creditor's Affected Unsecured Claim;

(g)    simultaneously with step 5.3(c), and in accordance with sections 3.4(3) and 5.2(5), each WARN Act Plaintiff with an Allowed WARN Act Claim shall become entitled to its Individual WARN Act Plan Entitlement (as it may be adjusted based on the final determination of Disputed Distribution Claims in the manner set forth herein) in full consideration for the irrevocable, final and full compromise and satisfaction of such WARN Act Claim;

(h)    the Articles shall be altered to, among other things, (i) consolidate the issued and outstanding Cline Common Shares (including, for the avoidance of doubt, Cline Common Shares that are Existing Cline Shares and New Cline Common Shares issued pursuant to Section 5.3(c)) on the basis of the Consolidation Ratio; and (ii) provide for such additional changes to the rights and conditions attached to the Cline Common Shares as may be agreed to by the Applicants, the Monitor and Marret (on behalf of the Secured Noteholders);

(i)    any fractional Cline Common Shares held by any holder of Cline Common Shares immediately following the consolidation of the Cline Common Shares referred to in section 5.3(h) shall be cancelled without any liability, payment or other compensation in respect thereof, and the Articles shall be altered as necessary to achieve such cancellation;

(j)    all Equity Interests (for greater certainty, not including any Cline Common Shares that remain issued and outstanding immediately following the cancellation of fractional interests in section 5.3(i)) shall be cancelled and extinguished without any liability, payment or other compensation in respect thereof and all Equity Claims shall be fully, finally, irrevocably and forever compromised, released, discharged, cancelled and barred without any liability, payment or other compensation in respect thereof, provided that, notwithstanding anything to the contrary herein, the Existing New Elk Units shall not be cancelled or extinguished and shall remain outstanding and solely owned by Cline and the Existing North Central Shares shall not be cancelled or extinguished and shall remain outstanding and solely owned by New Elk;

- 29 -

(k)  Cline shall pay in cash all fees and expenses incurred by the Indenture Trustee, including its reasonable legal fees, in connection with the performance of its duties under the Indentures and the Plan;

(l)  subject only to section 4.6 hereof, all of the Secured Notes, the Indentures and all Secured Note Obligations shall be deemed to be fully, finally, irrevocably and forever compromised, released, discharged cancelled and barred;

(m)  all Affected Claims remaining after the step referred to in section 5.3(l) shall be fully, finally, irrevocably and forever compromised, released, discharged cancelled and barred without any liability, payment or other compensation in respect thereof; and

(n)  the releases set forth in Article 7 shall become effective.

The steps described in sub-sections (h) and (i) of this section 5.3 will be implemented pursuant to section 6(2) of the CCAA and shall constitute a valid alteration of the Articles pursuant to a court order under the BCBCA.

### 5.4    Issuances Free and Clear

Any issuance of any securities or other consideration pursuant to the Plan will be free and clear of any Encumbrances.

### 5.5    Stated Capital

The aggregate stated capital for purposes of the BCBCA for the New Cline Common Shares issued pursuant to the Plan will be as determined by the new board of directors of Cline appointed pursuant to the Sanction Order.

## ARTICLE 6
## PROCEDURE FOR DISTRIBUTIONS REGARDING DISPUTED DISTRIBUTION CLAIMS

### 6.1    No Distribution Pending Allowance

An Affected Creditor holding a Disputed Distribution Claim will not be entitled to receive a distribution under the Plan in respect of such Disputed Distribution Claim or any portion thereof unless and until, and then only to the extent that, such Disputed Distribution Claim becomes an Allowed Claim.

### 6.2    Disputed Distribution Claims

(a)  On the Plan Implementation Date, under the supervision of the Monitor, an amount equal to each Disputed Distribution Claim of the Convenience Creditors shall be reserved and held by Cline, in the Disputed Distribution Claims Reserve, for the benefit of the Convenience Creditors with Allowed Convenience Claims, pending the final determination of the Disputed Distribution Claim in accordance with the Claims Procedure Order and the Plan.

- 30 -

(b)    On the Unsecured Plan Entitlement Date, distributions of Unsecured Plan Entitlement Proceeds in relation to a Disputed Distribution Claim of any Affected Unsecured Creditor (other than Convenience Creditors and Secured Noteholders) in existence at the Unsecured Plan Entitlement Date will be reserved and held by Cline, in the Disputed Distribution Claims Reserve, for the benefit of the Affected Unsecured Creditors (other than Convenience Creditors and Secured Noteholders) with Allowed Affected Unsecured Claims until the final determination of the Disputed Distribution Claim in accordance with the Claims Procedure Order and the Plan.

(c)    On the WARN Act Plan Entitlement Date, distributions of WARN Act Plan Entitlement Proceeds in relation to a Disputed Distribution Claim of WARN Act Plaintiff in existence at the Unsecured Plan Entitlement Date will be reserved and held by Cline, in the Disputed Distribution Claims Reserve, for the benefit of the WARN Act Plaintiffs with Allowed WARN Act Claims until the final determination of the Disputed Distribution Claim in accordance with the Claims Procedure Order and the Plan.

(d)    To the extent that any Disputed Distribution Claim becomes an Allowed Affected Unsecured Claim in accordance with the Claims Procedure and it is a Convenience Claim, Cline shall distribute (on the next Distribution Date), under the supervision of the Monitor, the applicable amount of such Allowed Claim to the holder of such Allowed Claim in accordance with section 3.4(2)(b) hereof from the Disputed Distribution Claims Reserve.

(e)    To the extent that any Disputed Distribution Claim becomes an Allowed Affected Unsecured Claim in accordance with the Claims Procedure Order and it is not a Convenience Claim or the Claim of a Secured Noteholder, the applicable Affected Unsecured Creditor shall become entitled to its applicable Individual Unsecured Plan Entitlement, and if this occurs after the Unsecured Plan Entitlement Date, Cline shall distribute (on the next Distribution Date) to the holder of such Allowed Claim an amount from the Disputed Distribution Claims Reserve equal to the applicable Affected Unsecured Creditor's Individual Unsecured Plan Entitlement.

(f)    To the extent that any Disputed Distribution Claim becomes an Allowed WARN Act Claim in accordance with the Claims Procedure Order, the applicable WARN Act Plaintiff shall become entitled to its Individual WARN Act Plan Entitlement, and if this occurs after the WARN Act Plan Entitlement Date, Cline shall distribute (on the next Distribution Date) to the holder of such Allowed Claim an amount from the Disputed Distribution Claims Reserve equal to the applicable WARN Act Plaintiff's Individual WARN Act Plan Entitlement.

(g)    At any applicable time, Cline shall be permitted, with the consent of the Monitor, to release and retain for itself any amounts in the Disputed Distribution Claims Reserve that were reserved to pay Convenience Claims that have been definitively not been Allowed in accordance with the Claims Procedure Order.

- 31 -

(h)    Prior to any Distribution Date and under the supervision of the Monitor, Cline shall re-calculate the Individual Unsecured Plan Entitlements and the Individual WARN Act Plan Entitlements of the Affected Unsecured Creditors (other than Convenience Creditors and Secured Noteholders) and WARN Act Plaintiffs having Distribution Claims, in each case to reflect any applicable Disputed Distribution Claims that were definitively not Allowed, and such Creditors shall become entitled to their re-calculated Individual Unsecured Plan Entitlements and the Individual WARN Act Plan Entitlements, as applicable. If this occurs after the Unsecured Plan Entitlement Date or the WARN Act Plan Entitlement Date, as applicable, Cline shall (on the next Distribution Date) distribute to such Creditors the applicable amounts from the Disputed Distribution Claims Reserve as are necessary to give effect to their re-calculated Individual Unsecured Plan Entitlements and the Individual WARN Act Plan Entitlements, as applicable.

(i)    On the date that all Disputed Distribution Claims have been finally resolved in accordance with the Claims Procedure Order, Cline shall, with the consent of the Monitor, release all remaining cash, if any, from the Disputed Distribution Claims Reserve and shall be entitled to retain such cash.

## ARTICLE 7
## RELEASES

### 7.1    Plan Releases

On the Plan Implementation Date, in accordance with the sequence set forth in section 5.3, (i) the Applicants, the Applicants' employees and contractors, the Directors and Officers, the Cline Companies and (ii) the Monitor, the Monitor's counsel, the Indenture Trustee, Marret (on behalf of the Secured Noteholders and in its individual corporate capacity), the Secured Noteholders, the Company Advisors, the Noteholder Advisors and each and every present and former shareholder, affiliate, subsidiary, director, officer, member, partner, employee, auditor, financial advisor, legal counsel and agent of any of the foregoing Persons (each of the Persons named in (i) or (ii) of this section 7.1, in their capacity as such, being herein referred to individually as a "**Released Party**" and all referred to collectively as "**Released Parties**") shall be released and discharged from any and all demands, claims, actions, causes of action, counterclaims, suits, debts, sums of money, accounts, covenants, damages, judgments, orders, including for injunctive relief or specific performance and compliance orders, expenses, executions, Encumbrances and other recoveries on account of any liability, obligation, demand or cause of action of whatever nature, including claims for contribution or indemnity which any Creditor or other Person may be entitled to assert, whether known or unknown, matured or unmatured, direct, indirect or derivative, foreseen or unforeseen, existing or hereafter arising, based in whole or in part on any act, omission, transaction, duty, responsibility, indebtedness, liability, obligation, dealing or other occurrence existing or taking place on or prior to the later of the Plan Implementation Date and the date on which actions are taken to implement the Plan, that constitute or are in any way relating to, arising out of or in connection with any Claims, any Director/Officer Claims and any indemnification obligations with respect thereto, the Secured Notes and related guarantees, the Indentures, the Secured Note Obligations, the Equity Interests, the Stock Option Plans, the New Cline Common Shares, the New Secured Debt, the New Credit Agreement, the Unsecured Plan Entitlement, the WARN Act Plan Entitlement, any payments to Convenience Creditors, the

- 32 -

business and affairs of the Applicants whenever or however conducted, the administration and/or management of the Applicants, the Recapitalization, the Plan, the CCAA Proceeding, the Chapter 15 Proceeding or any document, instrument, matter or transaction involving any of the Applicants or the Cline Companies taking place in connection with the Recapitalization or the Plan (referred to collectively as the "**Released Claims**"), and all Released Claims shall be deemed to be fully, finally, irrevocably and forever waived, discharged, released, cancelled and barred as against the Released Parties, all to the fullest extent permitted by Applicable Law; provided that nothing herein will waive, discharge, release, cancel or bar (x) the right to enforce the Applicants' obligations under the Plan, (y) the Applicants from or in respect of any Unaffected Claim or any Claim that is not permitted to be released pursuant to section 19(2) of the CCAA, or (z) any Director or Officer from any Director/Officer Claim that is not permitted to be released pursuant to section 5.1(2) of the CCAA.

### 7.2   Limitation on Insured Claims

Notwithstanding anything to the contrary in section 7.1, Insured Claims shall not be compromised, released, discharged, cancelled or barred by the Plan, provided that from and after the Plan Implementation Date, any Person having an Insured Claim shall be irrevocably limited to recovery in respect of such Insured Claim solely from the proceeds of the applicable Insurance Policies, and Persons with an Insured Claim shall have no right to, and shall not, directly or indirectly, make any claim or seek any recoveries in respect thereof from the Applicants, any of the Cline Companies, any Director or Officer or any other Released Party, other than enforcing such Person's rights to be paid by the applicable insurer(s) from the proceeds of the applicable Insurance Policies.

### 7.3   Injunctions

All Persons are permanently and forever barred, estopped, stayed and enjoined, on and after the Effective Time, with respect to any and all Released Claims, from (i) commencing, conducting or continuing in any manner, directly or indirectly, any action, suits, demands or other proceedings of any nature or kind whatsoever (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against any of the Released Parties; (ii) enforcing, levying, attaching, collecting or otherwise recovering or enforcing by any manner or means, directly or indirectly, any judgment, award, decree or order against any of the Released Parties or their property; (iii) creating, perfecting, asserting or otherwise enforcing, directly or indirectly, any lien or encumbrance of any kind against the Released Parties or their property; or (iv) taking any actions to interfere with the implementation or consummation of the Plan; provided, however, that the foregoing shall not apply to the enforcement of any obligations under the Plan.  For greater certainty, the provisions of this section 7.3 shall apply to Insured Claims in the same manner as Released Claims, except to the extent that the rights of such Persons to enforce such Insured Claims against an insurer in respect of an Insurance Policy are expressly preserved pursuant to section 3.5(c) and/or section 7.2, and provided further that, notwithstanding the restrictions on making a claim that are set forth in sections 3.5(c) and 7.2, any claimant in respect of an Insured Claim that was duly filed with the Monitor by the Claims Bar Date shall be permitted to file a statement of claim in respect thereof to the extent necessary solely for the purpose of preserving such claimant's ability to pursue such Insured Claim against an insurer in respect of an Insurance Policy in the manner authorized pursuant to section 3.5(c) and/or section 7.2.

- 33 -

## ARTICLE 8
## COURT SANCTION

### 8.1    Application for Sanction Order

If the Required Majorities of the Affected Creditors in each Voting Class approve the Plan, the Applicants shall apply for the Sanction Order on or before the date set for the hearing of the Sanction Order or such later date as the Court may set.

### 8.2    Sanction Order

The Applicants shall seek a Sanction Order that, among other things:

(a)    declares that (i) the Plan has been approved by the Required Majorities of Affected Creditors in each Voting Class in conformity with the CCAA; (ii) the activities of the Applicants have been in reasonable compliance with the provisions of the CCAA and the Orders of the Court made in this CCAA Proceeding in all respects; (iii) the Court is satisfied that the Applicants have not done or purported to do anything that is not authorized by the CCAA; and (iv) the Plan and the transactions contemplated thereby are fair and reasonable;

(b)    declares that as of the Effective Time, the Plan and all associated steps, compromises, transactions, arrangements, releases and reorganizations effected thereby are approved pursuant to section 6 of the CCAA, binding and effective as herein set out upon and with respect to the Applicants, all Affected Creditors, the Directors and Officers, any Person with a Director/Officer Claim, the Released Parties and all other Persons named or referred to in or subject to Plan;

(c)    declares that the steps to be taken and the compromises and releases to be effective on the Plan Implementation Date are deemed to occur and be effected in the sequential order contemplated by section 5.3 on the Plan Implementation Date, beginning at the Effective Time;

(d)    declare that the releases effected by this Plan shall be approved and declared to be binding and effective as of the Plan Implementation Date upon all Affected Creditors and all other Persons affected by this Plan and shall enure to the benefit of such Persons;

(e)    declares that, subject to performance by the Applicants of their obligations under the Plan and except as provided in the Plan, all obligations, agreements or leases to which any of the Applicants or Cline Companies is a party on the Plan Implementation Date shall be and remain in full force and effect, unamended, as at the Plan Implementation Date and no party to any such obligation or agreement shall on or following the Plan Implementation Date, accelerate, terminate, refuse to renew, rescind, refuse to perform or otherwise disclaim or resiliate its obligations thereunder, or enforce or exercise (or purport to enforce or exercise)

- 34 -

any right or remedy under or in respect of any such obligation or agreement, by reason:

(i) of any event which occurred prior to, and not continuing after, the Plan Implementation Date, or which is or continues to be suspended or waived under the Plan, which would have entitled such party to enforce those rights or remedies;

(ii) that the Applicants have sought or obtained relief or have taken steps as part of the Plan or under the CCAA or Chapter 15;

(iii) of any default or event of default arising as a result of the financial condition or insolvency of the Applicants;

(iv) of the effect upon the Applicants of the completion of any of the transactions contemplated by the Plan; or

(v) of any compromises, settlements, restructurings, recapitalizations or reorganizations effected pursuant to the Plan,

and declares that no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any non-competition agreement or obligation, provided that such agreement shall terminate or expire in accordance with the terms thereof or as otherwise agreed by the Applicants and the applicable Persons;

(f) authorizes the Monitor to perform its functions and fulfil its obligations under the Plan to facilitate the implementation of the Plan;

(g) subject to payment of any amounts secured thereby, declares that each of the Charges shall be terminated, discharged and released upon a filing of the Monitor of a certificate confirming the termination of the CCAA Proceedings;

(h) provides advice and directions with respect to the distribution mechanics in respect of the New Cline Common Shares and the Secured Noteholders' respective entitlements to the New Secured Debt, as both are referred to in section 4.1(b);

(i) declares that the Applicants and the Monitor may apply to the Court for advice and direction in respect of any matters arising from or under the Plan; and

(j) declares the Persons to be appointed to the boards of directors of the Applicants on the Plan Implementation Date shall be the Persons named on a certificate to be filed with the Court by the Applicants prior to the Plan Implementation Date, provided that such certificate and the Persons listed thereon shall be subject to the prior consent of Marret (on behalf of the Secured Noteholders).

- 35 -

## ARTICLE 9
## CONDITIONS PRECEDENT AND IMPLEMENTATION

### 9.1 Conditions Precedent to Implementation of the Plan

The implementation of the Plan shall be conditional upon satisfaction of the following conditions prior to or at the Effective Time, each of which is for the benefit of the Applicants and may be waived only by the Applicants, provided that the conditions in paragraphs (a), (b) and (c) of this section 9.1 shall also be for the benefit of Marret (on behalf of the Secured Noteholders) and may be waived only by the mutual agreement of both the Applicants and Marret:

(a) all definitive agreements in respect of the Recapitalization and the new (or amended) Articles, by-laws and other constating documents, and all definitive legal documentation in connection with all of the foregoing shall be in a form satisfactory to the Applicants and Marret (on behalf of the Secured Noteholders);

(b) the New Credit Agreement governing the New Secured Debt, together with all guarantees and security agreements contemplated thereunder, shall have been entered into and become effective, subject only to the implementation of the Plan, and all required filings related to the security as contemplated in the security agreements shall have been made;

(c) the terms of the New Cline Common Shares and the New Credit Agreement shall be satisfactory to the Applicants and Marret (on behalf of the Secured Noteholders);

(d) there shall not be in effect any preliminary or final decision, order or decree by a Governmental Entity, no application shall have been made to any Governmental Entity, and no action or investigation shall have been announced, threatened or commenced by any Governmental Entity, in consequence of or in connection with the Recapitalization or the Plan that restrains, impedes or prohibits (or if granted could reasonably be expected to restrain, impede or inhibit), the Recapitalization or the Plan or any part thereof or requires or purports to require a variation of the Recapitalization or the Plan;

(e) the Plan shall have been approved by the Required Majorities of each Voting Class;

(f) all orders made and judgments rendered by any competent court of law, and all rulings and decrees of any competent regulatory body, agent or official in relation to the CCAA Proceeding, the Chapter 15 Proceeding, the Recapitalization or the Plan shall be satisfactory to the Applicants, including all court orders made in relation to the Recapitalization, and without limiting the generality of the foregoing:

  (i) the Sanction Order shall have been made on terms acceptable to the Applicants, and it shall have become a Final Order;

- 36 -

(ii) the Sanction Order shall have been recognized and deemed binding and enforceable in the United States pursuant to an Order of the US Court in the Chapter 15 Proceeding on terms acceptable to the Applicants, and such Order shall have become a Final Order; and

(iii) any other Order deemed necessary by the Applicants for the purpose of implementing the Recapitalization shall have been made on terms acceptable to the Applicants, and any such Order shall have become a Final Order;

(g) all material agreements, consents and other documents relating to the Recapitalization and the Plan shall be in form and in content satisfactory to the Applicants;

(h) any and all court-imposed charges on any assets, property or undertaking of the Applicants shall have been discharged as at the Effective Time on terms acceptable to the Applicants, acting reasonably;

(i) all Material filings under Applicable Laws shall have been made and any Material regulatory consents or approvals that are required in connection with the Recapitalization shall have been obtained and, in the case of waiting or suspensory periods, such waiting or suspensory periods shall have expired or been terminated;

(j) all securities of the Applicants, when issued and delivered, shall be duly authorized, validly issued and fully paid and non-assessable and the issuance thereof shall be exempt from all prospectus and registration requirements of Applicable Laws;

(k) all necessary filings in respect of the alteration of the Articles shall have been made on terms providing that they will become effective in accordance with and at the times of section 5.3(h) and 5.3(i); and

(l) all fees and expenses owing to the Company Advisors and the Noteholder Advisors as of the Plan Implementation Date shall have been paid, and the Applicants shall be satisfied that adequate provision has been made for any fees and expenses due or accruing due to the Company Advisors and the Noteholder Advisors from and after the Plan Implementation Date.

### 9.2    Monitor's Certificate

Upon delivery of written notice from the Company Advisors (on behalf of the Applicants) of the satisfaction or waiver of the conditions set out in section 9.1, the Monitor shall forthwith deliver to the Company Advisors a certificate stating that the Plan Implementation Date has occurred and that the Plan is effective in accordance with its terms and the terms of the Sanction Order. As soon as practicable following the Plan Implementation Date, the Monitor shall file such certificate with the Court and with the US Court.

- 37 -

## ARTICLE 10
## GENERAL

### 10.1    Binding Effect

The Plan will become effective on the Plan Implementation Date.  On the Plan Implementation Date:

(a)    the treatment of Affected Claims and Released Claims under the Plan shall be final and binding for all purposes and shall be binding upon and enure to the benefit of the Applicants, all Affected Creditors, any Person having a Released Claim and all other Persons directly or indirectly named or referred to in or subject to Plan and their respective heirs, executors, administrators and other legal representatives, successors and assigns;

(b)    all Affected Claims shall be forever discharged and released;

(c)    all Released Claims shall be forever discharged and released;

(d)    each Affected Creditor, each Person holding a Released Claim and each of the Existing Shareholders shall be deemed to have consented and agreed to all of the provisions of the Plan, in its entirety; and

(e)    each Affected Creditor and each Person holding a Released Claim shall be deemed to have executed and delivered to the Applicants and to the Released Parties, as applicable, all consents, releases, assignments and waivers, statutory or otherwise, required to implement and carry out the Plan in its entirety.

### 10.2    Waiver of Defaults

From and after the Plan Implementation Date, all Persons shall be deemed to have waived any and all defaults of the Applicants then existing or previously committed by any of the Applicants, or caused by any of the Applicants, by any of the provisions in the Plan or steps or transactions contemplated in the Plan or the Recapitalization, or any non-compliance with any covenant, warranty, representation, term, provision, condition or obligation, expressed or implied, in any contract, instrument, credit document, indenture, note, lease, guarantee, agreement for sale or other agreement, written or oral, and any and all amendments or supplements thereto, existing between such Person and any of the Applicants, and any and all notices of default and demands for payment or any step or proceeding taken or commenced in connection therewith shall be deemed to have been rescinded and of no further force or effect, provided that nothing shall be deemed to excuse the Applicants from performing their obligations under the Plan or be a waiver of defaults by any of the Applicants under the Plan and the related documents.

### 10.3    Deeming Provisions

In the Plan, the deeming provisions are not rebuttable and are conclusive and irrevocable.

- 38 -

### 10.4   Non-Consummation

The Applicants reserve the right to revoke or withdraw the Plan at any time prior to the Plan Implementation Date. If the Applicants revoke or withdraw the Plan, or if the Sanction Order is not issued or if the Plan Implementation Date does not occur, (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against any of the Applicants or any other Person; (ii) prejudice in any manner the rights of the Applicants or any other Person in any further proceedings involving any of the Applicants; or (iii) constitute an admission of any sort by any of the Applicants or any other Person.

### 10.5   Modification of the Plan

(a)   The Applicants reserve the right, at any time and from time to time, to amend, restate, modify and/or supplement the Plan, provided that any such amendment, restatement, modification or supplement must be contained in a written document and (i) if made prior to or at the Meetings, communicated to the Affected Creditors prior to or at the Meetings; and (ii) if made following the Meetings, approved by the Court following notice to the Affected Creditors.

(b)   Notwithstanding section 10.5(a), any amendment, restatement, modification or supplement may be made by the Applicants with the consent of the Monitor and Marret (on behalf of the Secured Noteholders), without further Court Order or approval, provided that it concerns a matter which, in the opinion of the Applicants, acting reasonably, is of an administrative nature  required to better give effect to the implementation of the Plan and the Sanction Order or to cure any errors, omissions or ambiguities and is not materially adverse to the financial or economic interests of the Affected Creditors.

(c)   Any amended, restated, modified or supplementary plan or plans of compromise or arrangement filed with the Court and, if required by this section, approved by the Court, shall, for all purposes, be and be deemed to constitute the Plan.

(d)   Notwithstanding anything to the contrary herein or in the Plan, if the requisite quorum is not present at the WARN Act Plaintiffs Meeting or if it is determined in accordance with the Claims Procedure Order that there are no Voting Claims in the WARN Act Plaintiffs Class, the Applicants shall be entitled, but not required, to amend the Plan without further Order of the Court to combine the WARN Act Plaintiffs Class with the Affected Unsecured Creditors Class on such terms as may be set forth in such amended Plan (including on the basis that the WARN Act Plan Entitlement shall not be payable under the Plan), in which case the Applicants shall have no further obligation to hold the WARN Act Plaintiffs Meeting or otherwise seek a vote of the WARN Act Plaintiffs Class with respect to the resolution to approve the Plan or any other matter.

- 39 -

(e)     Without limiting the generality of anything in this section 10.5, if (i) the Plan is not approved by the Required Majorities of the Affected Unsecured Creditors Class, or (ii) the Applicants determine, in their discretion, that the Plan may not be approved by the Required Majorities of the Affected Unsecured Creditors Class, then the Applicants are permitted, without any further Order, to file an amended and restated Plan (the "**Alternate Plan**") with the attributes described on Schedule B to the Plan and to proceed with a meeting of the Secured Noteholders Class for the purpose of considering and voting on the resolution to approve the Alternate Plan, in which case the Applicants and the Monitor will have no obligation whatsoever to proceed with the Unsecured Creditors Meeting or the WARN Act Plaintiff's Meeting.

(f)     Notwithstanding the references herein to the New Credit Agreement and the New Secured Debt Agent, the Applicants and Marret, with the consent of the Monitor, shall be entitled to modify the form and structure of the New Secured Debt and the manner in which the New Secured Debt is held by the Secured Noteholders to allow such debt to be issued as secured notes or in such other form as may be agreed by the Applicants and Marret with the consent of the Monitor, provided that such modifications do not affect the material economic attributes of the New Secured Debt. In the event of the foregoing, no formal amendment to the Plan (or the Alternate Plan, as applicable) shall be required and the steps and provisions of this Plan (and any Alternate Plan) pertaining to the New Secured Debt shall be read so as to give effect to such modified form and structure of the New Secured Debt.

### 10.6    Marret and the Secured Noteholders

For the purposes of the Plan, so long as Marret exercises sole investment discretion and control over the all of the Secured Noteholders, then the Applicants, the Company Advisors, the Monitor, the Indenture Trustee, CDS and all other interested parties with respect to the Plan shall be entitled to rely on confirmation from Marret or the Noteholder Advisors that the Secured Noteholders have agreed to, waived, consented to or approved a particular matter, even if such confirmation would otherwise require the action or agreement of the Indenture Trustee.

### 10.7    Paramountcy

From and after the Effective Time on the Plan Implementation Date, any conflict between:

(a)     the Plan or any Order in the CCAA Proceeding or the Chapter 15 Proceeding; and

(b)     the covenants, warranties, representations, terms, conditions, provisions or obligations, expressed or implied, of any contract, mortgage, security agreement, indenture, trust indenture, note, loan agreement, commitment letter, agreement for sale, lease or other agreement, written or oral and any and all amendments or supplements thereto existing between one or more of the Affected Creditors and the Applicants as at the Plan Implementation Date or the notice of articles, articles or bylaws of the Applicants at the Plan Implementation Date;

- 40 -

will be deemed to be governed by the terms, conditions and provisions of the Plan and the applicable Order, which shall take precedence and priority , provided that any settlement agreement executed by the Applicants and any Person asserting a Claim or a Director/Officer Claim that was entered into from and after the Filing Date shall be read and interpreted in a manner that assumes such settlement agreement is intended to operate congruously with, and not in conflict with, the Plan.

### 10.8 Severability of Plan Provisions

If, prior to the Sanction Date, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court, at the request of the Applicants and with the consent of the Monitor, shall have the power to either (a) sever such term or provision from the balance of the Plan and provide the Applicants with the option to proceed with the implementation of the balance of the Plan, (b) alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted; or (c) withdraw the Plan. Provided that the Applicants proceed with the implementation of the Plan, then notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.

### 10.9 Responsibilities of the Monitor

FTI Consulting Canada Inc. is acting in its capacity as Monitor in the CCAA Proceeding and as foreign representative in the Chapter 15 Proceeding with respect to the Applicants, the CCAA Proceedings and this Plan and not in its personal or corporate capacity, and will not be responsible or liable for any obligations of the Applicants under the Plan or otherwise.

### 10.10 Different Capacities

Persons who are affected by the Plan may be affected in more than one capacity. Unless expressly provided to the contrary herein, a Person will be entitled to participate hereunder in each such capacity. Any action taken by a Person in one capacity will not affect such Person in any other capacity, unless expressly agreed by the Applicants and the Person in writing or unless its Claims overlap or are otherwise duplicative.

### 10.11 Notices

Any notice or other communication to be delivered hereunder must be in writing and reference the Plan and may, subject as hereinafter provided, be made or given by personal delivery, ordinary mail or by facsimile or email addressed to the respective parties as follows:

- 41 -

If to the Applicants:

        c/o Cline Mining Corporation
        161 Bay Street
        26th Floor
        Toronto, Ontario, Canada
        M5J 2S1

        Attention:    Matthew Goldfarb
        Fax:          (416) 572-2094
        Email:       mgoldfarb@clinemining.com

with a copy to:

        Goodmans LLP
        Bay Adelaide Centre
        333 Bay Street, Suite 3400
        Toronto, Ontario M5H 2S7

        Attention:    Robert Chadwick / Logan Willis
        Fax:          (416) 979-1234
        Email:       rchadwick@goodmans.ca / lwillis@goodmans.ca

If to Marret or the Secured Noteholders:

        Marret Asset Management Inc.
        200 King Street West, Suite 1902
        Toronto, Ontario M5H 3T4

        Attention:  Dorothea Mell
        Fax:          (647) 439-6471
        Email:       dmell@marret.com

with a copy to:

        Davies Ward Phillips & Vineberg LLP
        155 Wellington Street West
        Toronto, Ontario M5V 3J7

        Attention:    Jay A. Swartz
        Fax:          (416) 863-5520
        Email:       jswartz@dwpv.com

- 42 -

If to an Affected Creditor (other than Marret or the Secured Noteholders), to the mailing address, facsimile address or email address provided on such Affected Creditor's Notice of Claim or Proof of Claim;

If to the Monitor:

> FTI Consulting Canada Inc.
>
> TD Waterhouse Tower
> 79 Wellington Street West
> Suite 2010, P.O. Box 104
> Toronto, Ontario M5K 1G8
>
> Attention:   Pamela Luthra
> Fax:          (416) 649-8101
> Email         cline@fticonsulting.com

with a copy to:

> Osler, Hoskin & Harcourt LLP
> 100 King Street West,
> Toronto, Ontario M5X 1B8
>
> Attention:   Marc Wasserman / Michael De Lellis
> Fax:          416.862.6666
> Email:        mwasserman@osler.com / mdelellis@osler.com,

or to such other address as any party may from time to time notify the others in accordance with this section. Any such communication so given or made shall be deemed to have been given or made and to have been received on the day of delivery if delivered, or on the day of faxing or sending by other means of recorded electronic communication, provided that such day in either event is a Business Day and the communication is so delivered, faxed or sent before 5:00 p.m. (Toronto time) on such day; otherwise, such communication shall be deemed to have been given and made and to have been received on the next following Business Day.

### 10.12   Further Assurances

Each of the Persons directly or indirectly named or referred to in or subject to Plan will execute and deliver all such documents and instruments and do all such acts and things as may be necessary or desirable to carry out the full intent and meaning of the Plan and to give effect to the transactions contemplated herein.

**DATED** as of the 3rd day of December, 2014.

## SCHEDULE A

### SUMMARY OF TERMS OF NEW SECURED DEBT

- $55,000,000 aggregate principal amount.
- Cline is the borrower and New Elk and North Central are the guarantors of the New Secured Debt.
- 7-year term.
- Interest equal to the aggregate of:
    - (i).   base interest at a rate of 0.01% per annum payable annually; and
    - (ii).  additional interest payable quarterly equal to 5% of the consolidated operating revenues of the Applicants for the preceding fiscal quarter, provided that such additional intrest shall only be applicable if the consolidated operating revenues of the Applicants exceed $1.25 million in such preceding fiscal quarter, and provided further that such additional interest shall not exceed 11.99% per annum of the principal amount of the New Secured Debt in any year.
- Subject to 10.5(f) of the Plan, the New Secured Debt will be governed by (i) the New Credit Agreement between the Applicants and Marret (as administrative and collateral agent for the Secured Noteholders) and (ii) guarantees of the New Secured Debt executed by New Elk and North Central, in each case in form and in content satisfactory to the Applicants and Marret.
- The New Credit Agreement will contain a prepayment premium equal to 10% of the aggregate principal amount of the New Secured Debt, payable if the New Secured Debt is repaid or accelerated at any time prior to its stated maturity.
- Other than as set out herein or as may be agreed by the Applicants and Marret in writing, the material financial terms of the Credit Agreement are to be substantially similar to the terms of the trust indenture in respect of the 2011 Notes.
- The New Secured Debt will be secured by a first-ranking security interest in all or substantially all of the assets and property of Cline, New Elk and North Central.
- Each of the Secured Noteholders will be entitled to its Secured Noteholder's Share of the New Secured Debt, as described in the Plan.
- Marret Asset Management Inc. will act as the administrative and collateral agent in respect of the New Secured Debt and the corresponding security on behalf of the Secured Noteholders.

**SCHEDULE B**

**ALTERNATE PLAN – SUMMARY OF TERMS**

- All unsecured Claims and all WARN Act Claims:

    (i).    are treated as Unaffected Claims;

    (ii).   are not entitled to vote or attend any creditors' meeting in respect of the Alternate Plan, including the Meeting of Secured Noteholders Class;

    (iii).  receive no distributions or consideration of any kind whatsoever under the Alternate Plan.

- The only Affected Creditors under the Alternate Plan are the Secured Noteholders.

- The only Voting Class under the Alternate Plan is the Secured Noteholders Class.

- The New Cline Common Shares, the New Secured Debt, the Unsecured Plan Entitlement, the payments to Convenience Creditors and the WARN Act Plan Entitlement will not be distributed or established or become payable under the Alternate Plan.

- The Alternate Plan would provide that all assets and property of the Applicants will be transferred to an entity designated by the Secured Noteholders and/or Marret (on behalf of the Secured Noteholders), free and clear of all claims and encumbrances, in exchange for the cancellation of the Secured Notes and a release of all Secured Noteholder Obligations.

6334652

SCHEDULE "C"
TO THE INFORMATION STATEMENT

MEETINGS ORDER

[Monitor to attach final form of Meetings Order once approved by the Court]

6363103

SCHEDULE "B"

IN THE MATTER OF *THE COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE AND ARRANGEMENT
OF CLINE MINING CORPORATION, NEW ELK COAL COMPANY LLC AND
NORTH CENTRAL ENERGY COMPANY (the "Applicants")

NOTICE OF MEETINGS OF CREDITORS
OF THE APPLICANTS

**NOTICE IS HEREBY GIVEN** that meetings (the "**Meetings**") of creditors of the Applicants entitled to vote on a plan of compromise and arrangement (the "**Plan**") proposed by the Applicants under the *Companies Creditors' Arrangement Act* (the "**CCAA**") will be held for the following purposes:

(1)     to consider and, if deemed advisable, to pass, with or without variation, a resolution to approve the Plan; and

(2)     to transact such other business as may properly come before the Meetings or any adjournment thereof.

The Meetings are being held pursuant to an order of the Ontario Superior Court of Justice (Commercial List) (the "**Court**") dated December 3, 2014 (the "**Meetings Order**").

**NOTICE IS ALSO HEREBY GIVEN** that the Meetings Order establishes the procedures for the Applicants to call, hold and conduct Meetings of the holders of Claims against the Applicants to consider and pass resolutions, if thought advisable, approving the Plan and to transact such other business as may be properly brought before the Meetings.  For the purpose of voting on and receiving distributions pursuant to the Plan, the holders of Claims against the Applicants will be grouped into three classes, being the Affected Unsecured Creditors Class, the WARN Act Plaintiffs Class and the  Secured Noteholders Class.

**NOTICE IS ALSO HEREBY GIVEN** that the Meetings will be held at the following dates, times and location:

| | |
|---|---|
| Date: | January 21, 2015 |
| Time | 10:00 a.m. – WARN Act Plaintiffs Class |
| | 11:00 a.m. – Affected Unsecured Creditors Class |
| | 12:00 p.m. –  Secured Noteholders Class |
| Location: | Goodmans LLP, 333 Bay Street, Suite 3400, Toronto, Ontario |

- 2 -

Subject to paragraph 21 of the Meetings Order, only those creditors with Voting Claims or Disputed Voting Claims (each such creditor an "**Eligible Voting Creditor**") will be eligible to attend the applicable Meetings and vote on a resolution to approve the Plan.  Eligible Voting Creditors are those Creditors: (1) who have received a Notice of Claim from the Monitor confirming the existence of a Claim against the Applicants in accordance with the Claims Procedure Order dated December 3, 2014; (2) who have submitted a Proof of Claim in respect of a claim against the Applicants in accordance with the Claims Procedure Order, which claim has not been disallowed in accordance with the Claims Procedure Order; or (3) are holders of Secured Notes issued by Cline Mining Corporation.  Holders of Secured Notes (the "**Secured Noteholders**"), as defined in the Meetings Order, cannot vote in person and must instead provide voting instructions to the Monitor in accordance with the Meetings Order.  The votes of Affected Unsecured Creditors, WARN Act Plaintiffs and Secured Noteholders holding Disputed Voting Claims will be separately tabulated and Disputed Voting Claims will not be counted unless, until and only to the extent that any such Disputed Voting Claim is finally determined to be a Voting Claim.  A holder of an Unaffected Claim or an Equity Claim, as defined in the Plan, shall not be entitled to attend or vote at the Meetings in respect of such Unaffected Claim.  December 3, 2014 has been set as the record date for Secured Noteholders to determine entitlement to vote at the Meetings.

Subject to the Plan and paragraph 23 of the Meetings Order, each Affected Unsecured Creditor with a Voting Claim or a Disputed Voting Claim of not more than $10,000 (other than Secured Noteholders and, for greater certainty, not including WARN Act Plaintiffs) shall be deemed to vote in favour of the Plan, and will be paid in full to the extent that such Claim is proven as a Distribution Claim.

Any Eligible Voting Creditor who is unable to attend the applicable Meeting may vote by proxy, subject to the terms of the Meetings Order.  Further, any Eligible Voting Creditor who is not an individual may only attend and vote at the applicable Meeting if a proxy holder has been appointed to act on its behalf at such Meeting.  Secured Noteholders must vote by providing instructions to the Monitor in accordance with the terms of the Meetings Order.

**NOTICE IS ALSO HEREBY GIVEN** that if the Plan is approved at the Meetings by the required majorities of Creditors and other necessary conditions are met, the Applicants intend to make an application to the Court on January 28, 2015 (the "**Sanction Hearing**") seeking an order sanctioning the Plan pursuant to the CCAA (the "**Sanction Order**").  Any person wishing to oppose the application for the Sanction Order must serve a copy of the materials to be used to oppose the application and setting out the basis for such opposition upon the lawyers for the Applicants and the Monitor as well as those parties listed on the Service List posted on the Monitor's Website.  Such materials must be served by not later than 5:00pm (Toronto time) on the date that is 7 days prior to the Sanction Hearing.

**NOTICE IS ALSO HEREBY GIVEN** that the Meetings Order and the Plan provide that if (i) the Plan is not accepted by the Required Majorities of the Affected Unsecured Creditors Class or the WARN Act Plaintiffs Class or (ii) the Applicants determine, in their discretion, that the Plan will not be accepted by the Required Majorities of the Affected Unsecured Creditors Class or the WARN Act Plaintiffs Class or is otherwise unlikely to succeed for any reason whatsoever, then the Applicants are permitted, without further Order of the Court, to file an amended and restated

- 3 -

plan (the "**Alternate Plan**") with the attributes described on Schedule "B" to the Plan and to proceed with a meeting of the Secured Noteholders Class for the purpose of considering and voting on the resolution to approve the Alternate Plan, in which case the Applicants will have no obligation whatsoever to proceed with the Unsecured Creditors Meeting or the WARN Act Plaintiffs Meeting. In addition, if the requisite quorum is not present at the WARN Act Plaintiffs Meeting or it is determined that there are no Voting Claims in the WARN Act Plaintiffs Class, then the Applicants are permitted, without further Order of the Court, to amend the Plan to combine the WARN Act Plaintiffs Class with the Affected Unsecured Creditors Class on such terms as may be set forth in such amended Plan, in which case the Applicants shall have no further obligation to hold the WARN Act Plaintiffs meeting or otherwise seek a vote of the WARN Act Plaintiffs Class with respect to the resolution to approve the Plan or any other matter.

**NOTICE IS ALSO HEREBY GIVEN** that in order for the Plan to become effective:

1. the Plan must be approved by the required majorities of Creditors voting on the Plan and in accordance with the terms of the Meetings Order;

2. the Plan must be sanctioned by the Court; and

3. the conditions to implementation and effectiveness of the Plan as set out in the Plan and summarized in the Information Statement must be satisfied or waived.

Additional copies of the Information Package, including the Information Statement and the Plan, may be obtained from the Monitor's Website at http://cfcanada.fticonsulting.com/cline or by contacting the Monitor by telephone at 416.649.8099 (Toronto local) or 855.398.7390 (toll free) or by email at cline@fticonsulting.com.

All capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Meetings Order.

**DATED** at Toronto, Ontario, this ___ day of December, 2014.

SCHEDULE "C"

IN THE MATTER OF *THE COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE AND ARRANGEMENT
OF CLINE MINING CORPORATION, NEW ELK COAL COMPANY LLC AND
NORTH CENTRAL ENERGY COMPANY

---

CREDITORS PROXY

---

Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Plan of Compromise and Arrangement of the Applicants (as may be amended, restated or supplemented from time to time, the "**Plan**") filed pursuant to the *Companies' Creditors Arrangement Act* (the "**CCAA**") with the Ontario Superior Court of Justice (Commercial List) (the "**Court**").

This proxy may only be filed by Affected Unsecured Creditors and WARN Act Plaintiffs (an "**Eligible Voting Creditor**").   Secured Noteholders must complete the Secured Noteholder Proxy with respect to their applicable portion of the Secured Noteholders Allowed Claim.

THE UNDERSIGNED ELIGIBLE VOTING CREDITOR hereby revokes all proxies previously given and nominates, constitutes, and appoints:

Paul Bishop of FTI Consulting Canada Inc., in
its capacity as Monitor, or a person appointed
by Paul Bishop

or, instead of the foregoing, _____, or such other Person as he/she, in his/her sole discretion, may designate to attend on behalf of and act for the Eligible Voting Creditor at the Unsecured Creditors Meeting or the WARN Act Plaintiffs Meeting, as applicable, to be held in connection with the Plan and at any and all adjournments, postponements or other rescheduling of such Meetings, and to vote the amount of the Eligible Voting Creditor's claim(s) for voting purposes as determined by and accepted for voting purposes in accordance with the Meetings Order, Claims Procedure Order and set out in the Plan as follows:

- 2 -

**To be completed by an Eligible Voting Creditor holding an Affected Unsecured Claim:**

1.      (mark one only):

☐ Vote **FOR** approval of the Plan; or

☐ Vote **AGAINST** approval of the Plan.

<u>If this proxy is submitted and a box is not marked as a vote for or against approval of the Plan, this proxy shall be voted **FOR** approval of the Plan.</u>

- and -

2.      Vote at the nominee's discretion and otherwise act for and on behalf of the undersigned Eligible Voting Creditor with respect to any amendments, modifications, variations or supplements to the Plan and to any other matters that may come before the Unsecured Creditors Meeting or any adjournment, postponement or other rescheduling of such meeting.

**To be completed by an Eligible Voting Creditor holding a WARN Act Claim:**

3.      (mark one only):

☐ Vote **FOR** approval of the Plan; or

☐ Vote **AGAINST** approval of the Plan.

<u>If this proxy is submitted and a box is not marked as a vote for or against approval of the Plan, this proxy shall be voted **FOR** approval of the Plan.</u>

- and -

4.      Vote at the nominee's discretion and otherwise act for and on behalf of the undersigned Eligible Voting Creditor with respect to any amendments, modifications, variations or supplements to the Plan and to any other matters that may come before the WARN Act Plaintiffs Meeting or any adjournment, postponement or other rescheduling of such meeting.

5.      Vote at the nominee's discretion and otherwise act for and on behalf of the undersigned Eligible Voting Creditor with respect to any amendments, modifications, variations or supplements to the Plan and to any other matters that may come before the Secured Noteholders Meeting or any adjournment, postponement or other rescheduling of such meeting.

*[Remainder of page intentionally left blank]*

- 3 -

Dated this _____ day of _____, 201___.

_____          _____
Print Name of Eligible Voting Creditor        Title of the authorized signing officer of the
                                              corporation partnership or trust, if applicable




_____          _____
Signature of Eligible Voting Creditor or, if   Telephone number of Eligible Voting Creditor
the Eligible Voting Creditor is a corporation,  or authorized signing officer
partnership or trust, signature of an
authorized signing officer of the corporation,
partnership or trust




_____          _____
Mailing Address of Eligible Voting Creditor    E-mail address of Eligible Voting Creditor




_____
Print Name of Witness, if Eligible Voting
Creditor is an individual

## SCHEDULE "D"

### IN THE MATTER OF *THE COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE AND ARRANGEMENT OF CLINE MINING CORPORATION, NEW ELK COAL COMPANY LLC AND NORTH CENTRAL ENERGY COMPANY

---

## SECURED NOTEHOLDERS PROXY

---

### 10% SENIOR SECURED NOTES DUE JUNE 15, 2014
### ("2011 Notes")

### 10% SENIOR SECURED NOTES DUE JUNE 15, 2014
### (the "2013 Notes")

Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Plan of Compromise and arrangement of the Applicants (as may be amended, restated or supplemented from time to time, the "**Plan**") and filed pursuant to the *Companies' Creditors Arrangement Act* (the "**CCAA**") with the Ontario Superior Court of Justice (Commercial List) (the "**Court**"). For greater certainty, any references herein to the "Plan" shall be interpreted to also refer to any Amended Plan (as defined in the Plan and the Meetings Order).

In accordance with the Plan and the Meetings Order, this proxy is to be completed by Marret Asset Management Inc. on behalf of the Secured Noteholders with respect to their Secured Noteholder's Allowed Secured Claim and their Secured Noteholder's Allowed Unsecured Claim.

In accordance with the Claims Procedure Order and the Meetings Order: (a) each Secured Noteholder is an Eligible Voting Creditor; and (b) each Secured Noteholder is entitled to vote its Secured Noteholder's Allowed Secured Claim at the Secured Noteholders Meeting and its Secured Noteholder's Allowed Unsecured Claim at the Unsecured Creditors Meeting.

Marret Asset Management Inc. hereby certifies that funds for which it has sole discretionary authority to manage or administer investments are the beneficial holders of all of the Secured Notes. This proxy form confirms that the Secured Noteholders have chosen to appoint Jay A. Swartz of Davies Ward Philips & Vineberg LLP, with power of substitution at Mr. Swartz's discretion, or such other Person as he, in his sole discretion, may designate (the "**Davies Proxy**") to attend and act on behalf of the Secured Noteholders at both the Secured Noteholders Meeting and the Unsecured Creditors Meeting and at any and all adjournments, postponements or other rescheduling of the Meetings, and to vote the amount of the Secured Noteholders Allowed Secured Claim and the Secured Noteholders Allowed Unsecured Claim at such Meetings.

- 2 -

Marret Asset Management Inc. on behalf of the Secured Noteholders, hereby appoints the Davies Proxy (i) to attend on behalf of and act for the Secured Noteholders at the Secured Noteholders Meeting and at any and all adjournments, postponements or other rescheduling of the Secured Noteholders Meeting, (ii) to attend on behalf of and act for the Secured Noteholders at the Unsecured Creditors Meeting and at any and all adjournments, postponements or other rescheduling of the Unsecured Creditors Meeting, (iii) vote on any matter that comes before the Secured Noteholders Meeting and the Unsecured Creditors Meeting, including casting any votes on a resolution to approve the Plan (or an Alternate Plan) in accordance with the Master Voting List (as defined in the Meetings Order), a copy of which is attached hereto; and (iv) to otherwise act for and on behalf of the Secured Noteholders with respect to any amendments, modifications, variations or supplements to the Plan and to any other matters that may come before the Meetings or any adjournment, postponement or other rescheduling of the Meetings.

**MARRET ASSET MANAGEMENT INC. (on behalf of the Secured Noteholders)**

Per: _____

Name: _____

Title:.

**Attached:   Master Voting List**

Court File No. CV-14-10781-00CL

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE AND
ARRANGEMENT OF CLINE MINING CORPORATION, NEW ELK COAL
COMPANY LLC AND NORTH CENTRAL ENERGY COMPANY

|  |  |
|---|---|
| | *ONTARIO*<br>**SUPERIOR COURT OF JUSTICE**<br>**(COMMERCIAL LIST)**<br><br>Proceeding commenced at Toronto |
| | **MEETINGS ORDER** |
| | **Goodmans LLP**<br>Barristers & Solicitors<br>Bay Adelaide Centre<br>333 Bay Street, Suite 3400<br>Toronto, Canada M5B 2M6<br><br>Robert J. Chadwick   (LSUC# 35165K)<br>Logan Willis          (LSUC# 53894K)<br>Bradley Wiffen      (LSUC# 64279L)<br><br>Tel: 416.979.2211<br>Fax: 416.979.1234<br><br>Lawyers for the Applicants |

6322706